**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PERSAWVERE, INC., <br><br> Plaintiff, <br><br> v. <br><br> MILWAUKEE ELECTRIC TOOL CORPORATION, <br><br> Defendant. | C.A. No. 21-400-VAC |

**JOINT CLAIM CONSTRUCTION BRIEF**

Susan E. Morrison (No. 4690)
Kelly Allenspach Del Dotto (No. 5969)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-5070
morrison@fr.com
kad@fr.com

Kurt L. Glitzenstein
Jacob B. Pecht
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
(617) 521-7042
glitzenstein@fr.com
pecht@fr.com

*Attorneys for Plaintiff
Persawvere, Inc.*

Amy M. Dudash (No. 5741)
Morgan, Lewis & Bockius LLP
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Tel: 302.574.3000
amy.dudash@morganlewis.com

Jason C. White (admitted pro hac vice)
Scott D. Sherwin (admitted pro hac vice)
Maria E. Doukas (admitted pro hac vice)
110 North Wacker Drive
Chicago, Illinois 60606
Tel: (312) 324-1000
jason.white@morganlewis.com
scott.sherwin@morganlewis.com
maria.doukas@morganlewis.com

*Attorney for Defendant Milwaukee Electric Tool
Corporation*

Dated:  May 6, 2022

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................................................ 1

    **A.**   Plaintiff's Opening Introduction ............................................................... 1

    **B.**   Defendant's Answering Introduction .......................................................... 2

    **C.**   Plaintiff's Reply Introduction ................................................................... 3

II.   DEFENDANT'S BACKGROUND OF THE '681 PATENT ................................. 4

    **A.**   The Specification .................................................................................... 4

    **B.**   Prosecution History ................................................................................ 4

III.  PERSON OF ORDINARY SKILL IN THE ART ............................................... 7

IV.  PLAINTIFF'S LEGAL STANDARDS ............................................................... 7

    **A.**   Indefiniteness ......................................................................................... 7

V.   AGREED CONSTRUCTIONS .......................................................................... 8

VI.  DISPUTED CONSTRUCTIONS ....................................................................... 8

    **A.**   Term 1: "handle assembly" ..................................................................... 8

        1.   Plaintiff's Opening Position .............................................................. 8

        2.   Defendant's Answering Position ....................................................... 11

        3.   Plaintiff's Reply Position ................................................................. 17

        4.   Defendant's Sur-Reply ..................................................................... 20

    **B.**   Term 2: "hand grip portion" .................................................................... 22

        1.   Plaintiff's Opening Position .............................................................. 22

        2.   Defendant's Answering Position ....................................................... 24

        3.   Plaintiff's Reply Position ................................................................. 25

        4.   Defendant's Sur-Reply Position ........................................................ 26

**C.**   Terms 3 and 4: "hand grip portion located between the first axis of the drive wheel and the second axis of the driven wheel" and "wherein the trigger is also located between the first drive wheel axis and the second wheel axis" / "trigger being positioned between the first and second rotational axes of the wheels"....................................................................................................... 27

1.   Plaintiff's Opening Position .............................................................. 28

2.   Defendant's Answering Position........................................................ 31

3.   Plaintiff's Reply Position .................................................................. 34

4.   Defendant's Sur-Reply Position ....................................................... 37

**D.**   Terms 5 and 6: "said handle assembly permitting the operator to lift . . . the saw with one hand" and "said handle assembly permitting the operator to . . . operate the saw with one hand" ..................................................................... 39

1.   Plaintiff's Opening Position .............................................................. 40

2.   Defendant's Answering Position........................................................ 42

   (a)   Specification Supports Defendant's Construction .................................... 43

   (b)   Prosecution History Supports Defendant's Construction ......................... 46

3.   Plaintiff's Reply Position .................................................................. 49

   (a)   The Specification Does Not Restrict the Claimed Invention to Saws with Only One Handle............................................................ 49

   (b)   The Prosecution History Contains No Disclaimers of Additional Handles .................................................................................. 51

4.   Defendant's Sur-Reply Position ....................................................... 53

**E.**   Term 7: "said handle assembly being located such that the saw is substantially weight balanced, so that the saw can be utilized in a single-handed operation for cutting the workpiece while holding the workpiece with another hand of the operator" ................................................................... 54

1.   Plaintiff's Opening Position .............................................................. 55

2.   Defendant's Answering Position........................................................ 57

   (a)   The Term is Indefinite ............................................................... 57

   (b)   The Prosecution History Fails to Provide Objective Boundaries.............. 61

   (c)   If the Term is Not Indefinite, this Phrase Should be Construed Consistent with Defendant's Proposed Construction ............................... 61

3.   Plaintiff's Reply Position .................................................................. 63

|  |  | (a) | A Person of Ordinary Skill in the Art Would Understand the Scope of this Term | 64 |
|  |  | (b) | Milwaukee's Construction is Unnecessary | 67 |
|  | 4. |  | Defendant's Sur-Reply Position | 68 |
|  |  | (a) | The Term is Indefinite | 68 |
|  |  | (b) | If the Term is Not Indefinite, this Phrase Should be Construed Consistent with Defendant's Proposed Construction | 70 |

**F.** Term 8: "outwardly" ........................................................................ 70

    1. Plaintiff's Opening Position ....................................................... 70

    2. Defendant's Answering Position ................................................ 72

    3. Plaintiff's Reply Position .......................................................... 73

    4. Defendant's Sur-Reply Position ................................................ 73

**G.** Term 9: "distance between the handle assembly and the saw blade is greater than the distance between the two planes of the cutting plane defined by the saw blade extending across the throat and handle assembly plane" ......................... 73

    1. Plaintiff's Opening Position ....................................................... 73

    2. Defendant's Answering Position ................................................ 75

    3. Plaintiff's Reply Position .......................................................... 78

    4. Defendant's Sur-Reply Position ................................................ 80

**VII. CONCLUSION** .................................................................................. 81

    **A.** Plaintiff's Conclusion ................................................................ 81

    **B.** Defendant's Conclusion .............................................................. 81

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
  694 F.3d 1312 (Fed. Cir. 2012).........................................................................26

*Aptalis Pharmatech, Inc. v. Apotex Inc.*,
  718 F. App'x 965 (Fed. Cir. 2018) ...............................................................21, 54

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
  672 F.3d 1335 (Fed. Cir. 2012).........................................................................35

*AstraZeneca AB v. Mylan Pharms. Inc.*,
  19 F.4th 1325 (Fed. Cir. 2021) .....................................................................21, 54

*Atmel Corp. v. Info. Storage Devices, Inc.*,
  198 F.3d 1374 (Fed. Cir. 1999)...........................................................................7

*Avid Tech., Inc. v. Harmonic, Inc.*,
  812 F.3d 1040 (Fed. Cir. 2016).........................................................................17

*Bancorp Services, L.L.C. v. Hartford Life Ins. Co.*,
  359 F.3d 1367 (Fed. Cir. 2004)......................................................................7, 64

*BASF Corp. v. Johnson Matthey Inc.*,
  875 F.3d 1360 (Fed. Cir. 2017)....................................................................30, 75

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018).........................................................................58

*Berkheimer v. HP Inc.*,
  No. 12-c-9023 (N.D. Ill. Mar. 29, 2022)....................................................60, 61, 65

*BJ Services Co. v. Halliburton Energy Services, Inc.*,
  338 F.3d 1368 (Fed. Cir. 2003)...........................................................................7

*Braintree Labs., Inc. v. Novel Labs., Inc.*,
  749 F.3d 1349 (Fed. Cir. 2014).........................................................................56

*Carborundum Co. v. Combustion Engineering Inc.*,
  505 F. Supp. 1011 (D. Del. 1981)......................................................................11

*CCS Fitness, Inc. v. Brunswick Corp.*,
  288 F.3d 1359 (Fed. Cir. 2002).........................................................................50

*Clear Imaging Rsch., LLC v. Samsung Elecs. Co*.,
   No. 2:19-CV-00326-JRG, 2020 WL 6384731 (E.D. Tex. Oct. 30, 2020)...............................68

*DataQuill Ltd. v. Handspring, Inc.*,
   2003 WL 737785 (N.D Ill. Feb. 28, 2003) ...............................................................................67

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014)...................................................................................58, 59, 66

*Deere & Co. v. Bush Hog, LLC*,
   703 F.3d 1349 (Fed. Cir. 2012)..............................................................................................64

*Dow Chem. Co. v. Nova Chemicals Corp. (Canada)*,
   803 F.3d 620 (Fed. Cir. 2015).........................................................................................33, 38

*Fenner Invs., Ltd. v. Cellco P'ship*,
   778 F.3d 1320 (Fed. Cir. 2015).........................................................................................21, 54

*Huber Engineered Woods LLC v. Louisiana-Pac. Corp.*,
   No. CV 19-342-LPS, 2020 WL 5132922 (D. Del. Aug. 31, 2020) .........................................68

*iLife Techs. v. Body Media, Inc.*,
   90 F.Supp.3d 415 (W.D. Pa. 2015).....................................................................................30, 75

*Interval Licensing LLC v. AOL, Inc.*,
   766 F.3d 1364 (Fed. Cir. 2014).........................................................................................58, 68

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
   430 F.3d 1377 (Fed. Cir. 2005)..............................................................................................25

*LG Philips LCD Co. v. Tatung Co.*,
   No. C.A. 04-343-JJF, 2007 WL 5787789 (D. Del. June 15, 2007) .........................................47

*Mad Dogg Athletics, Inc. v. Peloton Interactive, Inc.*,
   No. 2:20-CV-00382-JRG, 2021 WL 3200994 (E.D. Tex. July 28, 2021)...............................66

*Marine Polymer Techs., Inc. v. HemCon, Inc*.,
   672 F.3d 1350 (Fed. Cir. 2012).....................................................................................16, 19, 20

*Mass. Inst. of Tech. v. Shire Pharms., Inc.*,
   839 F.3d 1111 (Fed. Cir. 2016).........................................................................................17, 41

*Medicines Co. v. Mylan, Inc.*,
   853 F.3d 1296 (Fed. Cir. 2017)..............................................................................................42

*Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*,
   No. 17-269-RGA, 2018 WL 4627661 (D. Del. Sept. 27, 2018)...........................10, 23, 30, 72

*Mformation Techs., Inc. v. Research in Motion Ltd.*,
  764 F.3d 1392 (Fed. Cir. 2014) .................................................................................... 10

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  572 U.S. 898 (2014) ........................................................................................... *passim*

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008) .................................................................................... 26

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
  467 F.3d 1355 (Fed. Cir. 2006) ............................................................................... 34, 39

*Omega Eng'g, Inc. v. Raytek Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003) .................................................................................... 47

*Pfizer Inc. v. Alkem Labs. Ltd.*,
  No. 13-1110-GMS, 2014 WL 12798743 (D. Del. Dec. 2, 2014) ........................................... 23

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) .......................................................................... *passim*

*PureWick Corp. v. Sage Prod., LLC*,
  No. CV 19-1508 (MN), 2021 WL 2593338 (D. Del. June 24, 2021) ..................................... 66

*Rexnord Corp. v. Laitram Corp.*,
  274 F.3d 1336 (Fed. Cir. 2001) ............................................................................... 50, 56

*Seachange International, Inc. v. C-COR Inc.*,
  413 F.3d 1361 (Fed. Cir. 2005) ......................................................................... 11, 16, 20

*Sentient Sensors, LLC v. Cypress Semiconductor Corp.*,
  No. 19-1868 (MN), 2021 WL 1966406 (D. Del. May 17, 2021) ........................... 2, 25, 26, 43

*Shire Dev., LLC v. Watson Pharms., Inc.*,
  787 F.3d 1359 (Fed. Cir. 2015) ...................................................................... 16, 19, 47, 52

*Tech. Properties Ltd LLC v. Huawei Techs. Co., Ltd.*,
  849 F.3d 1349 (Fed. Cir. 2017) .................................................................................... 17

*Technology Licensing Corp. v. Videotek, Inc.*,
  545 F.3d 1316 (Fed. Cir. 2008) ...................................................................................... 7

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
  789 F.3d 1335 (Fed. Cir. 2015) ............................................................................... 33, 38

*Tinnus Enterprises, LLC v. Telebrands Corporation*,
  846 F.3d 1190 (Fed. Cir. 2017) .................................................................................... 64

*TQ Delta, LLC v. 2Wire, Inc.,*
    373 F. Supp. 3d 509 (D. Del. 2019)................................................................33, 39, 43

*Trivascular, Inc. v. Samuels,*
    812 F.3d 1056 (Fed. Cir. 2016)................................................................................41

*Wasica Finance GmbH v. Continental Auto. Sys., Inc.,*
    853 F.3d 1272 (Fed. Cir. 2017)................................................................................10

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.,*
    442 F.3d 1322 (Fed. Cir. 2006)................................................................................64

**Statutes**

35 U.S.C. § 112........................................................................................................43

35 U.S.C. § 282..........................................................................................................7

## I.     INTRODUCTION

### A.     Plaintiff's Opening Introduction

Inventor Scott McIntosh pioneered a novel portable band saw able to be used singled-handedly.  Prior to Mr. McIntosh's invention disclosed and claimed in the '681 patent, vertical band saws were bulky and, therefore, unable to be easily transported to job sites.  Ex. 1, at 1:20-24.  While portable versions of band saws were developed, those band saws were heavy and required two hands to operate.  *Id.* at 1:25-28.  The operator therefore often had to hold the saw in awkward positions, such as above the operator's head, resulting in discomfort and lower back problems.  *Id.* at 1:28-31.  Mr. McIntosh's invention overcame these challenges by creating a portable, i.e. lightweight, band saw that is substantially weight-balanced and able to be used single-handedly.

After Mr. McIntosh developed his portable single-handed band saw, Mr. McIntosh realized sales success, demonstrating a need in the market for his claimed invention.  D.I. 1 at ¶15.  In fact, Mr. McIntosh, through his companies Stout Tools and Persawvere, licensed his invention to multiple major power tool manufacturers resulting in substantial royalties.  *Id.* at ¶¶16-17.  Mr. McIntosh even had several communications with Milwaukee about licensing this market-changing invention.  *Id.* at ¶¶18-21.  On no less than three separate occasions, Mr. McIntosh talked to Milwaukee about his invention, including corporate officers such as the President of the Power Tools Division, Vice-President of Marketing in its Tools and Equipment Division, and Milwaukee's internal counsel.  *Id.* at ¶¶18-21.  In good faith and under the protections of a Non-Disclosure Agreement, Mr. McIntosh shared the advantages of his invention with Milwaukee.  *Id.* Ignoring Mr. McIntosh and his innovative, patent-protected product, Milwaukee brought competing, copied, and infringing products to market, resulting in the present litigation.

Milwaukee has now identified nine terms for construction in a litigation-driven attempt to avoid infringement or unduly restrict Mr. McIntosh's inventions. Ignoring express disclosures in the patent's specification and figures, Milwaukee either propounds constructions that improperly add restrictions or limitations into the claim language or argues the terms are indefinite.

In contrast, as evident in its proposed constructions of "plain and ordinary meaning," Persawvere adheres to the teachings of the specification, which a person of ordinary skill would understand describe the claimed invention with reasonable certainty. Persawvere therefore requests that the Court adopt the plain and ordinary meaning of the disputed terms.

### B. Defendant's Answering Introduction

Plaintiff argues the claims in U.S. Patent No. 8,607,681 ("the '681 Patent") do not require construction but instead can be understood merely by applying their purported plain and ordinary meaning. Plaintiff's view is nothing more than an infringement-driven attempt to recapture claim scope surrendered during prosecution and expand the bounds of the claimed invention. Without the proper clarification of the terms, the claims will either (i) be expanded beyond the proper claim scope or (ii) be invalid as indefinite. Further undermining its arguments, even Plaintiff admits for multiple terms the plain and ordinary meaning requires clarification and interpretation in an attempt to rebut Defendant's proposed constructions. As such, adopting a plain and ordinary meaning construction for all of the disputed terms must be rejected because it fails to resolve fundamental disputes between the parties "regarding the proper scope of . . . claims," which the Court, not the jury, must decide. *See Sentient Sensors, LLC v. Cypress Semiconductor Corp.*, No. 19-1868 (MN), 2021 WL 1966406, at *1 (D. Del. May 17, 2021) (citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).

### C.       Plaintiff's Reply Introduction

In this *Markman* process, Persawvere seeks to preserve the full scope of its claims. Persawvere proposed the plain and ordinary meaning for all of the disputed terms, which can be easily understood, both by a person of ordinary skill in the art and an average juror.  Contrary to Milwaukee's arguments, Persawvere is not seeking to expand its claim scope; instead, it is Milwaukee that seeks to improperly ***narrow*** these terms to avoid infringement.  This is apparent both from the highly specific definitions Milwaukee proposes—definitions that conveniently carve out several of the accused products—as well as Milwaukee's insertion of infringement contention images into its briefing.   The Court should reject Milwaukee's attempts to use this claim construction process to manufacture non-infringement defenses.

Persawvere's constructions are supported by the specification and the prosecution history, and Milwaukee's narrow constructions are based on mischaracterizations of the intrinsic record. Nothing in the intrinsic record creates a "clear and unmistakable" disclaimer that would warrant limiting the scope of the claims—a fact that Milwaukee effectively concedes by not even addressing the "clear and unmistakable" standard in its rebuttal.  Milwaukee's constructions create confusion and ambiguity where none exists by parsing the claim terms it has raised for construction into even smaller phrases and positing scenarios that are unsupported by the disclosures of the patent.   Milwaukee's indefiniteness arguments should be rejected for the same reasons as its proposed constructions – neither are supported by the intrinsic record.  A person of ordinary skill would understand the plain and ordinary meaning of the disputed terms, just as the same skilled artisan would understand the scope of the claims with "reasonable certainty."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

## II.      DEFENDANT'S BACKGROUND OF THE '681 PATENT

### A.      The Specification

The '681 Patent describes its purported invention as a portable hand-held band saw capable of being used with one hand, which provides an advantage over prior art band saws with two handles (and thus requiring two hands). *See, e.g.*, Br. at 1; Ex. 1 at 1:20-40, 47-50. Figures 1-4 depict one embodiment of the invention and Figures 5-9b depict another embodiment. In both embodiments, the specification describes the saw as having only **one** centrally located handle (number 14 in Figures 1-4 and number 92 in Figures 5-9b). No other handle is described as part of the invention.

### B.      Prosecution History

Prosecution for the '681 Patent spanned over six years with the Patent Office rejecting Applicant's claims nine times before issuing a Notice of Allowance. During prosecution, Applicant's claims required the saw to have one handle positioned laterally across from the throat opening, and a motor and battery pack on opposites sides of the saw with a handle grip portion positioned between the motor and battery pack. *See, e.g.*, Ex. 4 at PSAW00000137-138 (claim 34). The Patent Office repeatedly rejected these claims.  Applicant presented arguments describing how the claimed invention overcame the cited prior art, including noting that the claimed invention provided a "balanced design," which was "a long standing problem in the cited art." *Id*. at PSAW00000144. However, the Patent Office disagreed and maintained its rejection of all of the claims based on multiple prior art references.

After five years and numerous rejections, Applicant cancelled all of its claims and presented new claims that were not only broader than its prior claims but also broader than the disclosures in the specification. Ex. 7 at PSAW00000077-78; Ex. 27 at PSAW00000051-52. The

4

Patent Office again rejected the claims obvious over Schepige (Ex. 28) in view of Buck (Ex. 29).

Ex. 10 at PSAW00000041-42.[1]

Schepige is a design patent and thus includes no additional description of the invention. The Patent Office relied on Schepige as teaching the vast majority of limitations present in the independent claims. *Id.* at PSAW00000041-42. Schepige is reproduced below:



Ex. 28 at Fig. 2.

In response to this latest rejection, Applicant amended the claims but did not add structural features to distinguish the invention from the cited prior art. Instead, it added undefined "qualifiers" lacking objective boundaries to then pending independent 51, which ultimately issued as independent claim 1. An excerpt of previously pending claim 51, which the Patent Office rejected, and issued claim 1 is below with the differences bolded and underlined:

| Pending Independent Claim 51 (Ex. 27 at PSAW00000051-52) | Issued Claim 1 |
|---|---|
| A portable hand-held band saw capable of being fully supported and operated by hand for performing a cutting operation using a closed loop saw blade, comprising: | A portable hand-held band saw capable of being fully supported and operated **single-handedly** for performing a **one-handed** cutting operation using a closed loop saw blade, comprising: |

---

[1] Although the header of the rejection appears to mistakenly omit independent claim 51, it states that dependent claims 48, 50, and 53, which depend from independent claim 51 are rejected as obvious in view of these cited references. Thus, claim 51 would also be obvious in view of these references.

| a handle assembly including at least a part of a hand grip portion between the first axis of the drive wheel and the second axis of the driven wheel, wherein the handle assembly extends upwardly and outwardly at an angle from the plane of the frame; | a handle assembly extending upwardly and outwardly at an angle from the plane of the frame, said handle assembly including at least a part of a hand grip portion **located** between the first axis of the drive wheel and the second axis of the driven wheel; |
|---|---|
| | **said handle assembly permitting the operator to lift and operate the saw with one hand, and said handle assembly being located such that the saw is substantially weight balanced, so that the saw can be utilized in a single-handed operation for cutting the workpiece while holding the workpiece with another hand of the operator;** |
| **Pending Independent Claim 51 (Ex. 27 at PSAW00000051-52)** | **Issued Claim 1** |
| a trigger within the hand grip portion, said trigger capable of being activated by the operator while operating the saw, and wherein the trigger is also located between the first drive wheel axis and the second wheel axis. | a trigger within the hand grip portion, said trigger capable of being activated by the operator while operating the saw **single-handedly**, and wherein the trigger is also located between the first drive wheel axis and the second wheel axis. |

Applicant's argument in support of these amended claims focused on these qualifiers to distinguish the prior art. Notably, Applicant took the position that because Schepige has two handles, this indicates that "the Schepige saw is to be used with two hands," which "is in direct contradistinction over the presently claimed invention, where it is currently reciting a single handed capability and usage." Ex. 11 at PSAW00000028-29. Following this argument, the Patent Office allowed the claims noting that "the prior art fails to teach a handle assembly permitting the operator to lit [*sic*] and operate the saw with one hand." Ex. 6 at PSAW00000013.

In sum, Applicant canceled all of its claims, presented broad new claims, and then argued to the Patent Office that its new claims should be viewed narrowly to overcome the prior art of record. Plaintiff cannot ignore those narrowing arguments now to support an infringement-driven interpretation of the claims.

6

## III.     PERSON OF ORDINARY SKILL IN THE ART

Following an exchange of emails, the parties have reached an agreement on the definition

of a person of ordinary skill in the art ("POSITA"):

> A person of ordinary skill in the art for the subject matter claimed in the '681 patent
> is a person with (i) at least an Associate's degree in engineering technology or a
> related field, or (ii) a comparable amount of post-high school education in
> engineering technology or a related field and at least 2 years of practical experience
> in analyzing, developing or manufacturing power tools. In the alternative, a person
> of ordinary skill in the art can be someone with (iii) at least six years of practical
> experience with analyzing, developing or manufacturing power tools.

## IV.     PLAINTIFF'S LEGAL STANDARDS

### A.     Indefiniteness

Patent claims are presumed to be valid and definite.  35 U.S.C. § 282.  A patent is "invalid

for indefiniteness if its claims, read in light of the specification delineating the patent, and the

prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope

of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

Indefiniteness is determined from the perspective of one of ordinary skill in the art as of the time

the application for the patent was filed.  *See id* at 911.  In determining whether a claim is indefinite,

"it is the disclosure in the specification itself, not the technical form of the disclosure that counts."

*Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1378 (Fed. Cir. 1999).  "The failure to

define the term is, of course, not fatal, for if the meaning of the term is fairly inferable from the

patent, an express definition is not necessary*."  Bancorp Services, L.L.C. v. Hartford Life Ins. Co.*,

359 F.3d 1367, 1373 (Fed. Cir. 2004).[2]

---

[2] Indefiniteness is a legal conclusion, but "to the extent there are any factual findings upon
which a trial court's indefiniteness conclusion depends, they must be proven by the challenger by
clear and convincing evidence."  *Technology Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316,
1338, (Fed. Cir. 2008); *see BJ Services Co. v. Halliburton Energy Services, Inc.*, 338 F.3d 1368,
1372 (Fed. Cir. 2003) ("[D]efiniteness … is amenable to resolution by the jury where the issues

## V.     AGREED CONSTRUCTIONS

| Term | Claims | Agreed Construction |
|------|--------|---------------------|
| "axis" | 1, 7 | "a straight line through the center of the wheel about which the wheel rotates" |

## VI.    DISPUTED CONSTRUCTIONS

### A.     Term 1: "handle assembly"

| Claims | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|--------|-----------------------------------|-----------------------------------|
| 1, 7 | plain and ordinary meaning | "the only one part of the hand-held band saw that is intended for gripping during operation" |

#### 1.     Plaintiff's Opening Position

The plain and ordinary meaning of "handle assembly" is clear from the specification, including the figures.[3]  As described, "[t]he band saw includes in its most rudimentary form a frame assembly having a handle assembly extending at an acute angle from a longitudinal edge of

---

are factual in nature").  Milwaukee argues that multiple claims are indefinite, relying upon assertions and an expert declaration regarding what a person of ordinary skill in the art would understand from the asserted patent's disclosures.  But these arguments are premature as no expert discovery has been conducted and the record has not been built as to how a person of ordinary skill in the art would understand these claims.   While Persavvere responds to Milwaukee's indefiniteness arguments here, the question of indefiniteness is better left to a later stage with a full record.

[3] Plaintiff's definition of a person of ordinary skill in the art is as follows:  A person of ordinary skill in the art for the subject matter claimed in the '681 patent is a person with at least an Associate's degree in engineering technology or a related field, or a comparable amount of post-high school education in engineering technology or a related field, and/or at least 2 years of practical experience in developing and/or manufacturing power tools.  In the alternative, a person of ordinary skill in the art can be someone with at least six years of practical experience with developing and/or manufacturing power tools.

the frame assembly." Ex. 1, '681 patent at 1:58-61.  As Figure A (annotated Figure 5) illustrates,

the handle assembly is connected to the frame assembly and includes multiple components[4]:



*Figure A.  Annotated Figure 5*

As the figure above illustrates and as described in the specification, the handle assembly is

more than just the "hand grip portion" that is separately described in the claims and specification.

*See* Ex. 1, '681 patent at claim 1 (claiming "a handle assembly extending upwardly and outwardly

at an angle from the plane of the frame, said handle assembly including *at least* a part of a *hand*

*grip portion* located between the first axis of the drive wheel and the second axis of the driven

wheel") (emphasis added).  In fact, the specification describes the handle assembly as containing

a variable speed trigger, *see id.* at 5:24-32; safety switch, *id.*; and a slide receiver for receiving

batteries, *id.* at 5:41-46, in various embodiments; *see also* Fig. A *supra* (identifying the trigger

(96) and safety switch (95)).

The prosecution history similarly describes the handle assembly as being distinct from the

hand grip portion.  While the original claims of the '681 patent did not distinguish between the

handle assembly and the hand grip portion, the claims were amended to reflect this separation.

*Compare* Ex. 3, Original Claims at PSAW00000338 (original claim 1, claiming a "hand-held

---

[4] All of the figures in the brief are also provided in Ex. 2.

power saw . . . comprising… a handle assembly" with no mention of a "hand grip") *with* Ex. 1, '681 patent at claim 1. Throughout prosecution, the applicant referred to the handle assembly and hand grip portions as two distinct parts of the saw. *See* Ex. 4, 2011-5-5 Arguments PSAW00000142-143 (identifying "[a] handle adapted to receive the battery[]" and "[a] handle grip portion[]" as two features missing in the asserted prior art combinations); *id.* at PSAW00000144 (distinguishing prior art based on the location of the "handle *with* hand grip portion") (emphasis added); Ex. 5, 2012-11-19 Response after Final Office Action (adding the claim language "a handle assembly including *at least a part* of a hand grip portion) (emphasis added); *see also* Ex. 6, Notice of Allowability, at PSAW00000013 (stating "[t]he claim is allowable because the prior art fails to teach a handle assembly permitting the operator to li[f]t and operate the saw with one hand, where a trigger within a hand grip portion is located between a first drive wheel and a second drive wheel[]").

Defendant's proposed construction of "the only one part of the hand-held band saw that is intended for gripping during operation" improperly renders the claim limitation "hand grip portion" used in the same claims redundant. *See Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*, No. 17-269-RGA, 2018 WL 4627661, at *5 (D. Del. Sept. 27, 2018) (rejecting a proposed construction that "create[d] redundant limitations"); *see Wasica Finance GmbH v. Continental Auto. Sys., Inc.*, 853 F.3d 1272, 1288 n.10 (Fed. Cir. 2017) ("It is highly disfavored to construe terms in a way that renders them void, meaningless, or superfluous."); *Mformation Techs., Inc. v. Research in Motion Ltd.*, 764 F.3d 1392, 1399 (Fed. Cir. 2014) (favoring a construction that does not render another limitation "superfluous").

Adopting Defendant's construction that the handle assembly in claims 1 and 7 "is the only one part of the hand-held band saw that is intended for gripping during operation," also renders

10

dependent claims 6 and 13 devoid of meaning, which, again, is improper.  Claims 6 and 11 specifically claim that the "handle assembly provides *the only hand grip portion useable* during operation of the saw."  Ex. 1, '681 patent at claims 6 and 13.  Principles of claim differentiation give meaning to these dependent claims and show that Defendant's proposed construction is incorrect.  *See Seachange International, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1368 (Fed. Cir. 2005) (stating "[t]he doctrine of claim differentiation stems from 'the common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope.'"); *Carborundum Co. v. Combustion Engineering Inc.*, 505 F. Supp. 1011, 1017 (D. Del. 1981) ("The concept of claim differentiation states that claims should be presumed to cover different inventions. This means that interpretation of the claims should be avoided if it would make one claim read like another.")

In sum, a person of ordinary skill in the art would understand the plain and ordinary meaning of "handle assembly" from the intrinsic evidence, and no further construction is necessary.

## 2.      **Defendant's Answering Position**

Plaintiff asserts that "a person of ordinary skill in the art would understand the plain and ordinary meaning of 'handle assembly' from the intrinsic evidence, and no further construction is necessary." Br. at 11. However, during prosecution, Applicant argued this term does not cover every part of a handle assembly on a saw. Instead, Applicant argued it was limited to the single part of the saw that was intended for gripping during operation (*i.e.*, the part next to the trigger). Defendant's proposed construction is consistent with Applicant's position during prosecution.

11

The specification depicts two embodiments, and in each embodiment, number 14 in Figures 1-4 is the "handle assembly," and number 92 in Figures 5-9b is the "handle assembly." *See* below (annotated in blue).



Ex. 1 at Fig. 3, 9a (annotated).

The specification indicates the "handle assembly" encompasses the entire blue shaded portions in the above annotated figures. For the embodiment depicted by Figures 1-4, the specification explains that "**[h]andle assembly 14 is connected to frame assembly 12 at various locations including the [laterally offset longitudinal member] LOLM 20** and medial portions of the first end 16." Ex. 1 at 3:52-54.[5] LOLM 20 (depicted by the green box). Similarly, for the embodiment depicted in Figures 5-9b, the specification explains that "one half 90 . . . of a **handle assembly 92 may be integrally formed with the chassis 52 or deck 62**." Ex. 1 at 5:24-26 (depicted by the green box). In short, in describing the handle assembly, the specification refers to more than just a single handle that is gripped during operation (*i.e.*, the area near the trigger).

---

[5] Emphasis added unless otherwise indicated.

During prosecution, however, Applicant advocated for a narrower interpretation of a "handle assembly" to avoid the prior art. Specifically, Applicant distinguished the claimed hand-held band saw from hand-held band saws with two handles, which is further discussed in Section VI.D below, and advocated for a narrow interpretation of handle assembly that was limited to only the portion of the saw intended for gripping during operation.

Original independent claim 1 recited "a handle assembly extending from said frame assembly and oriented at an acute angle relative to said frame assembly." Ex. 3 at PSAW00000338. The Patent Office rejected this claim based on U.S. Patent No. 6,829,830 to O'Banion, which disclosed the claimed handle assembly. Ex. 15 at PSAW00000292-293. The Patent Office noted that O'Banion disclosed "a handle 14 having a grip portion extending at [an] angle with respect to the frame (**see Fig. 2, the horizontal portion of the handle 14**)." *Id*. At PSAW00000292. Annotated Figure 2 from O'Banion is reproduced below with the horizontal portion of the handle 14 circled in green:



Ex. 16 at Fig. 2 (annotated).

In response to the rejection, Applicant amended independent claim 1 to recite "a handle assembly extending from said frame assembly **intermediate said drive wheel and said driven wheel and oriented at an acute angle relative to the plane of the frame assembly**." Ex. 12 at PSAW00000270.[6] This amendment may not have been sufficient to avoid O'Banion because the area circled in green is still partly intermediate the drive wheel the driven wheel. However, Applicant also argued that O'Banion does not disclose the claimed "handle assembly" because that term only refers to the portion that would be gripped during operation (*i.e.*, the portion with the trigger):

> With respect to the O'Banion reference, Applicant notes that the O'Banion handle 14 has an "L" configuration**, the grip portion of the handle is actually the vertical portion including the trigger, and that the horizontal portion of the handle was never intended for gripping and clearly does not satisfy the requirement of claim 1 of a handle assembly** extending from the frame assembly intermediate the drive wheel and the driven wheel and oriented at an acute angle relative to the plane of the frame assembly.

Ex. 12 at PSAW00000276.

Thus, despite the horizontal portion of handle 14 in O'Banion (circled above in green) being part of the unitary handle structure, Applicant advocated for a narrow construction of the term "handle assembly" that was limited to only the portion of the handle structure that was "intended for gripping" during operation.

This was not an isolated statement during prosecution. Applicant again advocated for a narrow interpretation of the term "handle assembly" when the Patent Office rejected the claims based on a different prior art reference. At that time, the independent claim recited "a handle assembly extending angularly outward from the frame and defining a hand grip portion having a

---

[6] Applicant did not amend this claim from a "handle assembly," to "hand grip portion." This is a different term and addressed below at Section VI.B.   Ex. 12 at PSAW00000276.

finger trigger, at least a portion of the handle is positioned laterally across from a throat opening." Ex. 17 at PSAW00000167-168 (Claim 41).

The Patent Office rejected this claim based on Galloway combined with other references. Ex. 18 at PSAW00000155-158. The Patent Office interpreted the "handle assembly" to include the entire unitary structure running from the vertical portion depicted by 27, 28 (red box) through the horizontal portion (green box) positioned across from the throat:



*Id.* at PSAW00000157.

In response, Applicant again took the position the "handle assembly" only included the portion that can be gripped during operation (*i.e.*, next to the trigger), which is depicted by numbers 27 and 28 (highlighted in red above). Ex. 19 at PSAW00000143-144. After arguing for a limited scope of the term "handle assembly" to only include the portion that is gripped during operation (*i.e.*, 27, 28), Applicant relied on this narrow construction to argue that Galloway does not disclose a handle assembly and a handgrip portion positioned across from the throat. *Id.*; *see also* Ex. 17 at PSAW00000170 ("Galloway further does not disclose a handle portion opposite the throat. Galloway's handle 27/28 is positioned at the far longitudinal end away from the throat as bees

15

[*sic*] seen in Figures 1 and 2"). Put simply, although part of the handle in Galloway was across from the throat of the saw (green box above), Applicant argued that this part of the handle was not the claimed "handle assembly" because that part would not be gripped by a user during operation. According to Applicant, only the handle portion with the trigger is the claimed handle assembly.

For all of these reasons, the term "handle assembly" must be limited in scope consistent with Applicant's statements during prosecution, and Defendant's construction is consistent with the prosecution history. *Shire Dev., LLC v. Watson Pharms., Inc.*, 787 F.3d 1359, 1366 (Fed. Cir. 2015) ("Although the prosecution history statements do not rise to the level of unmistakable disavowal, they do inform the claim construction.").

In response to Defendant's proposed construction, Plaintiff asserts dependent claims 6 and 13 would be rendered "devoid of meaning" under the principles of claim differentiation. Br. at 10-11. However, as the Federal Circuit has made clear, "claim differentiation is 'not a hard and fast rule and **will be overcome by a contrary construction dictated by** the written description **or prosecution history**." *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1359 (Fed. Cir. 2012); *see also Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005) ("[T]he doctrine 'only creates a presumption that each claim in a patent has a different scope; it is **not a hard and fast rule of construction**.'"). Here, Applicant twice argued for a narrower scope for this term in order to secure issuance of its patent, and Plaintiff cannot avoid those statements to the Patent Office while it asserts infringement of those same claims before this Court.

Accordingly, when properly construed in view of the entire intrinsic record, the term "handle assembly" should be construed as "the only part of the hand-held band saw that is intended for gripping during operation."

16

3.     **Plaintiff's Reply Position**

"Handle assembly" is clear on its face.  The claims differentiate between the "handle assembly" and the "hand grip portion" of that assembly, and a person of ordinary skill in the art would, therefore, understand that the "handle assembly" encompasses more than just a grip portion.  *See* Ex. 1, claims 1 and 7.  Milwaukee cites no intrinsic evidence that changes the plain and ordinary meaning of this term.

Milwaukee's construction attempts to improperly narrow the scope of this term to "the only one part of the hand-held band saw that is intended for gripping during operation," i.e. "the hand grip portion."  Br. at 11-16.  But a party that seeks to invoke prosecution history disclaimer must prove the existence of a "clear and unmistakable" disclaimer.  *See Mass. Inst. of Tech. v. Shire Pharms., Inc.*, 839 F.3d 1111, 1119 (Fed. Cir. 2016).  When determining whether disclaimer applies, courts are to "consider the statements in the context of the entire prosecution."  *Tech. Properties Ltd LLC v. Huawei Techs. Co., Ltd.*, 849 F.3d 1349, 1357-58 (Fed. Cir. 2017).  "Where the alleged disavowal is ambiguous, or even 'amenable to multiple reasonable interpretations,' [courts] have declined to find prosecution disclaimer."  *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016).

No "clear and unmistakable" statement in the prosecution history of the asserted patent narrows the scope of "handle assembly."  First, Milwaukee misreads the applicant's distinction of O'Banion.  The applicant made the following remarks:

> With respect to the O'Banion reference, Applicant notes that the O'Banion handle 14 has an "L" configuration, the grip portion of the handle is actually the vertical portion including the trigger, and that the horizontal portion of the handle was never intended for gripping and clearly does not satisfy the requirement of claim 1 of a handle assembly extending from the frame assembly intermediate the drive wheel and the driven wheel and oriented at an acute angle relative to the plane of the frame assembly.

17

Ex. 12 at -276.  The red text above reflects the applicant's statement regarding the O'Banion reference, while the blue text refers to the claimed invention.  *Id.*  Nothing in this statement suggests that "handle assembly" is limited to only the "hand grip portion" of the saw.  In fact, the applicant distinguished O'Banion from the claimed handle assembly, which includes but is not limited to, the hand grip portion.  Thus, this language does not amount to "clear and unmistakable" disclaimer of the full scope of the handle assembly.

Milwaukee argues that the applicant took a position narrowing the claimed "handle assembly" in Claim 41[7] to "only the portion that can be gripped during operation" in response to a rejection over Galloway.  Br. at 15-16.  But Milwaukee ignores that Claim 41 recited "a ***handle assembly*** extending angularly outward from the frame and defining a hand grip portion having a finger trigger, at least a ***portion of the handle*** is positioned laterally across from a throat opening . . . ***at least a portion of the handle grip portion*** is positioned longitudinally between the battery and the motor."  Ex. 19 at -139.  This language indicates that "handle assembly" is distinct from the "portion of the handle" that is the "handle grip portion."  In fact, the Patent Office understood the "portion of the handle" to be separate from the "handle assembly," explaining that Galloway separately discloses "a handle defining a grip portion (see modified Fig. 2) and positioned in lateral alignment with the throat" and "a handle assembly at an acute angle (see Fig. 1), as well as "a D-shaped handle (see Fig. 2).  Ex. 18 at -155.  In addressing the examiner's rejection over Galloway, the applicant, again, refers to the "handle assembly" and "handle portion" separately:

> Neither Galloway nor Dean (or Van Camp) disclose the claimed battery position, orientation and function with respect to the ***handle*** (or in the broader saw); and

> Neither Galloway nor Watson disclose the ***claimed handle position***, orientation and function with respect to the saw frame, throat and battery.

---

[7] Claim 41 was subsequently canceled by the applicant in response to a further rejection from the Patent Office and none of Claim 41's limitations appear in the asserted claims.  *See* Ex. 7 at -082.

> Respecting claim 41 and as specifically explained above: []None of the cited references disclose the ***handle portion*** as claimed positioned laterally across from the throat opening (as claimed) with a grip portion positioned between the battery and the motor.

Ex. 19 at -145 (emphasis added).  As shown above, the applicant's statements did not distinguish art by conflating "handle assembly" with "hand grip portion" and, thus, no disclaimer of the full scope of "handle assembly" occurred.[8]

Milwaukee concedes that there is no "clear and unambiguous statement" amounting to a prosecution history disclaimer that would limit the scope of handle assembly.  *See* Br. at 16 (quoting *Shire*, 787 D.3d at 1366: "Although the prosecution history statements *do not rise to the level of unmistakable disavowal*, they do inform the claim construction").  However, Milwaukee's attempts to circumvent the "clear and unmistakable" requirement for disclaimer should be rejected. In *Shire Dev. LLC*, the issue was whether the claims required that two matrices be separate from one another, and the Court noted that the "structure of the claims" themselves required the matrices to be distinct because the claims recited two different matrix elements, one inner and one outer. *See id.* at 1366.  Additionally, the court concluded that the "ordinary meaning of the claim terms" required that the matrices be separate, because they had mutually exclusive compositional characteristics.  *See id.*  No such intrinsic evidence supports Milwaukee's narrowing construction here.  In fact, as discussed above, all of the intrinsic evidence supports that "handle assembly" and "hand grip portion" are separate, albeit related, parts.

Milwaukee also argues that the presumption of claim differentiation can be overcome by "a contrary construction ***dictated*** by the written description or prosecution history."  *See Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1359 (Fed. Cir. 2012).  Milwaukee's reliance

---

[8] The asserted claims no longer refer separately to a "portion of the handle."

on *Marine Polymer* is misplaced, however, because there express teachings in the specification required a contrary construction, overcoming the presumption of claim differentiation. *See id.* at 1358-1359. No such teachings exist here to justify a construction that would render claim language such as "hand grip portion" redundant or meaningless. Additionally, the prosecution history here does not "dictate" a contrary construction, unlike in *Seachange Int'l*, *Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005), where the Court concluded that the presumption of claim differentiation was overcome by statements that met the standard for prosecution history disclaimer. *See id.* at 1372-1375 (reciting and applying requirement that disclaimer be "clear and unambiguous"). As shown above, Plaintiffs never limited the scope of "handle assembly" in either the specification or prosecution history to just the "hand grip portion."

### 4.    **Defendant's Sur-Reply**

Contrary to Plaintiff's assertion the term "is clear on its face" and that "Milwaukee cites no intrinsic evidence that changes the plain and ordinary meaning of this term," Br. at 17, Defendant's position is based on statements made by Applicant during prosecution. Br. at 13-16. The prosecution history "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips v. AWH Corp.,* 415 F.3d 1303, 1317 (Fed. Cir. 2005). Here, the prosecution history confirms the Applicant applied a specific interpretation to this term to avoid the prior art.

Plaintiff attempts to avoid Applicant's admissions by focusing on an alleged lack of a "clear and unmistakable" disavowal of claim scope rising to the level of prosecution history disclaimer. Br. at 17-19. But the Federal Circuit has held that "even in the absence of a clear and unmistakable disavowal . . . the prosecution history can be evaluated to determine how a person of

ordinary skill would understand a given claim term." *Aptalis Pharmatech, Inc. v. Apotex Inc.*, 718 F. App'x 965, 971 (Fed. Cir. 2018); *see also AstraZeneca AB v. Mylan Pharms. Inc.*, 19 F.4th 1325, 1335 (Fed. Cir. 2021). Indeed, "[a]ny explanation, elaboration, or qualification presented by the inventor during patent examination is relevant [to the scope of the term]." *Fenner Invs., Ltd. v. Cellco P'ship*, 778 F.3d 1320, 1323 (Fed. Cir. 2015).

In this case, after the Patent Office rejected the then-pending claims in view of O'Banion, Applicant amended the claims and argued:

> With respect to the O'Banion reference, Applicant notes that the O'Banion handle 14 has an "L" configuration**, the grip portion of the handle is actually the vertical portion including the trigger, and that the horizontal portion of the handle was never intended for gripping and clearly does not satisfy the requirement of claim 1 of a handle assembly** extending from the frame assembly intermediate the drive wheel and the driven wheel and oriented at an acute angle relative to the plane of the frame assembly.

Ex. 12 at PSAW00000276. Plaintiff asserts that "[n]othing in this statement suggests that 'handle assembly' is limited to only the 'hand grip portion' of the saw," and that "the applicant distinguished O'Banion from the claimed handle assembly, which includes but is not limited to, the hand grip portion." Br. at 17-18. Plaintiff is wrong. At the time of this rejection, pending claim 1 only recited a "handle assembly" and did not require a separate hand grip portion. Ex. 3, Ex. 12. Moreover, Applicant expressly linked "intended for gripping" to the "handle assembly" term by arguing that the horizontal portion of O'Banion's handle "was never intended for gripping and clearly does not satisfy the requirement of claim 1 of a handle assembly." Ex. 12 at PSAW00000276. Applicant's admissions are relevant intrinsic evidence that inform the meaning of this term, demonstrate "how the inventor understood the invention," and confirm that "the inventor limited the invention in the course of prosecution." *Phillips*, 415 F.3d at 1317.

Accordingly, when properly construed in view of the **entire intrinsic record**, the term "handle assembly" should be construed as "the only part of the hand-held band saw that is intended for gripping during operation."

**B.    Term 2:  "hand grip portion"**

| Claims | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|--------|-----------------------------------|-----------------------------------|
| 1, 7 | plain and ordinary meaning | "the part of the portable hand-held band saw that the user holds onto during operation" |

**1.    Plaintiff's Opening Position**

The plain meaning of the term "hand grip portion" is evident from the disclosure in the specification.  As both the specification and common sense inform the skilled artisan, the "hand grip portion" is a portion of the saw that the user grips during use of the saw.  *See* Ex. 1, '681 patent at 4:21-23 (stating that "[t]he handle assembly 14 includes a pistol grip 42 having a trigger assembly 44 for controlling the cutting speed of the motor 26."); *id.* at 7:29-59 (describing the single-handed use of the claimed band saw by grasping a portion of the handle assembly); *see* Fig. A *supra.*  The language of claim 1 makes that evident, requiring the trigger, which starts the saw, to be included in the hand grip portion:

> a trigger *within the hand grip portion*, said *trigger capable of being activated by the operator while operating the saw single-handedly*, and wherein the trigger is also located between the first drive wheel axis and the second wheel axis.

Ex. 1, '681 patent at claim 1 (emphasis added); *see also id.* at 7:35-40 (describing the user being able to "grasp the saw in one hand and position or stabilize the stock with the other hand"); *id.* at 7:60-8:5 (describing the use of the saw by grasping the handle in one hand and activating the trigger).

The prosecution history further supports the plain and ordinary meaning of the term. Amending its claims to add the claimed axes language, the applicant stated that the claimed invention was non-obvious over the prior art because, among other reasons, "the hand grip portion is recited as being between the two axes of the drive wheel and the driven wheel, which none of the prior art discloses. Such a location for the hand grip portion yields incredible advantages where the saw can truly be utilized and operated by one hand." Ex. 7, 2012-4-23 Amendment, at PSAW00000079. The examiner agreed, noting that the prior art failed to teach the positioning of the hand grip portion between the first and second drive wheels. Ex. 6, Notice of Allowability, at PSAW00000013.

Defendant includes "the part of the portable hand-held band saw" as part of its proposed construction of "hand grip portion." But it is common sense that the "hand grip portion" is part of the portable hand-held band saw, given that the claim already calls for "[a] portable hand-held band saw." Ex. 1, '681 patent at claim 1. "The part of the portable hand-held band" part of Defendant's construction renders the term "hand grip portion" redundant with other claim language. *See Mfg. Res. Int'l*, 2018 WL 4627661, at *5 (rejecting a proposed construction that "create[d] redundant limitations"). This verbiage is also unnecessary since terms are to be read in the context of the entire claim, which naturally states that the "hand grip portion" is part of the saw. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (noting that claims are to be construed in "the context of the entire patent, including the specification").

Defendant's construction "the part of the portable hand-held band saw that the user holds onto during operation" also inserts an actor (a user) and an action (hold[ing] onto during operation) into the claim. Defendant's construction, thus, reads in process limitations into a product claim. *See Pfizer Inc. v. Alkem Labs. Ltd.*, No. 13-1110-GMS, 2014 WL 12798743, at *1 & n.1 (D. Del.

Dec. 2, 2014) (refusing to read process limitations into a product claim, stating "[a]s conceded by the Defendants, claim 1 is defined solely by the structural characteristics of the compound and makes no mention of any process limitations.  It is a pure product claim.")  In fact, Defendant argued that such a conflation of apparatus and method steps in a single claim was improper and would invalidate the claims *yet proposed this construction anyway*.  *See* Ex. 8, Milwaukee's Invalidity Contentions at 2-3.[9]  Claims 1 and 7 which contain the disputed "hand grip portion" terms are apparatus claims, and infringement can be assessed upon analyzing the saw itself, not undergoing a particular method or steps of use.

Thus, a person of ordinary skill in the art would understand the plain and ordinary meaning of "hand grip portion" from the intrinsic evidence, and no further construction is necessary.

2.    **Defendant's Answering Position**

Plaintiff asks this Court to adopt a plain and ordinary meaning construction for the term "hand grip portion" but then states "the 'hand grip portion' is a portion of the saw that the user grips during use of the saw." Br. at 22. Plaintiff's position is very similar to Defendant's construction, and merely uses slightly different verbiage as indicated by the color-coded comparison in the table below[10]:

| Plaintiff's Argument | Defendant's Construction |
|---|---|
| "a portion of the saw that the user grips during use of the saw" | "the part of the portable hand-held band saw that the user holds onto during operation" |

---

[9] Plaintiffs do not agree with Milwaukee's characterization of each of the asserted claims as indefinite for citing both an apparatus and method claims and will respond to those arguments pursuant to the timing set out in this Court's Scheduling Order (D.I. 14).

[10] Plaintiff argues that Defendant's proposed construction cannot be adopted because it includes "the part of the portable hand-held band saw," which is redundant, and also includes an actor (a user) and an action (hold[ing] onto during operation) that reads in process limitations. Br. at 23-24. Plaintiff's argument is baseless in light of its explanation of the meaning of the term "hand grip portion" that also includes the same elements it faults in Defendant's construction.

Defendant agrees with Plaintiff's admission and adopts this construction. A construction is still required because the term "hand grip portion" does not appear in the specification and was not in the original claims. Further, a construction will help the fact-finder distinguish this term from the "handle assembly" term.  In short, a construction will define the term and set proper boundaries as to claim scope. The Court, not a jury, should set those boundaries by construing this term now. *See Sentient*, 2021 WL 1966406, at *1.

3.    **Plaintiff's Reply Position**

Milwaukee misunderstands Persawvere's position – Plaintiff has not, and is not, proposing a construction for the term "hand grip portion."  In its Opening Brief, Persawvere explained why a person of ordinary skill in the art would understand this term on its face.  Persawvere maintains that a person of ordinary skill in the art would easily understand the meaning of "hand grip portion," and so would a juror.

As discussed in Plaintiffs' Opening Brief, and as Milwaukee fails to address, inserting a user and the action "holds onto during operation" improperly adds a process to an apparatus claim. *See IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005) (finding claim indefinite because by reciting "both a system and the method for using that system, it does not apprise a person of ordinary skill in the art of its scope").  On the plain language of the claim, infringement should be assessed based on analyzing the saw alone, and should not require analysis of the saw being used by the end-user.[11]

---

[11] While Persawvere asserts that no construction of the term is necessary, if the Court chooses to construe the term, language that mirrors that the language already in the claims would clarify the term without causing the problems posed by Milwaukee's construction.  For purposes of clarification, a person of ordinary skill in the art would understand that "hand grip portion" means "a portion of the saw capable of being gripped by the operator during use."

Milwaukee claims that construction is necessary in order to help the fact-finder, and argues that the Court should set boundaries for the term now.  *See* Br. at 25 (citing *Sentient*, 2021 WL 1966406, at *1, citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008)).  The Court's ruling in *Sentient* does not prove Milwaukee's point, as the Court refused to reconsider its prior ruling declining to construe a term from a claim's preamble.  See *Sentient* at *2.  Additionally, Milwaukee's reliance on *O2 Micro* case is similarly inapt.  The Federal Circuit in *O2 Micro* found it improper to leave an issue of claim construction, a question of law, to the jury.  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361-62 (Fed. Cir. 2008).  But the Federal Circuit did not go so far as to prohibit district courts from adopting the plain and ordinary meaning of a term.  *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1325-26 (Fed. Cir. 2012) (concluding district court did not err in concluding terms have plain meanings that do not require additional construction).  Regardless, if this Court adopts the plain and ordinary meaning of the term "hand grip portion," the Court will have resolved any outstanding claim construction arguments, recognizing that the claims do not require a user or actor to meet the limitations of the claims.

### 4.    Defendant's Sur-Reply Position

After describing the alleged meaning of the term "hand grip portion" in its opening brief by stating "the 'hand grip portion' is a portion of the saw that the user grips during use of the saw, Br. at 22, Plaintiff now backpedals and asserts in its reply that it "has not, and is not, proposing a construction for the term." Br. at 25. Plaintiff's argument about the meaning of this term in its opening brief, and retraction in its reply brief, is exactly why the Court needs to construe this term. Plaintiff cannot be permitted at trial to describe the alleged meaning of this term when it is convenient to its positions, while simultaneously arguing this term has no specific definition when

it is convenient for other positions. Instead, the Court should construe the boundaries of this term

so the jury understands, and so the Plaintiff cannot alter, the scope of this term.

C.  **Terms 3 and 4:  "hand grip portion located between the first axis of the drive wheel and the second axis of the driven wheel" and "wherein the trigger is also located between the first drive wheel axis and the second wheel axis" / "trigger being positioned between the first and second rotational axes of the wheels"**

| **TERM**:  "hand grip portion located between the first axis of the drive wheel and the second axis of the driven wheel" | | |
|---|---|---|
| **Claims** | **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| 1, 7 | plain and ordinary meaning | This claim term is indefinite.<br><br>In the alternative, this term should be construed as follows: "a hand grip portion located on a line between the first axis of the drive wheel and the second axis of the driven wheel when viewed from a top view"[12] |

| **TERM**:  "wherein the trigger is also located between the first drive wheel axis and the second wheel axis" / "trigger being positioned between the first and second rotational axes of the wheels" | | |
|---|---|---|
| **Claims** | **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| 1, 7 | plain and ordinary meaning | These claim terms are indefinite.<br><br>In the alternative, these terms should be construed as follows: "the entire trigger is located on a line between the first drive wheel axis and the second wheel axis when viewed from a top view" / "the entire trigger is located on a line between the first and second rotational axes of the wheels when viewed from a top view"[13] |

---

[12] As explained in Defendant's Answering Brief and Sur-Reply Brief, Defendant asserts this term is indefinite and withdraws this alternative construction.

[13] As explained in Defendant's Answering Brief and Sur-Reply Brief, Defendant asserts this term is indefinite and withdraws this alternative construction.

### 1.    Plaintiff's Opening Position

The phrases "hand grip portion located between the first axis of the drive wheel and the second axis of the driven wheel" and "wherein the trigger is also located between the first drive wheel axis and the second wheel axis"/ "trigger being positioned between the first and second rotational axes of the wheels" in the '681 patent do not require construction, as the phrases have a plain and ordinary meaning to a person skilled in the art.

The '681 patent's intrinsic evidence lays out the location of both the hand grip portion of the handle assembly and the trigger, i.e. that both are located between the axes of the drive and driven wheels.  As the patent notes, "one of the advantages provided by the invention is the one-handed balanced operation [] achieved by locating the handle intermediate the drive and driven pulleys 22, 28, respectively, rather than outboard as in previous designs."  Ex. 1, '681 patent at 4:13-20; *see also* 3:36-41 (noting that the terms "wheel" and "pulley" may be used interchangeably); *id.* at 5:40-6:24.  As shown in Figure B below, the trigger is located on the hand grip portion of the handle assembly and is located between (vertical blue line) the axes of the drive wheel and driven wheel (horizontal blue line):



*Figure B.  Annotated Figure 3*

*See also* 4:13-20 (describing the handle assembly as being between the drive and driven pulleys); 4:21-25 (describing the handle assembly having a pistol grip including the trigger).

Defendant's attempt to insert a particular orientation – the top view – into its proposed construction ignores the patent's disclosures. The handle assembly, which naturally includes both the hand grip portion and the trigger, is not directly above the line between the drive and driven wheel, as shown in both Figure B above and Figures C and D below:



Figure C.  Annotated Figures 1 and 7



Figure D. Annotated Figure 6

Referencing Figure D (Annotated Figure 6) shown above, the specification recognizes that the handle assembly can be offset, stating:

> In the preferred embodiment, handle assembly 92 is angled relative to deck 62. Most preferably, the plane normal or perpendicular to deck 62 is disposed at an acute angle to a plane substantially parallel to the handle assembly 92. With the handle in this orientation, the center of gravity of the saw is located below the handle and properly positions the saw blade parallel to the handle. In this way, the natural orientation of the user's hand greatly assists in providing better control of the cut.

Ex. 1, '681 patent at 5:32-40; *see also id.* at 2:54-59 (stating "[a] unique feature of this method is the manner in which the saw body is automatically oriented at an acute angle relative to the handle to properly position the saw blade in a plane generally parallel to the plane of the handle [s]o that the cute can be easily controlled by the user"); *id.* at 3:52-56 (stating that the "Handle assembly 14 is connected to frame assembly 12 at various locations including the [laterally offset longitudinal

29

member] 20 and medial portions of the first end 16 such that the center of gravity of the cut-off saw 10 is disposed centrally below handle assembly 14."); *id.* at 7:45-59 (describing the positioning of the handle as an improvement over the prior art which included handles "at an extreme end of the saw body").  Thus, Defendant's constructions of the hand grip portion and trigger requiring that both to be "located on a line between the first drive wheel axis and the second wheel axis when viewed from a top view"[14] contradicts the teachings of the specification.

Defendant's proposed constructions also introduce ambiguity into the claims where none exists and should be rejected.  It is unclear whether Defendant's claim constructions require both the hand grip portion and trigger to lay exactly on the line extending from the axes of the drive and driven wheels.  Because the construction introduces ambiguity rather than clarity, it should be rejected.  *See Mfg. Res. Int'l, Inc.*, 2018 WL 4627661, at *4 (refusing to adopt a construction that inserts more ambiguity than clarity into the claim term).

Given that Defendant failed to raise an indefiniteness argument in its Invalidity Contentions concerning terms 3 and 4, *see* Ex. 8, Defendant has waived this defense.[15]  To the extent the Court permits Defendant to challenge the indefiniteness of this limitation, it is Defendant's burden to show indefiniteness by clear and convincing evidence – an exacting burden that Milwaukee cannot meet.  *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017); *iLife Techs. v. Body Media, Inc.*, 90 F.Supp.3d 415, 423 (W.D. Pa. 2015) (noting that

---

[14] Defendant's constructions have minor differences in terminology to account for the claim language that, as Plaintiff currently understands the constructions, do not affect the claim construction analysis.

[15] Defendant raised an indefiniteness argument against all of the asserted claims for reciting both an apparatus and method of using the apparatus.  Ex. 8, Milwaukee's Invalidity Contentions at 3.  With the sparse disclosure of this argument in its contentions, Plaintiff does not understand Defendant to be arguing that this particular term has the alleged indefiniteness issue.  No other indefiniteness issues were raised with respect to this term.

"[i]n order to meet the 'exacting standard' to prove indefiniteness, an accused infringer must demonstrate by clear and convincing evidence that the claims, read in light of the specification and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention").  As discussed above, the phrases "hand grip portion located between the first axis of the drive wheel and the second axis of the driven wheel" and "wherein the trigger is also located between the first drive wheel axis and the second wheel axis"/ "trigger being positioned between the first and second rotational axes of the wheels" are not indefinite because a person of ordinary skill in the art would understand the claims with "reasonable certainty" given the description in the specification.  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014).

2.       **Defendant's Answering Position**

These terms require that the hand grip portion and the trigger be located "between" the axes of the drive and driven wheels.  However, the intrinsic record fails to explain which perspective a POSITA should view the saw to assess whether these limitations are met, thus rendering the claims invalid as indefinite for failing to provide objective boundaries.  As explained by Dr. Nayfeh, depending on which perspective a POSITA views the saw, whether the hand grip portion and trigger fall between the wheel axes can change. Ex. 30 at ¶¶ 27-31.

Plaintiff's opening brief illustrates why these terms are indefinite. Plaintiff's annotated Figure 3 (reproduced below with red arrows and text, and blue lines) depicts the handle grip portion and trigger. If the saw is viewed from this perspective, arguably the hand grip portion (42) and trigger (44) are located "between" the axes of the drive and driven wheels (orange lines):



*Figure B.  Annotated Figure 3*

However, if the same saw is viewed from a different perspective (such as an oblique end view in Figure 1), the hand grip portion and trigger are **not** located "between" the axes of the drive wheel (orange lines). Instead, they are offset from these axes:



Thus, depending on which perspective a hand-held band saw is viewed, the saw fluctuates between possibly falling within the scope of the claim or falling outside the scope of the claim. The claims, specification, and prosecution history fail to resolve this inherent ambiguity because there is no guidance for a POSITA to determine which perspective should be used to view the saw when assessing these terms. Ex. 30 at ¶¶ 32-36.

The claims fail to provide any objective guidance. The claims merely state a "hand grip portion located between" the axes of the drive wheel and driven wheel, and the trigger located "between" the axes of the drive wheel and driven wheel. Ex. 1 at cls. 1, 7. This does not clarify

which perspective a POSITA must use.  Similarly, the specification does not provide any guidance. These terms are not even used in the specification and were not present in the original claims.

Applicant first added claims describing the position of the hand grip portion and trigger "between" the axes of the wheels in an entirely new set of claims after it cancelled all previously pending claims. Ex. 7 at PSAW00000077 (claim 46); PSAW00000078 (claim 51). But when adding these new claims, Applicant did not provide any explanation about the proper scope of these terms and did not describe which perspective a POSITA should use to evaluate this term. Applicant did not link these terms to any figures or portions of the written specification. In short, Applicant added entirely new terms and failed to explain the meaning of those new terms based on the specification. As such, nothing in the prosecution history provides guidance to a POSITA as to how to properly assess the scope of these claims.

In sum, the inherent ambiguity with the word "between" is not resolved by the claims, specification, or prosecution history. Given the different subjective assessments that can be made depending on how a POSITA chooses to view the hand-held band saw, the claims are indefinite. *See Dow Chem. Co. v. Nova Chemicals Corp. (Canada),* 803 F.3d 620, 634 (Fed. Cir. 2015) (holding claims indefinite where the existence of multiple methods leads to different results without guidance in the specification or the prosecution history as to which method should be used); *see also Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1345 (Fed. Cir. 2015).[16]

---

[16] Plaintiff asserts that Defendant waived this indefiniteness defense because it failed to raise it in its initial invalidity contentions. Br. at 30. Notably, Plaintiff cites no case law supporting its position. It is well-established in Delaware that indefiniteness arguments are not waived, even if not raised during claim construction. *See TQ Delta, LLC v. 2Wire, Inc.*, 373 F. Supp. 3d 509, 523 (D. Del. 2019) ("Defendant has not waived its indefiniteness defense. There is no requirement that indefiniteness be raised at claim construction. Moreover, case law in this district supports Defendant's position 'that the submission of a proposed construction for a claim term does not amount to a waiver of a later indefiniteness challenge,' and thus the failure to raise indefiniteness at claim construction is not a waiver. Therefore, I determine that Defendant has not waived its

### 3. Plaintiff's Reply Position

Milwaukee should not be permitted to advance an indefiniteness theory that it did not raise in its invalidity contentions.  *See* Ex. 31 (Milwaukee's Initial Invalidity Contentions).  The Court's Scheduling Order instructs the Defendant to "produce its initial invalidity contentions for each asserted claim."  Dkt. No. 14.  The contentions stage is intended to provide notice of the arguments a party intends to pursue.  *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (describing patent rules regarding invalidity contentions as requiring "parties to crystallize their theories of the case early in the litigation" in order to "prevent the 'shifting sands' approach to claim construction").  Milwaukee's cited cases are no defense to its failure to disclose this theory – none concern disclosure requirements in contentions.

Milwaukee argues that the visual perspective changes the meaning of these terms.  That is incorrect.  As shown by the figures, including Figure 1 on which Milwaukee relies, the perspective does not change the meaning of "between."  Looking at Milwaukee's annotated Figure 1, the hand grip portion is located "between" the drive wheel axis and the driven wheel axes as shown on the green line below:



---

indefiniteness defense.") (internal citation omitted). Milwaukee reserves the right to assert that any claim is indefinite, lacks written description, and/or is not enabled at summary judgment and/or trial.

Figure 1 – the same figure Milwaukee annotates in its rebuttal – provides a person of ordinary skill in the art with "reasonable certainty" on what the scope of the "between."  Nothing about the position of the "hand grip portion" or the "trigger" in the Figures changes based upon the perspective with which one views the saw embodied in the Figures.  *See* Ex. 1 at Fig 1 (oblique end view), Fig. 2 (bottom view of Fig. 1), Fig. 3 (oblique side view of Fig. 1), Fig. 4 (perspective bottom view of Fig. 1), Fig. 5 (side elevation view), Fig. 6 (opposite side elevation view of Fig. 5) Fig. 7 (end elevation view of Fig. 6), Fig. 8 (opposite elevation view of Fig. 6), 3:1-18.  The meaning of "between" does not change based on the "perspective" in which the viewer looks at the saw embodiments in the Figures.  *See* Ex. 1 at Figs. 1-9a (the "hand grip portion" and "trigger" are located in the same position "between" the two axes, as annotated above in Fig. 1, in each Figure).

Milwaukee argues that the term "between" requires positioning directly on a line drawn from, and perpendicular to, the lines of the two claimed axes.  Not so.  Indeed, as shown above, Figure 1 illustrates that the "hand grip portion" and "trigger" are, in fact, ***not*** located directly on a line drawn from, and perpendicular to, the lines of the two claimed axes.  *See* Br. at 32 (annotated Fig. 1).  There is no dispute that the drawings in a patent can inform a person of ordinary skill in art as to the meaning of claim terms.  *See, e.g., Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1348 (Fed. Cir. 2012) (concluding district court erred in construing claims because disclosures in patent's figures precluded that construction).  A person of ordinary skill in the art would understand from the positioning of the "hand grip portion" and "trigger" in Figure 1 that "between" in the context of the claims cannot mean that either component is located on the line Milwaukee draws in Figure 1.  No confusion exists.

The specification is also clear – the hand grip portion must be located between the first axis of the drive wheel and the second axis of the driven wheel.  No ambiguity exists.  The specification explains that the one-handed operation of the claimed invention is achieved by the location of the handle "intermediate the drive and driven pulleys 22, 28 respectively, rather than outboard as in previous designs."  Ex. 1 at 4:13-20.  Additionally, the specification explains that the positioning of the handle is an improvement over prior art that included handles "at an extreme end of the saw body."  *See* Ex. 1 at 7:45-59; *see also id.* at 3:42-46 (describing "frame assembly 12 depending angularly from *centrally located* handle assembly 14. FIGS. 1 and 2 best illustrate the *location of the handle assembly 14 intermediate the extreme ends* of the C-shaped frame assembly 12) (emphasis added).

Additionally, a person of ordinary skill in the art would understand the meaning of "between," and scope of this term, from the prosecution history.  When the applicant added this claim term, it distinguished Galloway because "the hand grip portion is recited as being between the two axes of the drive wheel and the driven wheel."  Ex. 7 at -079.  In Galloway, the hand grip portion is located at an extreme end of the saw and not between the axes as depicted in the Figures in the asserted patent:



*See* Ex. 18 at -157 (annotated to identify the hand grip portion) *compare* Figure B *supra* at 32.

Based on the ample guidance in the Figures, specification, and prosecution history, nothing in the intrinsic record supports Milwaukee's construction that the "hand grip portion" must be located on a line between the axes of the drive and driven wheels, and the Court should apply the terms' plain and ordinary meaning.  Furthermore, a person of ordinary skill in the art would understand with "reasonable certainty" the scope of Terms 3 and 4 and the terms are not, therefore, indefinite.  *See Nautilus, Inc.*, 572 U.S. at 901.

### 4.    **Defendant's Sur-Reply Position**

As explained by Defendant's expert Dr. Nayfeh, depending on how a POSITA views the saw, the hand grip portion and trigger will or will not fall between the wheel axes.  Ex. 30 at ¶¶ 27-31.  The intrinsic record fails to explain which perspective a POSITA should use to view the saw.  Thus, the claims are invalid as indefinite for failing to provide objective boundaries.

Plaintiff relies on mere attorney argument about how it assumes a POSITA would have understood this term. Br. at 34-37. Specifically, Plaintiff relies on annotated Figure 1:



Plaintiff argues the "hand grip portion is located 'between' the drive wheel axis and the driven wheel axes **as shown on the green line**." Br. at 34.   But this "between" term was added nearly five years after the initial application was filed as part of a new claim set, and the meaning of "between" the two axes, let alone Plaintiff's new green line argument, is not in the specification.

Moreover, Plaintiff fails to offer any expert rebuttal testimony to Dr. Nayfeh and fails to offer any expert testimony to support its attorney argument that the green line is "between" the axes. In the figure above, the parties agree the yellow dotted lines reflect the position of the wheel axes. D.I. 32-1 at 2. The common definition of "between" is "in or through the space that separates (two things)." Ex. 33. The specification does not offer any alternative meaning. As such, a POSITA would not understand the entire green line as falling "between" the two axes, let alone as the only way to describe portions of the saw between the axes. Ex. 30 at ¶¶ 28-31.

Even assuming Plaintiff's green line could refer to portions of the saw that are "between" the axes, this argument further supports Defendant's indefiniteness arguments because it provides yet another interpretation of what is meant by the claim language. As explained by Dr. Nayfeh, a POSITA would have understood the language "between" the two axes as encompassing those portions of the saw located between the axes (*i.e.*, in the plane formed between those axes, as depicted by the blue line in the above figure). Ex. 30 at ¶¶ 28-31. Under Plaintiff's view, the same saw could also be interpreted as having portions "between" the axes term based on its green line interpretation. However, a term that is subject to two different meanings is indefinite, unless the claims or specification inform a POSITA which meaning should be applied. *See Dow Chem. Co. v. Nova Chemicals Corp. (Canada),* 803 F.3d 620, 634 (Fed. Cir. 2015) (holding claims indefinite where multiple methods lead to different results without guidance in the intrinsic record as to which method should be used); *see also Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1345 (Fed. Cir. 2015). The claims, specification, and prosecution history fail to resolve this inherent ambiguity, and that renders this term indefinite.[17] *See* Br. at 31-33.

---

[17] Plaintiff's reliance on the prosecution history does not inform the meaning of the disputed term. Br. at 36. When Applicant added the "between" claim limitations, it was part of an amendment that canceled all pending claims and submitted entirely new claims. Ex. 7. As part of this

Finally, Plaintiff again asserts that Defendant waived its right to raise an indefiniteness argument because it did not include it in its initial invalidity contentions. Plaintiff fails to provide any case supporting this assertion.  Br. at 34.  Plaintiff's reliance on *O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) is inapplicable. That case addresses "the interpretation and application of the Northern District of California's local rules for patent cases" and referred to the denial of O2 Micro's motion to amend **final** infringement contentions and supplement its expert report, not Delaware's rules or the initial contentions (like in this case). *O2 Micro*, 467 F.3d at 1362, 1369-1370.[18] Further undermining Plaintiff's argument is the fact that Defendant disclosed its position in the Joint Claim Construction Chart and during the meet-and-confer process before any claim construction briefs were filed. D.I. 32-2. Put simply, Plaintiff was on notice of, and Defendant properly disclosed, its position.

### D. Terms 5 and 6:  "said handle assembly permitting the operator to lift . . . the saw with one hand" and "said handle assembly permitting the operator to . . . operate the saw with one hand"

| TERM:  said handle assembly permitting the operator to lift . . . the saw with one hand" | | |
|---|---|---|
| **Claims** | **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| 1, 7 | plain and ordinary meaning | "the portable hand-held band saw has only one handle assembly and a user is capable of lifting the saw with only one hand on this handle assembly" |

---

submission, Applicant also noted that "the hand grip portion is recited as being between the two axes of the drive wheel and the driven wheel, which none of the prior art discloses." *Id.* at PSAW00000079. The Patent Office disagreed with this assertion and maintained its rejection in the subsequent office action. Ex. 26.

[18] In Delaware, indefiniteness arguments are not waived, even if not raised during claim construction.  *See TQ Delta, LLC v. 2Wire, Inc.*, 373 F. Supp. 3d 509, 523 (D. Del. 2019).  As claim construction comes after initial invalidity contentions, it would be nonsensical to hold a party waived indefiniteness arguments by not disclosing them in initial invalidity contentions.

| **TERM**: "said handle assembly permitting the operator to . . . operate the saw with one hand" | | |
|---|---|---|
| 1, 7 | plain and ordinary meaning | "the portable hand-held band saw has only one handle assembly and a user can operate the saw with only one hand on this handle assembly" |

1. **Plaintiff's Opening Position**

The limitations "said handle assembly permitting the operator to lift . . . the saw with one hand" and "said handle assembly permitting the operator to . . . operate the saw with one hand" are clear to a person of ordinary skill in the art – the band saw must have at least one handle assembly that the operator is able to lift single-handedly and that allows the operator to use the saw single-handedly. That much is evident from the description of the invention. In fact, the specification estates that, "It is another purpose of this invention to provide a user with a portable band saw that can comfortably be held and operated with a single hand so the other hand can control the stock being cut." Ex. 1, '681 patent at 1:47-50. The specification continues, stating "[l]astly, and perhaps most importantly, is the advantage the invention provides is the ability of the user to hold the saw in one hand in a balanced, naturally vertical orientation such the saw blade is oriented normal to the work piece." *Id.* at 2:59-62.

Nothing in the intrinsic evidence suggests that the claimed invention must only have one handle assembly. The only requirement is that the claimed band saw must be able to be used single-handedly. Defendant's construction requiring that the claimed band saw have only one handle assembly incorrectly narrows the invention to a single handled saw, without support in the intrinsic record. *See* Ex. 9, Milwaukee Infringement Contention Excerpt (showing how a two-handled band saw can be used single-handedly).

Ignoring how a skilled artisan would understand these terms, Defendant proposes a construction requiring that the claimed band saw "has only one handle assembly," seemingly

arguing that the applicant disclaimed any band saws with two handles during prosecution.  A disclaimer, however, must be both "clear and unmistakable." *Mass. Inst. of Tech. v. Shire Pharms., Inc.*, 839 F.3d 1111, 1119 (Fed. Cir. 2016).   And Defendant bears the burden of proving it. *Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1063-64 (Fed. Cir. 2016).  The statements must be considered in context and not cherry-picked.  *See Mass. Inst. of Tech.*, 839 F.3d at 1119-1120 (refusing to find prosecution disclaimer when the entire context of the selected prosecution history statements was reviewed).  As evident from the prosecution history, no such disclaimer occurred. During prosecution of the '681 patent, the applicant faced an obviousness rejection over the Schepige reference in view of Buck.  Ex. 10, 2012-12-13 Office Action, at PSAW00000041-42. Schepige, a design patent, illustrates a design for a portable band saw that has two handles, "indicating that the Schepige saw is to be used with two hands."  Ex. 11, 2013-6-28 Amendment, at PSAW00000028-29.  The applicant laid out the distinction between the two-handed operation described in Schepige and the present invention, which describes single-handed use:

> Since there is no other description besides the drawing (as Schepige is a design patent), looking at the Figures in his patent indicates a two handed operation. This is in direct contradistinction over the presently claimed invention, where it is currently reciting a single handed capability and usage.

*Id.* at PSAW00000028-29.  In this response, the applicant did not disclaim a band saw with two handles, the applicant disclaimed band saws that must be used with two hands.

The applicant emphasized the purpose of the invention, a band saw able to be used single-handedly, throughout the prosecution of the '681 patent.  Ex. 12, 2008-09-03 Amendment, at PSAW00000277 (noting the positioning of the handle in relation to the motor, "contributes importantly to saw balance and *facilitates one hand saw operation*, [and] is not present in the applicable prior art."); Ex. 13, 2009-07-21 Amendment, at PSAW00000221-225 (distinguishing prior art based on the lack of disclosures of single-handed use of the saws); Ex. 14, 2009-07-21

41

Affidavit at PSAW00000230-231 (stating that the applicant promoted the claim band saw as the "world's only one-hand cordless band saw" and displaced sales of saws that require two hands to operate); Ex. 7, 2012-4-23 Amendment, at PSAW00000079 (emphasizing the placement of the hand grip portion "yields incredible advantages where the saw can truly be utilized and operated by one hand").  Ultimately, the patent examiner agreed that the claims of the '681 patent were not obvious, finding that "the prior art fails to teach a handle assembly permitting the operator to li[f]t and operate the saw with one hand[.]"  Ex. 6, Notice of Allowability, at PSAW00000013.

Thus, Defendant's proposed constructions which read in a limitation that is not present in the intrinsic record are improper and should be rejected.

### 2.    **Defendant's Answering Position**

The parties dispute centers on whether the limitation that the handle assembly permits one-handed lifting and operation encompasses hand-held band saws with multiple handle assemblies (as argued by Plaintiff) or requires only one handle assembly (as explained by Defendant). Plaintiff's argument in favor of a broader plain and ordinary meaning that allows for more than one handle assembly is guided solely by its infringement theory.  Plaintiff needs this broader construction because three of the five accused products have more than one handle. Ex. 9; Ex. 20; Ex. 21.

But adopting a plain and ordinary meaning as Plaintiff proposes would yield an unworkable construction that fails to provide reasonable certainty as to the scope of the asserted claims. *See Medicines Co. v. Mylan, Inc.*, 853 F.3d 1296, 1303 (Fed. Cir. 2017) (holding proposed construction "unworkable" because it would require "forward-looking assessments" of infringement and thus "cannot provide 'reasonable certainty' regarding the scope of the asserted claims."). Under Plaintiff's construction, proof of infringement would necessitate forward-looking assessments of

whether a hand-held band saw could be lifted and operated with one hand even if it had two handles with such assessment varying depending on, for example, who was lifting and operating the saw and his or her relative strength.[19] A plain and ordinary construction also fails to establish the proper scope of the claims and what structural features distinguish a hand-held band saw that can be lifted and operated with one hand from those that require two hands.

Thus, a more definite construction than plain and ordinary must be adopted to properly define the scope of the claims. *See Sentient Sensors*, 2021 WL 1966406, at *1. Turning to the intrinsic record, the specification read in light of the prosecution history makes clear that Applicant limited the scope of the claims to only those hand-held band saws having one handle assembly.

(a)    <strong>Specification Supports Defendant's Construction</strong>

First, contrary to Plaintiff's assertion that "[n]othing in the intrinsic evidence suggests that the claimed invention must only have one handle assembly," Br. at 40, the description of every embodiment of the invention focuses on a saw with only **<u>one</u>** handle assembly (14 in Figures 1-4 and 92 in Figures 5-9b). *See, e.g.*, Ex. 1, Figs. 1-6, 9a; 3:42-48; 4:52-54; 5:24-40.

The specification emphasizes that a one-handed saw is the purpose of the invention and explains that "one-handed balanced operation" can be "achieved by locating the handle intermediate the drive and driven pulleys 22, 28, respectively, rather than outboard as in previous designs." Ex. 1 at 4:13-17. One-handed operation derives from the placement of only **<u>one</u>** handle assembly (*i.e.*, a handle next to the trigger).

---

[19] To the extent the Court disagrees that the construction must be limited to one handle assembly, Defendant reserves its right to raise indefiniteness arguments at a later stage in the case. *See TQ Delta,* 373 F. Supp. 3d 509 at 523. Defendant also reserves its right to raise additional 35 U.S.C. § 112 challenges, including lack of written description.

Notably, Plaintiff does not point to any portion of the specification describing a saw with two handle assemblies. It cannot do so because Applicant never described or disclosed a saw with multiple handle assemblies. The entire focus of the specification is a saw with one-handed operation, and this defining feature is mentioned repeatedly in the specification. *See, e.g.*, Ex. 1 at 1:14-16, 1:37-40, 1:47-50, 2:59-62, 4:13-14, 7:29-31, 7:47-57, 7:60-65, 8:8-16. The specification even refers to this characteristic as the "**most important**[ ]." Ex. 1 at 2:59-62.

The specification also highlights this feature as a critical advantage over prior art designs. Ex. 1 at 1:37-40. The Background describes the invention as overcoming "all of the disadvantages of the prior portable band saw designs" because the alleged invention allows for the saw to "**be easily held in one hand**." Ex. 1 at 1:36-39 (emphasis added). The Background identifies the saw depicted in U.S. patent No. 4,001,937 ("the '937 Patent") as a prior art saw requiring "two-handed operation." Ex. 1 at 1:25-28. The '937 Patent's saw is reproduced below and confirms Applicant's distinction between prior art saws with two handle assemblies (red boxes 30 and 26) from its alleged invention of a saw with a single handle assembly.



Ex. 22 at Fig. 1 (annotated).

This is a classic case of the Plaintiff impermissibly attempting to broaden its claims beyond the scope of the invention in order to cover accused products. The prior art '937 Patent (with two handles, depicted above) is just like the accused products (with two handles, depicted below).

| 2629 M18 Cordless LITHIUM-ION Band Saw (Ex. 9) | 2829 M18 FUEL Compact Band Saw (Ex. 21) | 6242-6 Compact Band Saw (Ex. 22) |
|---|---|---|
| | | |

The '937 Patent and the three accused products all have a side handle with the trigger positioned on the right side of the saw **and** a secondary handle on the left side of the saw. Plaintiff's assertion that the three accused products fall within the scope of the claims cannot be reconciled with Applicant's statements that the prior art '937 Patent is distinct from its alleged invention because it "require[es] two-handed operation." Ex. 1 at 1:25-28. It also cannot be reconciled with the specification's explanation that the invention allows the operator "to easily hold the saw using a single hand **rather than prior band saws where the handle is positioned at an extreme end of the saw body.**" Ex. 1 at 7:45-49. Both the prior art '937 Patent and the three accused products have this same two-handle feature, with one handle on the left and the other handle on the right side of the tool. Put simply, Applicant relied on this feature to distinguish the prior art from its claims and cannot expand those same claims now in an attempt to ensnare Defendant's products.

As such, the specification supports Defendant's explanation that this term should be construed to include the one handle assembly feature that the specification described as important to the invention and that was distinguished from multi-handle assembly saws in the prior art.

(b)    **Prosecution History Supports Defendant's Construction**

Not only does the specification support Defendant's construction, so does the prosecution history. The Patent Office rejected the pending claims based on a saw with two handles (the Schepige '282 reference) (Ex. 28), which is depicted below with red arrows indicating the two handles:



Ex. 28 at Fig. 2.

In response, Applicant amended independent claims 1 and 7 to recite "said handle assembly permitting the operator to lift and operate the saw **with one hand**."  Ex. 11 at PSAW0000025. Applicant explained to the Patent Office the amendment was to "more clearly **recite the invention as a one-handed band saw capable of being operated singlehandedly**." *Id*. at PSAW0000028.

Applicant further explained this amendment was necessary to overcome Schepige '282:

Schepige '282 illustrates an ornamental design for a portable band saw that nominally includes a trigger portion within a handle, although **the Schepige design shows a second handle portion**, indicating that the Schepige saw is to be used with two hands. Since there is no other description besides the drawing (as Schepige is a design patent), looking at the Figures in his patent indicates a two handed operation. **This is in direct contradistinction over the presently claimed invention, where it is currently reciting a single handed capability and usage**.

Ex. 11 at PSAW0000028-29.

Following this amendment and argument, the Patent Office allowed the claims and indicated in the Notice of Allowance that:

> The combination of Schepige with Buck et al. teaches the invention substantially as claimed regarding the frame and balancing the saw, however, **the combination fails to teach the handle assembly permitting the operator to lit [*sic*] and operate the saw with one hand**, where the trigger within the hand grip portion is located between first and second drive wheels.

Ex. 6 at PSAW0000013.

Put simply, Applicant's sole basis for arguing the Schepige '282 reference did not fall within the scope of the amended claims requiring "single-handed capability and usage" was the presence of two handles on the saw depicted in Schepige '282. Applicant did not merely disclaim "band saws that must be used with two hands," as Plaintiff contends, Br. 41, but instead clearly and unmistakably distinguished its amended claims from a band saw with two handles. This is precisely the situation where the Federal Circuit has found disclaimer applies. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003).

Moreover, even if the Court finds Applicant's argument was not an unmistakable disavowal of claim scope, Applicant's arguments about patentability of its amended claims over the Schepige '282 reference is still intrinsic evidence and must be considered when construing these terms. Thus, even if Plaintiff is not formally estopped from arguing for a broader claim scope, the proper construction for these terms must still recognize the distinction that Applicant made between a saw with two handles (the Schepige '282 reference) and its amended claims (a saw with only one handle). *See Shire*, 787 F.3d at 1366 ("Although the prosecution history statements do not rise to the level of unmistakable disavowal, they do inform the claim construction."); *see also LG Philips LCD Co. v. Tatung Co*., No. C.A. 04-343-JJF, 2007 WL 5787789, at *6 (D. Del. June 15, 2007).

Additional statements in the prosecution history further support Defendant's construction requiring the hand-held band saw to only have one handle assembly.  Following the Patent Office's

47

rejection of the pending claims as being unpatentable over U.S. Patent No. 2,876,809 to Rentsch (Ex. 23) and U.S. Patent No. 6,442,848 to Dean (Ex. 24), Applicant argued these references "do not teach or suggest band saws that offer the easy **one-handed operation** that the band saw as described in claim 21 offers; neither Rentsch et al. nor Dean teaches or suggest a band saw that can be operated with **one hand by a typical user**." Ex. 13 at PSAW00000221.

Specifically, Applicant focused on the presence of two handles in each of Rentsch and Dean as precluding one-handed operation and thus different then its alleged invention:

> Rentsch et al. discloses a saw having **two handles** 18 and 20 and teaches that the user grasp both handles when operating the saw. . . Similarly, Dean discloses a coping saw 10 shown in Figs. 1 and 2 including a **primary handle 14 and support handle 16** Therefore, **neither cited reference teaches or suggests a band** saw that the typical user can operate with only one hand**.

Ex. 13 at PSAW00000221-222. These prior art saws are depicted below with Rentsch on the top and Dean on the bottom (handles highlighted in red).



Ex. 23 at Fig. 1 (annotated).



Ex. 24 at Fig. 1 (annotated).

48

The inventor also submitted an affidavit arguing that neither Rentsch nor Dean disclosed single-handed operation. Ex. 14 at PSAW00000227-229 (¶¶6-7). In this Affidavit, the inventor touted the capability of the claimed saw to be operated with only one hand, and in each example the saw was depicted as having only one handle assembly. *Id*.

In sum, even if Plaintiff is not estopped from arguing that its claims cover multiple handles, the prosecution history confirms the appropriate scope of this term must distinguish between the alleged invention with only one handle assembly and prior art saws with two handles.

For all of these reasons, these claim terms must be construed to require only one handle assembly. Adopting Plaintiff's plain and ordinary meaning construction and enabling it to argue that accused products with two handles fall within the scope of the claims is contrary to Plaintiff's disclosures in the specification, amendments to the claims, and arguments to the Patent Office.[20]

### 3. Plaintiff's Reply Position

Milwaukee seeks to improperly narrow the plain and ordinary meaning of these claim terms to avoid infringement and relies upon improper interpretations of case law and the prosecution history. The claims only concern the ability to use the saw one-handed and do not consider, claim, or disclaim the number of handles present.

### (a) The Specification Does Not Restrict the Claimed Invention to Saws with Only One Handle

Milwaukee states, without support, that "one handed operation derives from the placement of only one handle assembly." Br. at 43. Nothing in the specification supports this statement or excludes the possibility that a second handle could be present. There is no dispute that the patent

---

[20] Milwaukee reserves the right to assert that this term is indefinite, lacks written description, and/or is not enabled.

emphasizes capability of one-handed use as a critical advantage over the prior art. But the patent is silent about whether the capability of one-handed use requires that the claimed invention only contain one handle.

The heart of the claimed invention, as Milwaukee agrees, is single-handed use, *not* the presence of a single-handle. *See* Br. at 43-45. Milwaukee, however, fundamentally misunderstands the role of the embodiments described in the specification. That the specification only describes embodiments with a single handle is not sufficient to justify its narrow claim construction. An "applicant is not required to describe in the specification every conceivable and possible future embodiment of his invention." *See Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1344 (Fed. Cir. 2001) (reversing summary judgment of no infringement where district court erred in construing term by reading in multi-piece construction of preferred embodiment and excluding single-piece construction); *see also CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1367 (Fed. Cir. 2002) (concluding district court erred in construing "reciprocating member" in exercise equipment to be limited to a single component bar and to exclude a multi-component bar even though the drawings depicted only a single-component bar). Here, neither the claims nor the specification limit the embodiments of the claimed invention solely to saws that contain one handle.

Milwaukee improperly focuses on its noninfringement arguments in this claim construction process. Plaintiff's infringement contentions should play no role in this process as they are neither intrinsic nor extrinsic evidence. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (explaining extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises"). Milwaukee is the party that has chosen to insert them here (Br. at 45), making it clear that Milwaukee is seeking

to improperly narrow terms to avoid infringement.  Whether the three accused products that have two handles are capable of single-handed use is an issue of infringement for the jury, not an issue of claim construction.

> (b)   **The Prosecution History Contains No Disclaimers of Additional Handles**

Milwaukee adopts an unsupported and extreme view of the applicant's remarks and amendments in the prosecution history regarding the Schepige, Rentsch, and Dean references to suggest that the applicant disclaimed any saws with two handles.  In doing so, Milwaukee ignores details in the prior art and the specifics of the applicant's arguments.

First, the applicant's remarks and amendment to overcome Schepige show that Schepige is distinguishable because two-handed use was clearly required, while the claimed invention covered a saw capable of being used one-handed.  The applicant did not distinguish Schepige based only on the fact that Schepige had two handles.  The applicant distinguished Schepige because the reference on its face *could not have been used with one hand*.  *See* Ex. 28 at Fig. 2; Ex. 11 at -028- 29.  Schepige is a design patent and accordingly has no explanation of how it is to be used, as the applicant noted.  *See* Ex. 28 at Fig. 2; Ex. 11 at -028.  Relying only on the drawing, the applicant explained that "looking at the Figures in this patent indicates a two handed operation."  Ex. 11 at -028-29.  It would be evident to a person of ordinary skill in art that the handle with the trigger is located at such an extreme end of the saw in Schepige's drawing that a person could not operate the saw depicted in Schepige with one hand.  *See* Ex. 28 at Fig. 2.  Nearly the entire weight of the saw is opposite that handle and the second handle is therefore necessary for its operation.  As the applicant explained in its remarks, its subsequent amendment made it clear that the claimed invention is "capable of being operated singlehandedly."  Ex. 11 at -025.  None of the applicant's

comments regarding Schepige, therefore, narrow the claimed invention to a saw that necessarily contains only one handle.

Similarly, the applicant's remarks distinguishing the claimed invention over Rentsch and Dean make clear that those references are not capable of being operated with one hand and explicitly disclose only two-handed use. As Milwaukee points out, the applicant explained that neither reference teaches a saw that "can be operated with one hand by a typical user." Ex. 13 at -221. The applicant did *not* distinguish the references based only on the fact that they disclosed two handles. Further, the applicant pointed out that Rentsch "teaches that the user grasp both handles when operating the saw," which teaches away from the one-handed use capability of the claimed invention. Ex. 13 at -221-222. The applicant also pointed out that Dean "explicitly discloses operating the coping saw 110 using two hands, one on each handle 114 and 150." Ex. 13 at -222.

Milwaukee, again, attempts to circumvent the requirement of a "clear and unmistakable" disavowal of claim scope by arguing these, at best, ambiguous statements disclaim the claims covering two-handed saws. Interestingly, Milwaukee cites no authority post-*Nautilus* that allows for such a disavowal based on anything less than a "clear and unmistakable" disclaimer. *See* Br. at 47 (citing the following cases from prior to the 2014 *Nautilus* decision: *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003); *LG Philips LCD Co. v. Tatung Co.*, No. C.A. 04-343-JJF, 2007 WL 5787789, at *6 (D. Del. June 15, 2007)).[21]

Given the numerous examples shown above, the applicant consistently distinguished prior art based on lack of one-handed capability, not the number of handles disclosed. Milwaukee's

---

[21] Milwaukee also cites to *Shire Dev., LLC*, 787 F. 3d 1359 (Fed. Cir. 2015), which also did not allow for disavowal without disclaimer and where the Court adopted a specific construction partly due to structure of the claims and the meaning of the claim terms. *See* Br. at 19.

construction, therefore, improperly narrows the plain and ordinary meaning of the claim language and should be rejected.

### 4.     Defendant's Sur-Reply Position

Defendant's construction does not "improperly narrow" the meaning of these claims terms but instead construes the terms in light of, and consistent with, Applicant's position from the intrinsic record. In order to obtain allowance of its patent, Applicant chose to adopt a specific interpretation of these claim limitations that linked one-handed operation and lifting of a saw with only one handle assembly. Br. at 46-49. Put simply, Plaintiff cannot tell the Patent Office that its claims do not refer to saws with two handles, and then argue to this Court that this same limitation does not form the boundary of its claims.

First, with regards to Applicant's argument to overcoming the design patent to Schepige, Plaintiff argues "[t]he applicant did not distinguish Schepige based only on the fact that Schepige had two handles but instead "distinguished Schepige because the reference on its face *could not have been used with one hand*." Br. at 51. This argument is unavailing and unsupported attorney argument. Schepige is a design patent with no written description to explain how the saw could be operated and lifted, or whether it could be operated and/or lifted with one hand. Ex. 28. Given this lack of description, Applicant relied only on the figures to argue that "the Schepige design **shows a second handle portion, indicating that the Schepige saw is to be used with two hands.**" Ex. 11 at PSAW00000028-29. Applicant linked two handles with two-handed operation.

Plaintiff's mere attorney argument that "[i]t would be evident to a [POSITA] that the handle with the trigger is located at such an extreme end of the saw in Schepige's drawing that a person could not operate the saw depicted in Schepige with one hand" is not supported by Applicant's remarks in the prosecution history, nor is it supported by any expert opinion. Br. at

51-52. If Applicant intended to link one-handed operation and lifting with the location of the handle assembly, it could have added that limitation to the claims. It did not, and it cannot rewrite the claims now during litigation to avoid Applicant's admissions during prosecution.

Second, Plaintiff's assertion that Applicant did not distinguish the Rentsch and Dean references based only on the fact that they disclosed two handles is equally unavailing. Br. at 52. Although these references disclose that a user can grasp both handles on the respective saws during operation, neither reference states that the saw would be incapable of being operated or lifted with one-hand. Ex. 23, Ex. 24. Despite this lack of disclosure, Applicant nonetheless argued to the Patent Office that its claims were different because these references "do not teach or suggest band saws that offer the easy one-handed operation" as claimed. Ex. 13 at PSAW00000221-222. Once again, Applicant linked two handles with two-handed operation.

Third, even if Applicant's arguments during prosecution about Schepige, Rentsch, and Dean do not rise to the level of clear and unmistakable disavowal, the prosecution history must still be evaluated and used to inform the meaning of the claim terms. *See*, *e.g., Aptalis*, 718 F. App'x at 971; *AstraZeneca*, 19 F.4th at 1335; *Fenner*, 778 F.3d at 1323. In short, Applicant argued for a specific interpretation of its claims requiring one handle to secure its patent from the Patent Office, and these claims must maintain that same scope during litigation.

E.    **Term 7: "said handle assembly being located such that the saw is substantially weight balanced, so that the saw can be utilized in a single-handed operation for cutting the workpiece while holding the workpiece with another hand of the operator"**

| Claims | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|--------|-----------------------------------|-----------------------------------|
| 1, 7 | plain and ordinary meaning | This claim term is indefinite.<br><br>In the alternative, this term should be construed as follows: "the handle assembly must be located such that the position of the center of gravity of the |

| | | saw is generally in a line passing through the user's hand and forearm"[22] |
| | | |

### 1.   Plaintiff's Opening Position

"Substantially weight balanced" has a plain and ordinary meaning to a person of ordinary skill in the art, as evident by the disclosure in the specification.  The '681 patent provides many details for achieving a "substantially weight balanced" band saw that is able to be utilized single-handedly:

- "The frame assembly 12 includes a first end 16 interconnected to a second opposite end 18 by a laterally offset longitudinal member (LOLM) 20 which establishes the general framework for the out-off saw 10.  Handle assembly 14 is connected to frame assembly 12 at various locations including the LOLM 20 and medial portions of the first end 16 such that the center of gravity of the cut-off saw 10 is disposed centrally below handle assembly 14."  Ex. 1, '681 patent at 3:49-56.

- "As briefly mentioned earlier, one of the advantages provided by the invention is the one-handed balanced operation.  This is achieved by locating the handle intermediate the drive and driven pulleys 22, 28, respectively, rather than outboard as in previous designs.  Moreover, it is intended to suspend the frame assembly 12 at a point below the handle assembly 14 such that the saw, under the effect of gravity, hangs naturally when gripped by the operator." *Id.* at 4:13-20.

- "In the preferred embodiment, handle assembly 92 is angled relative to deck 62. Most preferably, the plane normal or perpendicular to deck 62 is disposed at an acute angle to a plane substantially parallel to the handle assembly 92. With the handle in this orientation, the center of gravity of the saw is located below the handle and properly positions the saw blade parallel to the handle. In this way, the natural orientation of the user's hand greatly assists in providing better control of the cut." *Id.* at 5:32-40.

- "In operation, the instant invention is used in a manner which is ergonomically much more natural than prior band saws. First the operator is able to easily hold

---

[22] As explained in Defendant's Answering position (Br. 61-63), if the term is not indefinite, Defendant slightly modified its proposed construction based on Plaintiff's admissions in its opening brief.  The construction proffered by Defendant states "the handle assembly must be located such that the position of the center of gravity of the saw is in the middle of the frame across from the throat and generally in a line passing through the user's hand and forearm when the saw blade is in a vertical position."

the saw using a single hand rather than prior band saws where the handle is positioned at an extreme end of the saw body. This one handed operation is not merely attributable to scale, but to the position and orientation of the handle assembly along the upper end of the saw so the user can keep the saw close to the user's body as compared to previous devices requiring support away from the user's body. Moreover, an offset of the mass of the motor assembly by the mass of the battery pack naturally orients and balances the saw in an appropriate and ergonomically comfortable position. This aspect also naturally orients the throat area 64 of the saw to engage the work piece." *Id.* at 7:45-59.

- "To help in the cutting operation, the user can permit the work piece to be restrained by the fence to make a better cut. Because of the position of the center of gravity is generally in a line passing through the user's hand and forearm, the user is able to easily orient the saw to make cuts in a vertical or overhead position. This alignment of the center of gravity is closer to the axis of the user's forearm and hand making it more ergonomic to control. This also frees the second hand of the user to orient, adjust or stabilize the position of the workpiece to complete the cut in a smooth and efficient manner." *Id.* at 8:6-16.

Ignoring all but one of these disclosures, Milwaukee proposes a construction that requires that "the handle assembly <u>must be located</u> such that the position of the center of gravity of the saw is <u>generally in a line passing through the user's hand and forearm</u>." There is no dispute that the underlined language in Milwaukee's construction is included in the '681 patent. *See id.* at 8:6-16. However, Milwaukee seizes on this *general* description of the center of gravity, excluding all of the other information that describes how the claimed saw is substantially weight-balanced. Reading in preferred or general language into the claims to limit the invention is improper. *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1348 (Fed. Cir. 2001) (rejecting the district court's construction of a term that unduly limited the plain meaning of the term and was inconsistent with the specification); *Braintree Labs., Inc. v. Novel Labs., Inc.*, 749 F.3d 1349, 1355-56 (Fed. Cir. 2014) (rejecting the importation of language from the specification into the claims).

Milwaukee argues that the term "substantially weight-balanced" is indefinite because "[w]hat may feel 'substantially weight balanced' to one user may not feel 'substantially weight

balanced' to another user such that the scope of the claims is dependent on subjective beliefs of a particular user of the claimed band saw." Ex. 8, Milwaukee's Invalidity Contentions at 4 (stating "the specification of the '681 Patent describes this subjective aspect of the claim by stating '[t]he location and dimension of the battery pack 46 is designed to offset and substantially balance the weight of the cantilevered components so the saw feels well balanced within the user's grip.'") That is incorrect. As described above, the '681 patent discloses achieving a "substantially weight-balanced" saw by setting the center of gravity in the middle of the frame across from the throat. Ex. 1, '681 patent at 3:49-56, 4:13-20, 5:32-40, 7:45-59, 8:6-16. Nothing either in Milwaukee's quote or the intrinsic evidence suggests that "substantially weight balanced" varies from user to user. A person of ordinary skill in the art would, therefore, understand the term "substantially weight balanced" with reasonable certainty based on the intrinsic evidence. *Nautilus*, 572 U.S. at 910.

2. **Defendant's Answering Position**

(a) **The Term is Indefinite**

This disputed term describes the claimed saw as being "substantially weight balanced" so that the saw "can be utilized in a single-handed operation." Plaintiff's proposed construction of plain and ordinary meaning does not provide reasonable certainty to those of skill in the art as to the scope of the claimed invention and thus renders the claims invalid as indefinite. *See* Ex. 30 at ¶¶ 38-51.

First, the phrase "substantially weight balanced" in claims 1 and 7 of the '681 Patent is not reasonably clear on its face because it introduces the term of degree "substantially" but provides no defined threshold for what would qualify as "substantially" weight balanced. In other words, the claim fails to explain **how much** weight balancing qualifies as "substantially" weight balanced.

Ex. 30 at ¶ 40. As the Federal Circuit has noted, while terms of degree are not always indefinite, a term read in light of the specification and prosecution history **must** "provide objective boundaries for those of skill in the art." *Interval Licensing LLC v. AOL, Inc*., 766 F.3d 1364, 1370-71 (Fed. Cir. 2014); *see also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1364 (holding term "archive exhibits **minimal** redundancy" indefinite because intrinsic record did not provide objective boundaries regarding *how much* redundancy is minimal). As discussed below, neither the specification nor prosecution history provide objective boundaries as to the meaning of "substantially" weight balanced.

Second, to the extent Plaintiff asserts that the "substantially" weight balanced limitation merely requires that the saw can be utilized in a single-handed operation, this fails to resolve the ambiguity inherent in the claim and render it definite because whether or not a saw can be operated single-handedly is entirely subjective. *See DDR Holdings, LLC v. Hotels.com, L.P*., 773 F.3d 1245, 1260 (Fed. Cir. 2014). While one person could believe the saw is weight balanced (*i.e.*, a strong individual) and could utilize it in a single-handed operation, another person could believe the same saw is not weight balanced (*i.e.*, a weaker individual) and be incapable of utilizing it in a single-handed operation. Ex. 30 at ¶¶ 41-42. The operation of a saw single-handedly could also vary based on how the person is holding the saw. For example, the saw could feel weight balanced and be capable of one-handed operation if it is held straight down at the person's side, while not weight balanced and require two hands to operate if it is held out in front of the person's body or over their head. Ex. 30 at ¶ 43.

This inherent subjective nature of this term renders it indefinite **unless** the intrinsic evidence provides an objective boundary for this term. Indeed, "[w]hen a claim term 'depend[s] solely on the unrestrained, **subjective opinion of a particular individual** purportedly practicing

the invention,' without sufficient guidance in the specification to provide objective direction to one of skill in the art, the term is indefinite." *DDR Holdings*, 773 F.3d 1245 at 1260. In this case, the specification and prosecution history fail to resolve the inherent subjective nature of this term, as described in more detail below.

(i)    <strong>The Specification Fails to Provide Objective Boundaries</strong>

The only explicit reference to a "substantially" weight balanced saw is the following portion of the specification:

> The location and dimension of the battery pack 46 is designed to offset and **substantially balance the weight** of the cantilevered components so the saw feels well balanced within the user's grip.

Ex. 1 at 4:26-29.

This passage describes a "substantially" weight balanced saw based on the "location and dimension of the battery pack" designed to "offset" the weight of the cantilevered components (*e.g.*, the motor of the saw). Ex. 1 at 4:26-29. While this may describe how to weight balance the saw, it offers no guidance to a POSITA as to the objective boundaries of being "substantially" weight balanced.

Moreover, even if this description is understood to provide guidance as to what is meant by substantially weight balanced, it requires a specific placement of the battery pack relative to other components, such as the battery pack and motor, on the saw. But independent claims 1 and 7 do not even recite a battery pack, let alone include a requirement that the battery pack is placed in a position such that it offsets other cantilevered components.[23] In fact, during prosecution Applicant canceled the pending claims that required a handle grip portion longitudinally between

---

[23] The recitation of a battery pack appears solely in dependent claims 4 and 10, which "gives rise to a presumption that the [battery pack] is not present in the independent claim[s]." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc).

the motor and the battery pack to balance the saw when the user grips the hand grip portion. Instead, Applicant replaced those claims with broader claims that (i) did not require a battery pack and (ii) did not require other weight balancing components on the saw. *Compare* Ex. 25 at PSAW00000116-121 (claims pending on March 3, 2011) *with* Ex. 7 at PSAW00000077-78 (claims pending on April 23, 2012). Thus, this passage in the specification no longer offers guidance to a POSITA to interpret the issued claims, which now only recite a "substantially" weight balanced saw.[24] *See Berkheimer v. HP Inc.*, No. 12-c-9023 (N.D. Ill. Mar. 29, 2022), slip op. at 7 (holding an example in the specification was not helpful to resolve an indefiniteness question where the claim language did not require what the example taught).

Tellingly, Plaintiff does not cite the above passage in support of its position that the term is definite. Br. at 56-57. Instead, Plaintiff relies on various passages in the specification discussing gravity, center of gravity, and ergonomics of the saw, and concludes that "the '681 patent discloses achieving a 'substantially weight-balanced' saw by setting the center of gravity in the middle of the frame across from the throat." Br. at 55-56. However, none of these passages reference the term "substantially" or explain how this term of degree would be understood by a POSITA in the context of whether a saw is "substantially" weight balanced. In short, while these disclosures may describe what it means to be "weight balanced," they do not provide any objective boundaries for being "substantially" weight balanced. As such, the specification lacks objective boundaries for a POSITA to ascertain the scope of the claims.

---

[24] If the claims were limited to a battery pack on one side of the throat and a motor on the opposite side of the throat, it would not likely be indefinite. However, Applicant's choice to remove this limitation and replace it with a term of degree renders the claims indefinite.

(b)      **The Prosecution History Fails to Provide Objective Boundaries**

The prosecution history likewise fails to provide guidance as to what qualifies as "substantially" weight balanced. After repeated rejections by the Patent Office, Applicant elected to cancel all pending claims and proceed with new broader claims. Ex. 7. Applicant added the "substantially weight balanced" phrase in these new claims.  Ex. 11 at PSAW0000025.  At this time, Applicant failed to provide any explanation for the term "substantially" weight balanced or how it related to any of the disclosures in the specification. *Id*. at PSAW0000028-30. Applicant only commented that the claim was "amended to more clearly recite the invention as a one-handed band saw capable of being operated singlehandedly," but this does not provide any objective boundary for the term of degree "substantially." *Id*. at PSAW000028. In short, the prosecution history is silent on this issue, and that silence further confirms Applicant's failure to provide objective boundaries for this subjective term of degree.

As the specification and prosecution history fail to provide an objective boundary for what is meant by "substantially" weight balanced, there is no point of comparison for a skilled artisan to determine whether a saw qualifies as "substantially" weight balanced or falls outside the scope of the claims, and, therefore, the claims must be found indefinite. *See Berkheimer v. HP Inc.*, No. 12-c-9023 (N.D. Ill. Mar. 29, 2022), slip op. at 5-9. For all of these reasons, the asserted claims should be found invalid as indefinite for failing to inform those skilled in the art about the objective scope of the invention with reasonable certainty. *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

(c)      **If the Term is Not Indefinite, this Phrase Should be Construed Consistent with Defendant's Proposed Construction**

If the Court determines the disputed phrase is sufficiently definite, Defendant's proposed construction should be adopted. Notably, despite taking the position that the term should be

construed consistent with its plain an ordinary meaning, Plaintiff then proffers a definition for this phrase in its opening brief. Plaintiff explicitly states "the '681 patent discloses achieving a 'substantially weight-balanced' saw **by setting the center of gravity in the middle of the frame across from the throat**." Br. at 57. In other words, Plaintiff equates the location of the center of gravity with the phrase "substantially weight balanced." This partly aligns with Defendant's proposed construction, which also refers to the center of gravity. As such, Defendant has modified its proposed construction to include both its original proposal, which is derived from the specification, and Plaintiff's new admission that "the center of gravity must be in the middle of the frame across from the throat."

As to Defendant's construction, which requires the handle assembly to be located such that the position of the center of gravity of the saw is in a line passing through the user's hand and forearm when the saw blade is in a vertical position, it is supported by the specification. The specification explains three separate ways to achieve weight balancing. First, the specification explains that "[b]ecause of the position of the center of gravity is generally in a line passing through the user's hand and forearm, the user is able to easily orient the saw to make cuts in a vertical or overhead position." Ex. 1 at 8:8-16. In short, the specification describes how the gravity vector for the tool must be oriented when the saw is used vertically.

Second, the specification explains that one-handed balanced operation can be achieved "by locating the handle intermediate the drive and driven pulleys 22, 28, respectively, rather than outboard as in previous designs." Ex. 1 at 4:13-17 (*i.e.*, locating the handle near the throat of the saw). Independent claims 1 and 7 recite a hand grip portion located "between" the axes of the drive and driven wheels. Ex. 1 at cls. 1, 7. Although the "between" limitation renders the claims invalid as indefinite, as described above in Section VI.C, this description in the specification of the

location of the handle further informs the term "weight balanced." An "outboard" handle is not weight balanced, while a handle in a different location may be weight balanced. In short, the specification confirms that being weight balanced refers to the location of the handle with the hand grip portion near the throat of the saw (and not in an outboard position).

Third, the specification explains "the location and dimension of the battery pack 46 is designed to offset and substantially balance the weight of the cantilevered components [*i.e.*, the motor balances the battery pack]." Ex. 1 at 4:26-28. As explained above, while this describes a weight balanced saw, the claims were amended to remove this limitation such that the claims are not limited to only this method of weight balancing.  In short, the specification confirms that being weight balanced refers the center of gravity (which is the average location of the weight of all components, including a motor and battery pack), even though the claims no longer require certain components (like a battery pack).

For all of these reasons, if the term is not indefinite, the entire disputed phrase should be construed consistent with Plaintiff's admission and the disclosures in the specification as "the handle assembly must be located such that the position of the center of gravity of the saw is in the middle of the frame across from the throat and generally in a line passing through the user's hand and forearm when the saw blade is in a vertical position."

### 3.    Plaintiff's Reply Position

The patent's disclosures sufficiently inform a person of ordinary skill in the art about the scope of the claim.  Milwaukee cites to multiple disclosures from which a person of ordinary skill in the art could understand this term and does not explain why construction is necessary.

(a)     **A Person of Ordinary Skill in the Art Would Understand the Scope of this Term**

Milwaukee ignores the entire body of case law that explains that the term "substantially" does not render a claim indefinite.  *See Tinnus Enterprises, LLC v. Telebrands Corporation,* 846 F.3d 1190, 1205-06 (Fed. Cir. 2017) (concluding that "substantially filled," was not indefinite); *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1359 (Fed. Cir. 2012) (rejecting contention that claim term "substantially planar" was indefinite); *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1329 (Fed. Cir. 2006) ("The term 'substantial' implies 'approximate,' rather than 'perfect.'")  Indeed, Milwaukee concedes that terms containing "substantially" can be definite, as it does not raise any objection to the terms "substantially planar" or "substantially parallel" in claims 1 and 7.  *See* Ex. 1 at claims 1 and 7.

Milwaukee also ignores the "objective boundaries" that a person of ordinary skill in the art would understand from the specification and claims.  As explained in Plaintiff's opening brief, the specification provides ample explanation of how the claimed invention can be weight balanced and how it should be able to be used with one-hand.  Milwaukee does not explain why those examples are insufficient, except to say that "substantially" does not appear in each discussion of center of gravity and balance.  But that is not required.  *See Bancorp Services, L.L.C.*, 359 F.3d at 1373 ("The failure to define the term is, of course, not fatal, for if the meaning of the term is fairly inferable from the patent, an express definition is not necessary.")  A person of ordinary skill in the art would understand those explanations to provide boundaries as to what "substantially weight balanced" means, as modified by the phrase "so that the saw can be utilized in a single-handed operation."

Milwaukee focuses on a single passage from the specification that refers to "substantially" balancing weight via placement of the battery pack relative to other components and asserts it is

the only teaching regarding the meaning of this term.[25]  As explained above, this is not the only passage that a person of ordinary skill in the art may rely upon to understand the scope of "substantially weight balanced.  Further, Milwaukee's assertion that this passage offers no guidance because the claims do not expressly require such placement of the battery pack is unsupported.  A person of ordinary skill in the art can look to this teaching to understand the meaning of "substantially weight balanced," as it describes the concept of offsetting components to achieve balance.  The *Berkheimer v. HP Inc.,* No. 12-c-9023 (N.D. Ill. Mar. 29, 2022) case that Milwaukee cites is inapposite, as the specification there actually taught the opposite of the claimed language.  *See* Br. at 60.; Ex. 32, *Berkheimer v. HP Inc.*, No. 12-c-9023 (N.D. Ill. Mar. 29, 2022) slip op. at 7.

The prosecution history further supports the conclusion that the specification contains sufficient guidance as to the meaning of this term.  Milwaukee argues that the prosecution history contains no explanation of the boundaries of "substantially weight balanced."  While it is correct that the applicant did not offer additional explanation of this term when it added it, the specification already did so.  The specification already supported the addition, as the Examiner allowed the claims after this addition without requiring the applicant to add new matter to the specification.  *See* Ex. 6 (Notice of Allowability) at -13.

Milwaukee's suggestion that "substantially weight balanced" might apply only when a user holds the saw straight down by their side is nonsensical.  First, the specification and claims describe a saw that is substantially weight-balanced when used single-handedly.  *See* Ex. 1 at 3:49-56, 4:13-20, 5:32-40, 7:45-59, 8:6-16 (all describing balance and use of saw).  This would not encompass

---

[25] *See* Br. at 59, quoting Ex. 1 at 4:26-29 ("The location and dimension of the battery pack 46 is designed to offset and substantially balance the weight of the cantilevered components so the saw feels well balanced within the user's grip.")

having the user hold the saw straight down by their side as that is not a position in which band saws are used to cut materials. *See, e.g., id.* at 2:60-62 (describing goal of allowing user to hold saw "in one hand" so that the "saw blade is oriented normal to the work piece"); 8:6-16 ("the user is able to easily orient the saw to make cuts in a ***vertical*** or ***overhead*** position") (emphasis added). Second, the specification describes in detail how to assess the balance of the saw, and nothing in the disclosure involves assessing the saw at the user's side. *See* Pltf's Opening Brief at 13-16.

Milwaukee relies upon an inapposite case to support its conclusion that this phrase is subjective. Not only was the term at issue in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1260 (Fed. Cir. 2014) "look and feel," which is not a term of degree like "substantially," but the court in *DDR* ultimately concluded that the term had a sufficiently objective meaning in the art. *See id.* at 1261. This is also unlike the cases cited in *DDR* where courts found "aesthetically pleasing" and "unobtrusive manner" to be subjective. *See id.* at 1260. Rather, this term is much like the phrase "smooth transition" from a bicycle related patent in *Mad Dogg Athletics, Inc. v. Peloton Interactive, Inc.*, No. 2:20-CV-00382-JRG, 2021 WL 3200994, at *8-11 (E.D. Tex. July 28, 2021). There, the Court concluded that the term was definite and rejected an argument that "whether a transition is smooth is subjective to reach rider." Just as in *Mad Dogg Athletics*, the meaning and scope of "substantially weight balanced so that the saw can be utilized in a single-handed operation" is reasonably certain in the context of the specification's disclosures regarding balance. *See id.*

While Milwaukee submits an expert declaration from Dr. Nayfeh with its brief, the declaration should be given no weight because it simply parrots the arguments from the brief. Expert opinion that parrots the views of a party or its attorneys is not valuable. *See, e.g., PureWick Corp. v. Sage Prod., LLC,* No. CV 19-1508 (MN), 2021 WL 2593338, at *2 (D. Del. June 24,

2021) (striking expert opinions where expert was used "to make arguments that its litigation counsel should be making"); *DataQuill Ltd. v. Handspring, Inc.*, 2003 WL 737785, at *4 (N.D Ill. Feb. 28, 2003) ("We doubt the value to the trier of the fact of a hired expert's opinion when the party hiring him has put words in his mouth.") The declaration provides no further guidance on what a person of ordinary skill in the art would understand from the patent's disclosures. Indeed, it does not cite to any supporting materials, such as treatises, other prior art patents, or publications. None were apparently needed because the opinions expressed simply reflect the arguments of Milwaukee's counsel.

Based on all the teachings in the specification and drawings, a person of ordinary skill in the art could understand the scope of this term with reasonable certainty. It is therefore not indefinite.

### (b)   **Milwaukee's Construction is Unnecessary**

Milwaukee misstates Persawvere's position, as Persawvere did not provide a definition for this term and maintains that it should be given its plain and ordinary meaning. A person of ordinary skill in the art could understand the meaning of this term from the many disclosures that Persawvere cited in its Opening Brief, and which Milwaukee also cites to in its Answering Brief. *See* Br. at 62-63. Milwaukee does not explain why construction is necessary or why it would be appropriate to limit this term to one particular handle assembly position as it has proposed. Milwaukee acknowledges three different disclosures in the specification regarding weight balance but does not explain why the single disclosure it relies on should be imported into the claim. *See* Br. at 62-63. It should not. Thus, this Court should adopt the plain and ordinary meaning of this term.

### 4.   Defendant's Sur-Reply Position

#### (a)   The Term is Indefinite

First, Plaintiff argues that in some cases the term "substantially" does not render a claim indefinite. However, other cases have found the opposite. *See, e.g.*, *Huber Engineered Woods LLC v. Louisiana-Pac. Corp*., No. CV 19-342-LPS, 2020 WL 5132922, at *9 (D. Del. Aug. 31, 2020); *Clear Imaging Rsch., LLC v. Samsung Elecs. Co*., No. 2:19-CV-00326-JRG, 2020 WL 6384731, at *20 (E.D. Tex. Oct. 30, 2020). When claims use terms of degree, such as "substantially," indefiniteness must be assessed on a case-by-case basis to determine if the claims read in light of the specification and prosecution history "provide objective boundaries for those of skill in the art" to render the claims definite.  *See Interval Licensing LLC v. AOL, Inc*., 766 F.3d 1364, 1370-71 (Fed. Cir. 2014). In this case, Plaintiff's proposed construction of plain and ordinary meaning does not provide reasonable certainty to those of skill in the art as to the scope of the claimed invention thus rendering the claims invalid as indefinite. Br. at 57-61.

Second, Plaintiff argues a POSITA would understand the objective boundaries of this term from the specification and claims. However, Plaintiff offers no expert declaration to support its allegations about the perspective of a POSITA. Br. at 64. Plaintiff only argues "the specification provides ample explanation of how the claimed invention can be weight balanced and how it should be able to be used with one-hand." *Id*. But all of the passages relied on by Plaintiff, with the exception of one, do not describe whether a saw is "substantially" weight- balanced.  These disclosures may describe ways to "weight balance" a saw, but they do not inform a POSITA when and how to ensure that a saw is "substantially" weight balanced, which is what the claims require. Unless the claims only refer to a perfectly weight balanced saw, the Applicant's decision to claim a "substantially" weight balanced saw introduced a term of degree, which must be described in the intrinsic evidence or result in an indefinite claim. *See e.g., Clear Imaging*, 2020 WL 6384731, at

*20-21 (finding term "substantially blur free" indefinite where patents did not distinguish between meaning of "substantially blur free" versus "blur free.").

The sole portion in the specification that refers to a "substantially" weight balanced saw requires placement of a battery pack relative to other components of the saw. Ex. 1 at 4:26-29. However, this description cannot provide objective boundaries to the claimed invention because the independent claims do not require a battery pack. In fact, during prosecution Applicant removed this limitation from its claims and choose to move the battery pack limitation to dependent claims 4 and 10. Plaintiff attempts to rely on this passage by arguing a POSITA would understand the meaning of the term as describing "the concept of offsetting components to achieve balance." Br. at 64-65. However, this is not stated in the specification. It is mere attorney argument, and it is not supported by an expert's opinion about the perspective of a POSITA.

Third, Plaintiff's assertion that "the prosecution history further supports the conclusion that the specification contains sufficient guidance as to the meaning of this term" is wrong. Br. at 65. When Applicant added this claim limitation, it failed to cite to the specification supporting this new claim language and offered no guidance about how the specification provided objective boundaries for a "substantially" weight balanced saw. While the Patent Office did not require Applicant to add new matter to the specification to support this "substantially" weight balanced claim limitation, that is not automatic conclusive proof that this term is definite. Not surprisingly, Plaintiff cites no case law in support of this unique definiteness legal theory.[26]

---

[26] Under Plaintiff's theory, no claim would be indefinite.  Either the Patent Office would require new matter to explain the scope of the claims, thus rendering the claims definite, or the failure of the Patent Office to require this would be an automatic finding that the claims are definite.  This theory is nonsensical and contrary to indefiniteness case law.

> (b)     **If the Term is Not Indefinite, this Phrase Should be Construed Consistent with Defendant's Proposed Construction**

If the Court determines the disputed term is sufficiently definite, Defendant's proposed construction should be adopted.  Plaintiff asserts that plain and ordinary meaning should apply and that "Milwaukee does not explain why construction is necessary." Br. at 67. However, Plaintiff's shifting positions on the scope of this term is exactly why the plain and ordinary meaning should not be adopted.  In its opening brief, Plaintiff explicitly stated that "the '681 patent discloses achieving a 'substantially weight-balanced' saw **by setting the center of gravity in the middle of the frame across from the throat**." Br. at 57. Plaintiff equated the location of the center of gravity with the phrase "substantially weight balanced."  Plaintiff now argues that it "did not provide a definition for this term." Br. at 67. Without a construction from this Court, the Plaintiff will be free to make similar shifting arguments to the jury, and that is improper. As such, if not indefinite, the Court should adopt Defendant's construction. Br. at 61-63.

## F.     Term 8: "outwardly"

| Claims | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|--------|-----------------------------------|-----------------------------------|
| 1, 7   | plain and ordinary meaning        | "away from the frame"             |

### 1.     Plaintiff's Opening Position

The term "outwardly" requires no construction as a person of ordinary skill in the art would readily understand its plain and ordinary meaning.  "Outwardly" appears in two limitations of the claim 1 and 7[27]:

- "a handle assembly extending upwardly and outwardly at an angle from the plane of the frame, said handle assembly including at least a part of a hand grip portion located between the first axis of the drive wheel and the second axis of the driven wheel;" Ex. 1, '681 patent at 9:5-9.

---

[27] Claims 1 and 7 include identical "outwardly" limitations.

- "wherein the handle assembly defines yet a third plane that is substantially parallel to the second cutting plane of the saw blade, this third handle plane being positioned outwardly from the second cutting plane; and"; *Id.* at 9:16-19.

When the entire claim language is read in view of the specification and figures, "outwardly" is easily understood. Figure E illustrates the planes identified in the claim limitations, with the "outwardly" position of the handle assembly disclosed in relation to the cutting plane and frame:



*Figure E:  Figure 7 with Cutting Planes and Directionality*

The specification further explains these relationships. Ex. 1, '681 patent at 1:57-61 (stating one embodiment "includes in its most rudimentary form a frame assembly having a handle assembly extending at an acute angle from a longitudinal edge of the frame assembly."); *id.* at 3:42-46 (stating one form of the claimed band saw includes a "C-shaped frame assembly 12 depending angularly from a centrally located handle assembly 14"); *id.* at 5:32-35 (stating "[i]n the preferred embodiment, handle assembly 92 is angled relative to deck 62.  Most preferably, the

plane normal or perpendicular to deck 62 is disposed at an acute angle to a plane substantially parallel to the handle assembly").

Inserting Defendant's proposed construction for "outwardly" into these limitations renders them nonsensical and changes the meaning of the limitation:

- "a handle assembly extending upwardly and **[away from the frame]** at an angle from the plane of the frame, said handle assembly including at least a part of a hand grip portion located between the first axis of the drive wheel and the second axis of the driven wheel;"

- "wherein the handle assembly defines yet a third plane that is substantially parallel to the second cutting plane of the saw blade, this third handle plane being positioned **[away from the frame]** from the second cutting plane; and";

Defendant's construction introduces only ambiguity, and should be rejected.  *Mfg. Res. Int'l, Inc.*, 2018 WL 4627661, at *4.

### 2.    **Defendant's Answering Position**

Defendant seeks a construction for the term "outwardly" to ensure consistency of its use in the claims and that the proper claim scope is ascertained. Independent claims 1 and 7 both recite the term "outwardly" in two separate places: (i) a handle assembly extending upwardly and **<u>outwardly</u>** at an angle from the plane of the frame and (ii) wherein the handle assembly defines yet a third plane . . . this third handle plane being positioned **<u>outwardly</u>** from the second cutting plane. Ex. 1 at cls. 1, 7. This term refers to the relative position of two objects.  In all instances in the specification, the term "outwardly" refers to one object being further away from the tool fame than the other referenced object. The claims should be construed consistent with this usage in the specification.

72

### 3.  Plaintiff's Reply Position

No construction of this term is necessary, as the figures and claim language itself makes the meaning of this term clear.  The figures show the positioning of the handle assembly and the handle plane.  *See* Ex. 1 at Figs. 1-8.  The claims themselves explain the positioning of a component "outwardly" from another, such as the "handle assembly extending upwardly and outwardly at an angle from the plane of the frame."  *See* Ex. 1 at 9:5-6.  Milwaukee's construction would only complicate and confuse the clear language of the claims.  Milwaukee has offered no reason why the plain language of the claim is insufficient to understand the location of claim components with reference to the frame.

### 4.  Defendant's Sur-Reply Position

As explained in its Answering Brief, Defendant seeks a construction for the term "outwardly" to ensure consistency of its use in the claims and that the proper claim scope is ascertained. Br. at 72. In all instances in the specification, the term "outwardly" refers to one object being further away from the tool fame than the other referenced object. The claims should be construed consistent with this usage in the specification.

**G.  Term 9:  "distance between the handle assembly and the saw blade is greater than the distance between the two planes of the cutting plane defined by the saw blade extending across the throat and handle assembly plane"**

| Claim | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|-------|-----------------------------------|-----------------------------------|
| 12 | plain and ordinary meaning | This claim term is indefinite. |

### 1.  Plaintiff's Opening Position

A person of ordinary skill would understand the limitation "distance between the handle assembly and the saw blade is greater than the distance between the two planes of the cutting plane defined by the saw blade extending across the throat and handle assembly plane" with reasonable

certainty upon reading the specification.   Using the figures and descriptive text, a person of ordinary skill would understand how to calculate the distances between: (1) the handle assembly and the saw blade; and (2) the distance between the handle assembly plane and the saw blade extending across the throat (both of which are referred to as "the two planes of the cutting plane"). Figure F below illustrates these measurements:



*Figure F:  Annotated Figs. 7 with Measurements*

In the annotated figures above, the purple line illustrates the distance between the handle assembly and the saw blade.  For example, in the annotated Figure 7 on the left, the purple line extends from the handle assembly (56) downwardly to the edge of the fence (162) which protects the blade.  Ex. 1, '681 patent at 7:24-28 (stating "[i]n a preferred embodiment of the invention, the angle the fence extends downwardly from deck 52 is substantially parallel to the orientation of the blade section traversing the throat and the plane of the handle.").  Similarly, in the annotated Figure 7 on the right, the orange line illustrates the distance between the handle assembly plane and the cutting

plane. *Id.* at 7:22-28 (identifying the fence (162) and deck (52); *id.* at 4:57-60 (identifying the handle assembly (56)); *id.* at Fig. 3.

Defendant failed to raise an indefiniteness argument in its Invalidity Contentions concerning the limitation, "distance between the handle assembly and the saw blade is greater than the distance between the two planes of the cutting plane defined by the saw blade extending across the throat and handle assembly plane," *see* Ex. 8 at 2-4, thus, Defendant has waived this defense.[28] To the extent the Court permits Defendant to challenge the indefiniteness of this limitation, it is Defendant's burden to show indefiniteness by clear and convincing evidence – an exacting burden that Milwaukee cannot meet. *BASF Corp.*, 875 F.3d at 1365 (Fed. Cir. 2017); *iLife Techs.*, 90 F.Supp.3d at 423. As discussed above, the phrase "distance between the handle assembly and the saw blade is greater than the distance between the two planes of the cutting plane defined by the saw blade extending across the throat and handle assembly plane" is not indefinite because a person of ordinary skill in the art would understand the claims with "reasonable certainty" given the description in the specification. *Nautilus*, 572 U.S. at 910.

### 2.     **Defendant's Answering Position**

This disputed term appears only in dependent claim 12. A POSITA reading this claim in light of the specification and the prosecution history would not understand the scope of the invention with reasonable certainty thus rendering the claim invalid as indefinite. *Nautilus*, 572 U.S. 898 at 901. First, the disputed term recites "the two planes of the cutting plane." But nothing

---

[28] As discussed in footnote 3, Defendant raised an indefiniteness argument against all of the asserted claims for reciting both an apparatus and method of using the apparatus; however, Plaintiff does not understand Defendant to be arguing that this particular term has the alleged indefiniteness issue. No other indefiniteness issues were raised with respect to this term. *See* Ex. 8, Milwaukee's Invalidity Contentions at 3-4.

in independent claim 7, from which this claim depends, mentions "two planes of the cutting plane." Instead, independent claim 7 describes that "the exposed portion of the angled saw blade defin[es] a second cutting plane." Ex. 1 at cl. 7. As Dr. Nayfeh explains, the "blade appears to only have one plane, not two planes." Ex. 30 at ¶ 54.

The specification does not offer clarity as to the meaning of "the two planes of the cutting plane" because this term appears only in dependent claim 12. Notably, Plaintiff does not point to any description in the specification that references the claimed "two planes of the cutting plane." Br. at 73-75. Instead, Plaintiff essentially rewrites the claim to equate the "two planes of the cutting plane" with the distance between the handle assembly plane and the saw blade extending across the throat. Br. at 73-74. But that is not what the claim says, and Plaintiff offers no citation support to the specification (or prosecution history) to support such a revision of the claims.

The prosecution history offers no further clarification as to the scope of the claim. In fact, during prosecution, the Patent Office rejected this same language as being indefinite. Ex. 26 at PSAW00000062. Rather than argue against this rejection, Applicant instead elected to cancel this dependent claim. Ex. 27 at PSAW00000052 (canceling claim 52), PSAW00000053. The Patent Office subsequently issued another Office Action rejecting the remaining pending claims. Ex. 10. In response, Applicant added this canceled claim back in as a new dependent claim 60 in its next response without informing the Patent Office that this claim was previously rejected or offering any further explanation of what is meant by "two planes of the cutting plane." Ex. 11 at PSAW00000027. The Patent Office, apparently, did not notice Applicant's submission of this previously rejected claim.

Aside from the ambiguity surrounding the phrase "two planes of the cutting plane," the distances described in the claim language also fail to provide reasonable certainty as to the scope

of the invention. As explained by Dr. Nayfeh, it is not clear if the distance described in the claim language referring to the saw blade should be measured to the closest part of the saw blade, the exposed part of the saw blade, or a different part of the saw blade. Ex. 30 at ¶ 57. Depending on where this is measured, the distance obtained will vary.

For example, if a POSITA measures the "distance between the handle assembly and the saw blade" as recited in the claim to mean the closest distance between the handle assembly and saw blade, then this distance would be understood as represented below in green (left figure). Ex. 30 at ¶ 58. The exposed blade is depicted below in red (left image). However, if a POSITA assesses the distance consistent with how the Plaintiff did in its opening brief, then this distance is larger as indicated by the purple line in the figure below (right image).





*Figure F: Annotated Figs. 7 with Measurements*

Similarly, the reference to the "handle assembly plane" and measuring a distance to that portion of the saw also lacks clarity. Ex. 30 at ¶¶ 60-61. For example, a POSITA could interpret this distance consistent with Plaintiff's interpretation in annotated Figure 7 below (orange line on right) by defining the handle assembly plane as Plaintiff has with the solid blue line. But a POSITA could also interpret the term "handle assembly plane" consistent with the green dashed line. Ex. 30 at ¶ 61.



*Figure F:  Annotated Figs. 7 with Measurements*

For each measurement, the specification and prosecution history fail to provide any further clarity to a POSITA as to the proper scope of the claims.  Given the uncertainty as to how one would define the distances claimed, assessing whether the "distance between the handle assembly and the saw blade" is **greater** than the "distance between the two planes of the cutting plane defined by the saw blade extending across the throat and handle assembly" will vary depending on the subjective method by which a POSITA chooses to measure each distance. Ex. 30 at ¶ 62.

For all of these reasons, dependent claim 12 should be held invalid as indefinite for failing to point out with reasonable certainty the scope of the claim. *Nautilus*, 572 U.S. 891 at 901.[29]

### 3.  Plaintiff's Reply Position

As written, this term is definite.  Milwaukee rewrites the term to argue that it is indefinite, by isolating and mischaracterizing the plain language.  The claim language and figures provide sufficient information for a person of ordinary skill in the art to understand the meaning of this term.

---

[29] For the same reasons as discussed in footnote 16, Plaintiff's assertion that Defendant waived this indefiniteness defense is baseless

Milwaukee mistakenly isolates the phrase "two planes of the cutting plane" to argue that the cutting plane does not have two planes.  Persawvere does not disagree, because "two planes of the cutting plane" is not what is claimed.  The whole phrase is "the two planes of the cutting plane defined by the saw blade extending across the throat and handle assembly plane."  *See* Ex. 1 at 10:44-46.  "Two planes of" simply means the two planes are about to be described.  The two planes that are then described are the cutting plane, as so defined, and the handle assembly plane.[30]

A person of ordinary skill in the art would also understand that the distance between the handle assembly and the saw blade is necessarily measured from the handle assembly to the exposed saw blade that comprises the cutting plane.  A person of ordinary skill in the art would understand the claimed ratio relates to the many disclosures regarding the position of the handle assembly and how that affects the balance and use of the saw.  *See* Br. at 55-56.  In fact, the figures themselves show that a person of ordinary skill in the art would not be confused in the way Milwaukee posits.  *See* Br. at 77 (arguing distance could be measured to closest part of the saw blade within the body of the frame).  For example, Figure 7 shows that the distance from the handle assembly to the portion of the saw blade that sits within the frame (represented by the green line Milwaukee has drawn in Figure 7; *see* Br. at 77 ) as opposed to the exposed portion of the saw blade, is not greater than the distance between the cutting plane and handle assembly plane, as claimed.  *See* Ex. 1 at Fig. 7.  Thus, a person of ordinary skill in the art would not consider that interpretation to be a possibility.

---

[30] This phrase can be diagrammed as follows: "the two planes of the cutting plane defined by the saw blade extending across the throat and handle assembly plane."  The red portion explains that two planes are claimed, the green portion describes the cutting plane, and the blue portion describes the handle assembly plain.

Finally, a person of ordinary skill in the art is capable of understanding what the "handle assembly plane" is, just as a person of ordinary skill in the art can understand claim 1's following terms: "the handle assembly defines yet a third plane," "exposed portion of the angled saw blade defining a cutting plane." There are many planes in the claims and Milwaukee provides no explanation as to why this is the only one that a person of ordinary skill in the art would not understand. Milwaukee's argument seems to be that the side profile of the handle assembly in Figure 7 is of a width in which there could be an infinite number of planes. *See* Br. at 78. That is true for any feature that is described in a patent as a "plane," which is a common phrase used in patent drafting. In any case, the meaning of the term need only be reasonably certain in the view of a person of ordinary skill in the art, which it is from the disclosures in the specification and figures.

### 4. Defendant's Sur-Reply Position

Plaintiff attempts to rewrite the claim language and argue what a POSITA may have understood about this term without actually providing a declaration from an expert. This does not resolve the indefiniteness issue. First, Plaintiff's argument that Defendant "rewrites the term to argue that it is indefinite, by isolating and mischaracterizing the plain language" is misplaced. Br. at 78. Plaintiff is reading out explicit claim limitations in order to avoid the indefiniteness issues with the claim. Plaintiff argues that "'two planes of the cutting plane' is not what is claimed," but that is the claim language verbatim. Second, in addition to the ambiguity of the phrase "two planes of the cutting plane," the claimed distances also fail to provide reasonable certainty as to the scope of the invention. Br. at 76-78. Plaintiff offers no expert declaration to support its numerous attorney arguments about what a POSITA may have understood about those distances. As explained in Dr. Nayfeh's declaration, ambiguities exist with the claim language, including how distances should

be measured. Ex. 30 at ¶¶ 57-62. Those ambiguities impact whether any particular saw falls within the scope of the claims. For all of these reasons, dependent claim 12 should be held invalid as indefinite for failing to point out with reasonable certainty the scope of the claim. *Nautilus*, 572 U.S. 891 at 901.

## VII.   CONCLUSION

### A.   Plaintiff's Conclusion

For the reasons stated herein, the Court should adopt Persawvere's proposed constructions and find the challenged terms not indefinite.

### B.   Defendant's Conclusion

Defendant respectfully request the Court adopt Defendant's proposed constructions for the disputed claim terms

Dated: May 6, 2022

| | |
|---|---|
| By:  */s/ Kelly A. Del Dotto* | By: */s/ Amy M. Dudash* |
| Susan E. Morrison (No. 4690) | Amy M. Dudash (No. 5741) |
| Kelly Allenspach Del Dotto (No. 5969) | MORGAN, LEWIS & BOCKIUS LLP |
| FISH & RICHARDSON P.C. | 1201 N. Market Street, Suite 2201 |
| 222 Delaware Avenue, 17th Floor | Wilmington, DE 19801 |
| Wilmington, DE 19801 | Telephone: (302) 574-3000 |
| Telephone: (302) 652-5070 | amy.dudash@morganlewis.com |
| morrison@fr.com | |
| kad@fr.com | Jason C. White (admitted *pro hac vice*) |
| | Scott D. Sherwin (admitted *pro hac vice*) |
| Kurt L. Glitzenstein | Maria E. Doukas (admitted *pro hac vice*) |
| Jacob B. Pecht | 110 North Wacker Drive |
| FISH & RICHARDSON P.C. | Chicago, Illinois 60606 |
| One Marina Park Drive | Tel: (312) 324-1000 |
| Boston, MA 02210 | jason.white@morganlewis.com |
| (617) 521-7042 | scott.sherwin@morganlewis.com |
| glitzenstein@fr.com | maria.doukas@morganlewis.com |
| pecht@fr.com | |
| | |
| Attorneys for Plaintiff | Attorneys for Defendant |
| Persawvere, Inc. | Milwaukee Electric Tool Corporation |