# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| PERSAWVERE, INC., | | |
| | Plaintiff, | |
| v. | | C.A. No. 21-400-GBW |
| MILWAUKEE ELECTRIC TOOL CORPORATION, | | |
| | Defendant. | |

---

Kelly Allenspach Del Dotto, Susan E. Morrison, FISH & RICHARDSON P.C., Wilmington, Delaware; Kurt L. Glitzenstein, Jacob B. Pecht, FISH & RICHARDSON P.C., Boston, Massachusetts

*Counsel for Plaintiff*

Amy M. Dudash, MORGAN, LEWIS & BOCKIUS LLP, Wilmington, Delaware; Jason C. White, Scott D. Sherwin, Maria E. Doukas, MORGAN, LEWIS & BOCKIUS LLP, Chicago, Illinois

*Counsel for Defendant*

## MEMORANDUM OPINION

February 21, 2023
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Plaintiff Persawvere, Inc. ("Persawvere") alleges that Defendant Milwaukee Electric Tool Corporation ("Milwaukee") infringes United States Patent No. 8,607,681 ("the '681 patent"). D.I 1 at ¶ 1.[1] The '681 patent claims a band saw designed for one-handed operation, which allegedly overcomes many of the disadvantages of traditional band saws operated with two hands. *See generally* '681 patent.

Before the Court is the issue of claim construction of multiple terms in the '681 patent. The Court has considered the parties' joint claim construction brief and the accompanying appendix. D.I. 47; D.I. 48. The Court held a *Markman* hearing on February 3, 2023 (the "*Markman*," Tr. __). D.I. 77.

## I.    LEGAL STANDARDS

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted); *see also Corning Glass Works v. Sumitomo Elec. U.S.A., Inc*., 868 F.2d 1251, 1257 (Fed. Cir. 1989) ("A claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using, or selling the protected invention"). "[T]here is no magic formula or catechism for conducting claim construction." *Phillips*, 415 F.3d at 1324. The Court is free to attach the appropriate weight to appropriate sources "in light of the statutes and policies that inform patent law." *Id.* The ultimate question of the proper construction of a patent is a question of law, although

---

[1] The Court writes for the benefit of the parties and assumes their familiarity with this action.

subsidiary fact-finding is sometimes necessary. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837 (2015) (quoting *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996)).

"The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing *Phillips*, 415 F.3d at 1312–13). A person of ordinary skill in the art "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313.

"When construing claim terms, the court first looks to, and primarily rely on, the intrinsic evidence, including the claims themselves, the specification, and the prosecution history of the patent, which is usually dispositive." *Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*, 731 F.3d 1271, 1276 (Fed. Cir. 2013). "Other claims of the patent in question, both asserted and unasserted, can . . . be valuable" in discerning the meaning of a disputed claim term because "claim terms are normally used consistently throughout the patent," and so, "the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Phillips*, 415 F.3d at 1314. In addition, "[d]ifferences among claims can also be a useful guide[.]" *Id.* For example, "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314-15.

In addition to the claim, the Court should analyze the specification, which "is always highly relevant to the claim construction analysis ... [as] it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). It is also possible that "the specification may reveal a special definition given to a claim term by the

patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. "Even when the specification describes only a single embodiment, [however,] the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014) (internal quotation marks omitted) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004)). And, the specification "is not a substitute for, nor can it be used to rewrite, the chosen claim language." *SuperGuide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004).

The Court "should also consider the patent's prosecution history, if it is in evidence." *Markman*, 52 F.3d at 980. The prosecution history "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution[.]" *Phillips*, 415 F.3d at 1317.

In some cases, the Court "will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva*, 135 S. Ct. at 841. Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. Overall, while extrinsic evidence may be useful, it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1317 (internal quotation marks and citations omitted).

## II.     AGREED-UPON TERMS

The parties agreed upon the construction of one claim term.  "Axis" in claims 1 and 7 of the '681 patent means "a straight line through the center of the wheel about which the wheel rotates."  D.I. 47 at 8.  The Court will adopt the agreed-upon construction.

## III.    DISPUTED TERMS

### A.  "handle assembly"

The claim term "handle assembly" appears in claims 1 and 7 of the '681 patent.  The parties' competing proposed constructions for "handle assembly" are set out in the chart below:

| Claim Term | Persawvere's Construction | Milwaukee's Construction |
|---|---|---|
| "handle assembly" | Plain and ordinary meaning | "the only one part of the hand-held band saw that is intended for gripping during operation" |

The parties' dispute revolves around whether the scope of the term "handle assembly" was limited to the only portion of the saw that is able to be gripped during the prosecution of the '681 patent.  Persawvere argues that "handle assembly" should be afforded its plain and ordinary meaning, *see* D.I. 47 at 11, and clarified during the *Markman* hearing that the term's plain and ordinary meaning is "an assembly of components that form the handle and is attached to the frame."  Tr. at 6.  Milwaukee contends that the term should be construed in light of Persawvere's purported prosecution disclaimer, citing to two instances during prosecution of the '681 patent where Persawvere allegedly limited "handle assembly" to the only portion of the saw that can be gripped.  *Id.* at 11, 13-16.

"It is axiomatic that we will not narrow a claim term beyond its plain and ordinary meaning unless there is support for the limitation in the words of the claim, the specification, or the prosecution history."  *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1333 (Fed.

5

Cir. 2013) (citations omitted). "Under the doctrine of prosecution disclaimer, a patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution." *Purdue Pharma L.P. v. Endo Pharms. Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006). Prosecution disclaimer can arise from both claim amendments and arguments made to the United States Patent and Trademark Office. *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013). However, courts will not apply the doctrine of prosecution disclaimer unless the disclaimer is "both clear and unmistakable to one of ordinary skill in the art." *Elbex Video, Ltd. v. Sensormatic Elecs. Corp.*, 508 F.3d 1366, 1371 (Fed. Cir. 2007) (quotations omitted). That is, "[w]here the alleged disavowal is ambiguous, or even 'amenable to multiple reasonable interpretations,' [courts] have declines to find prosecution disclaimer." *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016) (quoting *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1359 (Fed. Cir. 2003)).

During the prosecution of the '681 patent, the Examiner rejected independent claim 1, which recited "a handle assembly extending from said frame assembly and oriented at an acute angle relative to said frame assembly," *see* D.I. 48, Ex. 12 at 2, as obvious in view of United States Patent No. 6,829,830 ("O'Banion"). *See id.*, Ex. 15 at 3. The Examiner explained that "O'Banion discloses the invention as claimed including . . . a handle 14 having a grip portion extending at angle with respect to the frame (see Fig. 2, the horizontal portion of the handle 14) . . ." *Id.* In response, the applicant amended claim 1 to recite "a handle assembly extending from said frame assembly intermediate said drive wheel and said driven wheel and oriented at an acute angle relative to the plane of the frame assembly," and remarked:

> With respect to the O'Banion reference, Applicant notes that the O'Banion handle 14 has an 'L' configuration, the grip portion of the handle is actually the vertical portion including the trigger, and that the horizontal portion of the handle was never intended for gripping and clearly does not satisfy the requirement of claim 1 of a

> handle assembly extending from the frame assembly intermediate the drive wheel and the drive wheel and orientated at an acute angle relative to the plane of the frame assembly. In fact, the horizontal portion of the handle as seen in Fig. 3, is apparently fixedly secured to the top of the motor 16 in the region opposite the throat of the frame and as such would be impossible to grip.

*Id.*, Ex. 12 at 8. When the Examiner later rejected a different independent claim—which recited "a handle assembly extending angularly outward from the frame and defining a hand grip portion having a finger trigger, at least a portion of the handle is positioned laterally across from a throat opening . . . at least a portion of the handle grip portion is positioned longitudinally between the battery and the motor," *see* D.I. 48, Ex. 19 at 5—as obvious in view of United States Patent No. 4,823,666 ("Galloway"), Applicant distinguished Galloway as failing to disclose:

> [T]he claimed battery position orientation and function with respect to the handle (or in the broader saw . . . the claimed handle position, orientation and function with respect to the saw frame, throat and battery. . . . [and] the handle portion as claimed positioned laterally across from the throat opening (as claimed) with a grip portion positioned between the battery and the motor.

*Id.* at 11.

The Court disagrees that Persawvere expressly limited the scope of "handle assembly" to "the only portion of the saw that can be gripped during operation" by prosecution disclaimer. In distinguishing *O'Banion*, Persawvere did not "expressly link[] 'intended for gripping' to 'handle assembly'" based on the horizontal portion of *O'Banion*'s handle, *see* D.I. 47 at 21, but rather it distinguished *O'Banion* based on the positioning of the handle assembly. D.I. 48, Ex. 12 at 8 ("[T]he O'Banion handle . . . clearly does not satisfy the requirement of claim 1 of a handle assembly extending from the frame assembly intermediate the drive wheel and the driven wheel and oriented at an acute angle relative to the plane of the frame assembly."). That Persawvere amended claim 1, in light of *O'Banion*, to explicitly recite the positioning of the handle assembly, *i.e.*, "intermediate said drive wheel and said driven wheel," confirms that Persawvere distinguished

*O'Banion* from the claimed saw based on the positioning of the handle assembly. *Id.*, Ex. 12 at 2.

Similarly, Persawvere's statements distinguishing *Galloway* were directed to the positioning of

*Galloway*'s two handles, *see id.*, Ex. 19 at 9 ("Galloway's two handles and handgrip portions . . .

are not positioned across from the throat . . ."), and nothing in the record suggests, let alone clearly

and unmistakably, that Persawvere equated "handle assembly" to only include the portion that is

gripped during operation.  In fact, the Examiner appeared to understand that "handle assembly"

was distinct from the hand grip portion, explaining that Galloway separately discloses "a handle

defining a grip portion (see modified Fig. 2) and positioned in lateral alignment with the throat,"

"a handle assembly at an acute angle (see Fig. 1)," and "a D-shaped handle (see Fig. 2)." *Id.*, Ex.

18 at 2.

     Finding no evidence of a clear and unmistakable statement limiting "handle assembly" to

"the only portion of the saw that can be gripped during operation," the Court declines to apply the

doctrine of prosecution disclaimer. *See Elbex Video, Ltd.*, 508 F.3d at 1371.  Instead, because a

term's plain and ordinary meaning is the default in claim construction, *Phillips*, 415 F.3d at 1316,

the Court adopts the plain and ordinary meaning of "handle assembly."  The specification discloses

that the handle assembly includes a variable speed trigger, *see* '681 patent at 5:24-32, a safety

switch, *id.*, and a slide receiver for receiving batteries, *id.* at 5:41-46.  *See also id.* at Fig. A.

Notably, Milwaukee acknowledges[2] that the specification provides ample detail so that a person

of ordinary skill would readily understand the plain and ordinary meaning of "handle assembly,"

---

[2] Milwaukee's argument that "even in the absence of a clear and unmistakable disavowal . . . the prosecution history can be evaluated to determine how a person of ordinary skill would understand a given claim term," *see* D.I. 47 at 20-21 (quoting *Aptalis Pharmatech, Inc. v. Apotex Inc.*, 718 F. App'x 965, 971 (Fed. Cir. 2018)), is belied by its own admission that "in describing the handle assembly, the specification refers to more than just a single handle that is gripped during operation." D.I. 47 at 12.

*see* D.I. 47 at 12 (Milwaukee explaining that the specification depicts the "handle assembly" in multiple figures of the '681 patent and explains its relationship to the other claimed components)— although Milwaukee contends, albeit unpersuasively, that the plain and ordinary meaning is overcome by Persawvere's prosecution disclaimer.[3] *Id.* at 13. Thus, based on the intrinsic record, it is clear that a person of ordinary skill in the art would understand the plain and ordinary meaning of "handle assembly" to be "an assembly that may be grasped by hand." *E.g.*, '681 patent at claim 1 (claiming "said handle assembly including *at least* a part of a *hand grip portion* . . .") (emphases added); *see also* Tr. at 24 (Persawvere agreeing that "an assembly that may be grasped by hand" is a proper construction of "handle assembly").

Accordingly, Milwaukee has failed to produce "clear and convincing evidence" that Persawvere limited the scope of "handle assembly" to "the only portion of the saw that can be gripped during operation" by prosecution disclaimer. As such, based on the intrinsic record, the Court construes "handle assembly" to have its plain and ordinary meaning—"an assembly that may be grasped by hand."

**B. "hand grip portion"**

The claim term "hand grip portion" appears in claims 1 and 7 of the '681 patent. The parties' competing proposed constructions for "hand grip portion" are set out in the chart below:

| Claim Term | Persawvere's Construction | Milwaukee's Construction |
|---|---|---|
| "hand grip portion" | Plain and ordinary meaning, which means "a portion of the saw capable of being gripped by the operator during use" | "the part of the portable hand-held saw that the user holds onto during operation" |

---

[3] In other words, Milwaukee argues that, but-for Persawvere's purported prosecution disclaimer, the specification of the '681 patent clearly informs a person of ordinary skill as to the plain and ordinary meaning of "handle assembly." D.I. 47 at 13.

The crux of the parties' dispute is what is the plain and ordinary meaning of the term "hand grip portion." Persawvere asserts that "both the specification and common sense" inform a person of ordinary skill in the art as to the plain and ordinary meaning of the disputed term and, thus, the Court need not clarify its meaning or offer any further construction. D.I. 47 at 22, 24. Although Milwaukee concedes that "[Persawvere's] position is very similar to [Milwaukee's] construction," Milwaukee urges the Court to clarify the plain and ordinary meaning of "hand grip portion" because it does not appear in the specification and a construction will "set proper boundaries as to claim scope" for the jury. *Id.* at 24-25. In response, Persawvere maintains that although both a person of ordinary skill in the art and a juror would "easily understand the meaning of 'hand grip portion,'" for purposes of clarification, Persawvere proffers that the plain and ordinary meaning is "a portion of the saw capable of being gripped by the operator during use." *Id.* at 25, 25 n.11. However, Persawvere changed its tune at the *Markman* hearing, proposing a new plain and ordinary meaning as "the grip portion of the handle assembly that contains the trigger assembly." Tr. at 29. While the parties agree that the term's plain and ordinary meaning shall apply, a dispute still exists as to the proper scope of "hand grip portion" which requires the Court to construe the term. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).

The Court begins its analysis with the language of the claim itself. The use of the disputed term in claim 1 of the '681 patent is representative.

1. A portable hand-held band saw capable of being fully supported and operated single-handedly for performing a one-handed cutting operation using a closed loop saw blade, comprising:

. . . .

a handle assembly extending upwardly and outwardly at an angle from the plane of the frame, said handle assembly including at least a part of a **hand grip portion** located between the first axis of the drive wheel and the second axis of the driven wheel; . . . .

> a trigger within the **_hand grip portion_**, said trigger capable of being activated
> by the operator while operating the saw single-handedly, and wherein the
> trigger is also located between the first drive wheel axis and the second wheel
> axis.

*See* '681 patent at claim 1 (emphases added).

The language of the claim suggests, and the parties agree, that a "hand grip portion" is a

portion of the saw that the user grips during operation. D.I. 47 at 24, 25. The specification supports

this common sense understanding that a "hand grip portion" is what the user grasps during

operation of the claimed saw. *See, e.g.*, '681 patent at 4:21-23 (stating that "[t]he handle assembly

14 includes a pistol grip 42 having a trigger assembly 44 for controlling the cutting speed of the

motor 26"); *id.* at 7:35-40 (describing the user being able to "grasp the saw in one hand and position

or stabilize the stock with the other hand"); *id.* at 7:60-8:5 (describing the use of the saw by

grasping the handle in one hand and activating the trigger). While the parties proffer nearly

identical interpretations of the disputed term based on this intrinsic evidence, Persawvere accuses

Milwaukee's construction of improperly importing a process limitation into a product claim. D.I.

47 at 23, 25. Yet in the same breath, Persawvere proposes a plain and ordinary meaning that

suffers from the same issue. *Id.* at 25 n.11. Nevertheless, the Court disagrees that clarifying that

a "user/operator" "holds/grips" a "hand grip portion" of the saw improperly imports a process

limitation into a product claim. *See Vanguard Prods. Corp. v. Parker Hannifin Corp.*, 234 F.3d

1370, 1372-73 (Fed. Cir. 2000).

Additionally, the Court declines Milwaukee's invitation to limit its construction to "the"—

as opposed to "a"—portion of the saw that is gripped/held onto. Doing so would conflict with the

claim language, which uses the indefinite article "a" to suggest that the claimed invention is not

limited to only one "hand grip portion." *See* '681 patent at claim 1; *see also United Therapeutics*

11

*Corp. v. Liquidia Techs., Inc.*, 2022 WL 3910252, at \*16 (D. Del. Aug. 31, 2022) ("The Federal Circuit 'has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'" (quoting *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000))). More so, it would render dependent claims 6 and 13, which separately recite that "the handle assembly provides the only hand grip portion useable during operation of the saw," superfluous. *Promos Techs., Inc. v. Samsung Elecs. Co.*, 809 F. App'x 825, 834 (Fed. Cir. 2020) ("[I]t is generally improper to construe a patent claim so that express claim limitations or elements are rendered superfluous."). Finally, as to Persawvere's new construction proffered at the *Markman* hearing, *see* Tr. at 29 which is undisputedly different from the plain and ordinary meaning proposed in its briefing, the Court considers this new construction waived. *See CoolTVNetwork.com, Inc. v. Blackboard Inc.*, No. 19-291-LPS-JLH, 2020 WL 6536960, at \*5 (D. Del. Nov. 6, 2020), *report and recommendation adopted*, 2021 WL 2010579 (D. Del. May 20, 2021) ("New arguments made at a Markman hearing are waived."). But even if the Court were to consider this new construction, *i.e.*, "the grip portion of the handle assembly that contains the trigger assembly," it undoubtedly renders the separately recited "trigger" limitation in claim 1 redundant. *See, e.g.*, '681 patent at claim 1 (separately reciting "a trigger within the hand grip portion, said trigger capable of being activated by the operator while operating the saw single-handedly . . ."); Tr. at 32 (Persawvere agreeing that its newly proposed construction might render the claim language redundant); *see also Promos Techs.,* 809 F. App'x at 834.

Therefore, based on the '681 patent's claim language and specification, the Court adopts the plain and ordinary meaning of the term "hand grip portion," which means "a portion of the saw capable of being gripped by the operator during use."

## C. The "Between Terms"[4]

| Claim Term | Persawvere's Construction | Milwaukee's Construction |
|---|---|---|
| "hand grip portion located between the first axis of the drive wheel and the second axis of the driven wheel" | Plain and ordinary meaning | Indefinite |
| "wherein the trigger is also located between the first drive wheel axis and the second wheel axis" / "trigger being positioned between the first and second rotational axes of the wheels" | Plain and ordinary meaning | Indefinite |

As clarified during the *Markman* hearing, *see* Tr. at 37, the crux of the parties' dispute is

whether the Between Terms are indefinite[5] or, whether a person of ordinary skill in the art would

understand, with reasonable certainty, how to assess whether the hand grip portion and the trigger

are "between" the axes of the drive and driven wheels.  Milwaukee asserts that the Between Terms

---

[4] The parties combined disputed term 3 ("hand grip portion located between the first axis of the drive wheel and the second axis of the driven wheel") and disputed term 4 ("wherein the trigger is also located between the first drive wheel axis and the second wheel axis" / "trigger being positioned between the first and second rotational axes of the wheels") into a single section of the joint claim construction brief, *see* D.I. 47 at 27, and have identified the same dispute for both—whether the word "between" renders these claim terms indefinite.  As such, the Court will analyze the terms together and, for the purpose of clarity, refers to disputed terms 3 and 4, collectively, as the "Between Terms."

[5] Persawvere contends that, because Milwaukee "failed to raise an indefiniteness argument in its Invalidity contentions" concerning the Between Terms, the "substantially weight balanced" term, *see infra* Section III.E, and the distance term, *see infra* Section III.G, Milwaukee has waived any indefiniteness argument. *See* D.I. 47 at 30, 55-56, 75. However, Milwaukee disclosed in the Joint Claim Construction Chart, *see generally* D.I. 32, D.I. 46, that it would pursue indefiniteness arguments against the '681 patent.  Therefore, Milwaukee did not waive its indefiniteness arguments. *See TQ Delta, LLC v. 2Wire, Inc.*, 373 F. Supp. 3d 509, 523 (D. Del. 2019).

are indefinite and, thus, declines to proffer a construction. D.I. 47 at 27 nn. 12 & 13. Persawvere disagrees, arguing that "[t]he meaning of 'between' does not change based on the 'perspective' in which the viewer looks at the saw embodiments in the Figures." *Id.* at 35. Rather, when read in light of the intrinsic evidence, the Between Terms clearly inform, with reasonable certainty, those skilled in the art about the scope of the invention. *Id.* at 35-37.

Section 112 of the Patent Act requires that the claims of a patent "particularly point[] out and distinctly claim[] the subject matter which the inventor . . . regards as the invention." 35 U.S.C. § 112(b). The "primary purpose of the definiteness requirement" contained in § 112(b) "is to ensure that the claims are written in such a way that they give notice to the public of the extent of the legal protection afforded by the patent, so that interested members of the public, *e.g.*, competitors of the patent owner, can determine whether or not they infringe." *All Dental Prodx, LLC v. Advantage Dental Prods., Inc.*, 309 F.3d 774, 779–80 (Fed. Cir. 2002).

"A patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). To determine indefiniteness, courts examine "the patent record—the claims, specification, and prosecution history—to ascertain if they convey to one of skill in the art with reasonable certainty the scope of the invention claimed." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341 (Fed. Cir. 2015). While a "'potential infringer'" need not "be able to determine ex ante if a particular act infringes the claims," the patentee must "apprise the public 'of what is still open to them[]'" such that "a person of ordinary skill in the art could determine whether or not an accused product or method infringes the claim." *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1346-47 (Fed. Cir. 2022) (citations omitted) (internal quotations

omitted). The challenger must "prov[e] indefiniteness by clear and convincing evidence." *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017).

Like claim construction, definiteness is a question of law, but the Court must sometimes render factual findings based on extrinsic evidence to resolve the issue of definiteness. *See Sonix Tech. Co. v. Publications Int'l, Ltd.*, 844 F.3d 1370, 1376 (Fed. Cir. 2017). "[A]ny fact critical to a holding on indefiniteness must be proven by the challenger by clear and convincing evidence." *One-E-Way, Inc. v. Int'l Trade Comm'n*, 859 F.3d 1059, 1062 (Fed. Cir. 2017) (cleaned up).

The disputed Between Terms are not indefinite. While Milwaukee is correct that the '681 patent's specification discloses multiple figures illustrating various embodiments of the claimed saw, including multiple different "perspectives" of the claimed invention, this alone does not prove that a person of ordinary skill in the art reading the intrinsic record would not be able to determine the meaning of the disputed terms with reasonable certainty. See D.I. 47 at 31-32. In fact, the claim language is clear that the hand grip portion/trigger are located in the area separating the axes of the drive and driven wheels: "at least a part of a hand grip portion *located between* the first axis of the drive wheel and the second axis of the driven wheel," and "wherein the trigger is also *located between* the first drive wheel axis and the second wheel axis." '681 patent at claim 1 (emphases added).

Indeed, the '681 patent's figures confirm that the position of the "hand grip portion" or the "trigger" is in the area separating the axes of the drive and driven wheels, regardless of the perspective with which one views the claimed saw. *See id.* at Figs. 1-9a (the "hand grip portion" and "trigger" are located in the same position "between" the two axes in each Figure); *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1348 (Fed. Cir. 2012) (figures in an asserted patent can inform a person of ordinary skill in the art as to the meaning of disputed claim

terms). A person of ordinary skill in the art would also readily understand that the '681 patent's figures are two-dimensional depictions of a three-dimensional saw, and that the area "between" the axes of the drive and driven wheels would extend outwards to occupy the three-dimensional space. Thus, even though the "hand grip portion" and "trigger" are not co-planar to the line created by the axes of the drive and driven wheels in every figure of the '681 patent, a person of ordinary skill would still understand that the "hand grip portion" and "trigger" reside in the three-dimensional space "between" the two axes. The specification further explains that the one-handed operation of the claimed saw is achieved by the location of the handle "intermediate the drive and drive pulleys 22, 28 respectively, rather than outboard as in previous designs," which obviates any ambiguity as to the meaning of "between." *See* '681 patent at 4:13-20; *see also id.* at 7:45-59 (explaining that the positioning of the handle is an improvement over prior art that includes handles "at an extreme end of the saw body"). Finally, the '681 patent's prosecution history further confirms that a person of ordinary skill would understand the meaning and scope of the Between Terms. When the applicant added the Between Terms, it distinguished prior art references with hand grip portions at extreme ends of the claimed saw, explaining that the '681 patent's claimed "hand grip portion is recited as being between the two axes of the drive wheel and the driven wheel, which none of the prior art discloses." *See* D.I. 48, Ex. 7 at 4.

Therefore, when read in light of the entirety of the '618 patent and its prosecution history, a person of ordinary skill in the art would be clearly informed, with reasonable certainty, that the Between Terms have a definite meaning and scope. In other words, a person of ordinary skill in the art would understand that the Between Terms refer to the area separating the axes of the drive and driven wheels, regardless of the perspective with which one views the claimed saw. Milwaukee has not carried its burden of demonstrating, by clear and convincing evidence, that the

term is indefinite. Accordingly, the Court, based on the intrinsic record, construes the Between

Terms to have their plain and ordinary meaning.

### D. The "One Hand" terms[6]

| Claim Term | Persawvere's Construction | Milwaukee's Construction |
|---|---|---|
| "said handle assembly permitting the operator to lift . . . the saw with one hand" | Plain and ordinary meaning | "the portable hand-held band saw has only one handle assembly and a user is capable of lifting the saw with only one hand on this handle assembly" |
| "said handle assembly permitting the operator to . . . operate the saw with one hand" | Plain and ordinary meaning | "the portable hand-held band saw has only one handle assembly and a user can operate the saw with only one hand on this handle assembly" |

The crux of the parties' dispute centers on whether the '681 patent's intrinsic record

supports limiting the claims to only one handle assembly that a user can lift/operate with only one

hand. Milwaukee argues that its proposed construction is correct because "the specification read

in light of the prosecution history makes clear that [Persawvere] limited the scope of the claims to

only those hand-held band saws having one handle assembly." D.I. 47 at 43. Persawvere

disagrees, arguing that "[n]othing in the intrinsic evidence suggests that the claimed invention must

only have one handle assembly," and refutes any suggestion that it somehow disclaimed band saws

with two handles during prosecution. *Id.* at 40-41. For the reasons set out below, the Court finds

that Persawvere did not expressly disclaim band saws with two handles and, thus, did not limit the

---

[6] The parties similarly combined disputed term 5 ("said handle assembly permitting the operator to lift . . . the saw with one hand") and disputed term 6 ("said handle assembly permitting the operator to . . . operate the saw with one hand") into a single section of the joint claim construction brief, and have identified the same dispute for both—whether the '681 patent's specification and prosecution history support limiting the claims to only one handle assembly that a user can lift/operate with only one hand. As such, the Court will analyze the terms together and, for the purpose of clarity, refer to disputed terms 5 and 6, collectively, as the "One Hand" terms.

claims to only one handle assembly that the user can lift/operate with only one hand. Therefore, the Court construes the One Hand terms to have their plain and ordinary meaning.

During prosecution of the '681 patent, the Examiner rejected applicant's claims as obvious in view of United States Patent No. 2,876,809 ("Rentsch") and United States Patent No. 6,442,848 ("Dean"). *See* D.I. 48, Ex. 13 at 7. In overcoming this rejection, the applicant explained that neither *Rentsch* or *Dean* disclosed a band saw that is capable of being operated with one hand because those references explicitly disclose two-handed use. *Id.* at 7-8 ("[N]either cited reference teaches or suggests a band saw that the typical user can operate with only one hand."). Specifically, applicant noted that *Rentsch* disclosed "a saw having two handles . . . and teaches that the user grasp both handles when operating the saw," while *Dean* similarly disclosed a saw "including a primary handle 14 and support handle 16 . . . . and explicitly [taught] using two hands to operate." *Id.*

The Examiner later rejected applicant's claims, which did not recite the invention as a one-handed band saw capable of being operated singlehandedly, in view of United States Patent No. D156282 ("Schepige"). D.I. 48, Ex. 11 at 6. In response, the applicant amended independent claim 51 "to more clearly recite the invention as a one-handed band saw capable of being operated singlehandedly," and explained that:

> Schepige '282 illustrates an ornamental design for a portable band saw that nominally includes a trigger portion within a handle, although the Schepige design shows a second handle portion, indicating that the Schepige saw is to be used with two hands. Since there is no other description besides the drawing (as Schepige is a design patent), looking at the Figures in his patent indicates a two handed operation. This is in direct contradistinction over the presently claimed invention, where it is currently reciting a single handed capability and usage.

*Id.* at 6-7. Subsequently, the Examiner issued a Notice of Allowance, explaining that:

> The combination of Schepige with Buck et al. teaches the invention substantially as claimed regarding the frame and balancing the saw, however, the combination

18

> fails to teach the handle assembly permitting the operator to lit [sic] and operate the saw with one hand, where the trigger within the hand grip portion is located between first and second drive wheels.

D.I. 48, Ex. 6 at 2.

The Court disagrees that Persawvere expressly limited the scope of the One Hand terms to "only one handle assembly that a user can lift/operate with only one hand" by prosecution disclaimer. In distinguishing *Rentsch* and *Dean*, Persawvere did not "link[] two handles with two-handed operation," *see* D.I. 47 at 54, but rather it distinguished *Rentsch* and *Dean* based on their explicit disclosure of only two-handed operation. *See* D.I. 48, Ex. 13 at 7-8. The applicant specifically pointed to *Rentsch*'s and *Dean*'s requirement that the saw be used with two hands to differentiate its claimed saw that "can be operated with one hand by a typical user." *Id.* Similarly, in overcoming *Schepige*, Persawvere explained that, based solely on the drawings, "the Schepige saw is to be used with two hands[,]" which is "in direct contradistinction over the presently claimed invention, where it is currently reciting a single handed capability and usage." D.I. 48, Ex. 11 at 6-7. That Persawvere was distinguishing *Schepige* based on two-handed operation—rather than solely based on Schepige having two handles—is clear by its remarks and subsequent claim amendment, which emphasized "the invention as a one-handed band saw capable of being operated singlehandedly." *Id.* at 6. Nothing in the prosecution history suggests that Persawvere was clearly and unmistakably disclaiming band saws with two handles.

Finding no evidence of a clear and unmistakable statement limiting the One Hand Terms to "only one handle assembly that a user can lift/operate with only one hand," the Court declines to apply the doctrine of prosecution disclaimer. *See Elbex Video, Ltd.*, 508 F.3d at 1371. Similarly, Milwaukee's assertion that the '681 patent's specification also supports limiting the claims to only one handle assembly fares no better. *See* D.I. 47 at 43-44. Milwaukee argues that, because "the

description of every embodiment of the invention focuses on a saw with only one handle assembly," the claims are necessarily limited to only one handle assembly. *Id.* at 43. However, Milwaukee ignores that claims are not typically limited to the embodiments disclosed in the specification, even when just one such embodiment (or type of embodiment) is disclosed. *See Hill-Rom*, 755 F.3d at 1373 ("The absence of an embodiment teaching a wireless receiver does not prevent the claimed datalink from being given its plain and ordinary meaning at the relevant time."). Similarly, Milwaukee argues that the scope of the claims should be limited to only one handle because the specification emphasizes that the purpose of the invention is to use the saw with one-hand, and "even refers to this characteristic as the 'most important thing.'" D.I. 47 at 43-44 (citing '681 patent at 2:59-62). However, the Federal Circuit has repeatedly rejected limiting the claim scope based on the purpose or essence of the claimed invention. *See, e.g.*, *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1322 (Fed. Cir. 2007) ("This court . . . has rejected a claim construction process based on the 'essence' of an invention."); *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1345 (Fed. Cir. 2002) ("It is well settled that there is no legally recognizable or protected essential element, gist or heart of the invention in a combination patent.") (internal quotation marks omitted).

As such, the Court finds no support in the intrinsic record to limit the claimed invention to "only one handle assembly that a user can lift/operate with only one hand." While the '681 patent touts the invention's capability of being used with one hand, there is no indication that the claimed invention is limited to only one handle. More so, that the claim language uses the indefinite article "a" when reciting the "handle assembly" suggests that the claimed invention is not limited to only one "handle assembly." *See* '681 patent at claim 1; *see also United Therapeutics Corp.*, 2022 WL 3910252, at *16. Therefore, because a term's plain and ordinary meaning is the default in claim

20

construction, *Phillips*, 415 F.3d at 1316, the Court adopts the plain and ordinary meaning of the One Hand Terms, which means "the portable band saw having at least one handle assembly that the operator is capable of lifting and operating the saw with one hand."

**E. "said handle assembly being located such that the saw is substantially weight balanced, so that the saw can be utilized in a singlehanded operation for cutting the workpiece while holding the workpiece with another hand of the operator"**

The disputed claim term appears in claims 1 and 7 of the '681 patent. The parties' competing proposed constructions are set out in the chart below:

| Claim Term | Persawvere's Construction | Milwaukee's Construction |
|---|---|---|
| "said handle assembly being located such that the saw is substantially weight balanced, so that the saw can be utilized in a singlehanded operation for cutting the workpiece while holding the workpiece with another hand of the operator" | Plain and ordinary meaning | Indefinite<br><br>Alternatively, "the handle assembly must be located such that the position of the center of gravity of the saw is in the middle of the frame across from the throat and generally in a line passing through the user's hand and forearm when the saw blade is in a vertical position" |

Like the Between Terms above, here the parties dispute whether the phrase "substantially weight balanced" renders the disputed term indefinite. Milwaukee argues that the phrase is indefinite because the word "substantially" incorporates a term of degree without providing a defined threshold for what qualifies as "substantially weight balanced." D.I. 47 at 57. In other words, a person of ordinary skill in the art reading the entire '681 patent would not understand, with reasonable certainty, how much weight balancing qualifies as "substantially weight balanced." *Id.* Milwaukee contends that neither the specification or the prosecution history provide objective boundaries that render the phrase definite and, to the extent "substantially weight balanced" requires that the claimed saw can be used single-handedly, whether the claimed saw can

be used single-handedly is "entirely subjective." *Id.* at 58-59 ("When a claim term 'depend[s] solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention,' without sufficient guidance in the specification to provide objective direction to one skill in the art, the term is indefinite." (quoting *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1260 (Fed. Cir. 2014))).

Both parties agree that terms of degree are not inherently indefinite. D.I. 47 at 58, 64; *see Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014) ("[W]e do not hold today, that terms of degree are inherently indefinite."). Rather, "terms of degree render a claim indefinite where the intrinsic evidence (or extrinsic evidence, where relevant and available) provides insufficient guidance as to any objective boundaries for the claims—including where the claims are 'purely subjective' such that their scope cannot be determined with reasonable certainty." *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1348 (Fed. Cir. 2022). Although absolute or mathematical precision is not required, *see, e.g.*, *Interval Licensing*, 766 F.3d at 1370; *see Nautilus*, 572 U.S. at 910 ("The definiteness requirement, so understood, mandates clarity, while recognizing that absolute precision is unattainable."), patent claims with descriptive words or terms of degree must provide objective boundaries for those skilled in the art—based on the intrinsic evidence—to be definite. *Niazi Licensing*, 30 F.4th at 1348.

Applying the same framework as detailed above, *see supra* Section III.C, the Court finds that Milwaukee has not met its burden of demonstrating, by clear and convincing evidence, that "substantially weight balanced" renders the disputed phrase indefinite. *See BASF Corp.*, 875 F.3d at 1365. "Substantially" is undoubtedly a term of degree. *See Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1333 (Fed. Cir. 2010). However, looking to the intrinsic evidence, a person of ordinary skill would readily understand that the claimed saw is "substantially weight balanced"

based on the positioning and location of other claimed components. Specifically, independent claims 1 and 7 explain that the location of the handle assembly aids in achieving a claimed saw that is "substantially weight balanced." *See* '681 patent at claims 1, 7. The specification provides additional examples of the position and location of various claimed components of the handle assembly to substantially weight balance the claimed saw by orienting the center of gravity below the handle.[7] *See, e.g., id.* at 3:49-56; 4:13-20; 5:32-40; 8:6-16. Further, the specification explains that "an offset of the mass of the motor assembly by the mass of the battery pack naturally orients and balances the saw in an appropriate and ergonomically comfortable position." *Id.* at 7:45-59.[8] Milwaukee even admits that this portion of the specification describes "a 'substantially' weight balanced saw based on the 'location and dimension of the battery pack' designed to 'offset' the weight of the cantilevered components (e.g., the motor of the saw)." D.I. 47 at 59 (citing '681 patent at 4:26-29). Though Milwaukee contends that this disclosure neither describes or states the concept of offsetting components, its argument is belied by the specification's explicit teaching

---

[7] Milwaukee argues that, "while these disclosures may describe what it means to be 'weight balanced,' they do not provide any objective boundaries for being 'substantially' weight balanced." D.I. 47 at 60 n.24. But Milwaukee conflates the requirement of providing "objective boundaries" with one requiring "absolute precision." The latter is not required. *See Nautilus*, 572 U.S. at 910.

[8] Contrary to Milwaukee's contention, *see* D.I. 47 at 59-60, a person of ordinary skill would not simply ignore this passage, or its teaching that offsetting various components can achieve a weight balanced saw, just because the independent claims fail to recite a battery pack. Rather, because the battery pack, which is claimed in dependent claims 4 and 10, is a component of the handle assembly, *see* '681 patent at 2:16-19 ("a battery pack detachably coupled to an end of the handle assembly distant from the motor assembly to provide a balance feel to the user when the saw is grasped by the handle"), a person of ordinary skill would understand that the battery pack's location and position would also contribute to whether the claimed saw is "substantially weight balanced." *See Enzo*, 599 F.3d at 1333-34 (a person of ordinary skill would consider a patent's dependent claims when evaluating whether terms in independent claims are indefinite).

that "an offset of the mass of the motor assembly by the mass of the battery pack naturally orients and balances the saw." *See* '681 patent at 7:54-57.

A person of ordinary skill would also understand that "substantially weight balanced" should not be viewed in isolation. *See Phillips*, 415 F.3d at 1313. Rather, because "substantially weight balanced" is modified by the phrase "so that the saw can be utilized in a single-handed operation," a person of ordinary skill would recognize that "substantially weight balanced" is explicitly tied to the claimed saw's capability of being operated single-handedly. In other words, a person of ordinary skill understands that a "substantially weight balanced" saw is one that "can be utilized in a single-handed operation," to which the specification provides ample explanation as to how one would achieve this by positioning and locating the various components of the handle assembly. *See, e.g.*, '681 patent at 3:49-56; 4:13-20; 5:32-40; 7:45-59; 8:6-16. And, contrary to Milwaukee's assertion, this does not transform the disputed phrase into one that is purely subjective. D.I. 47 at 58-59. Instead, by positioning and locating the various components of the handle assembly, a person of ordinary skill in the art would understand that the center of gravity— an undisputedly objective measurement—would be located below the handle so that the saw can be used single-handedly. *See, e.g.*, '681 patent at 3:49-56; 5:32-40; 8:6-16.

Accordingly, the Court finds that "substantially weight balanced" does not render the disputed term indefinite. Rather, as informed by the intrinsic record, "substantially weight balanced" refers to the location of the center of gravity so that the claimed saw can be used single-handedly. Milwaukee's alternative construction acknowledges as much, although Milwaukee's construction requires that the center of gravity be "generally in line passing through the user's hand and forearm when the saw blade is in a vertical position." D.I. 47 at 62. But there is no intrinsic support for limiting "substantially weight balanced" to the orientation of the center of

24

gravity vector, *i.e.*, "generally in line passing through the user's hand and forearm," when the saw blade is in a ***vertical*** position. Accepting this limitation would improperly limit the scope of the disputed term to a single embodiment, i.e., using the saw in a vertical position. *See Supercell Oy v. GREE, Inc.*, 2021 WL 4452082, at \*4 (Fed. Cir. Sept. 29, 2021) (cautioning courts to avoid construing a term "on the basis of a single exemplary embodiment"). As such, based on the intrinsic record, the Court construes "substantially weight balanced" to have its plain and ordinary meaning—"the center of gravity is in the middle of the frame across from the throat."

### F. "outwardly"

The claim term "outwardly" appears in claims 1 and 7 of the '681 patent. The parties' competing proposed constructions for "outwardly" are set out in the chart below:

| Claim Term | Persawvere's Construction | Milwaukee's Construction |
|---|---|---|
| "outwardly" | Plain and ordinary meaning | "away from the frame" |

Persawvere contends that "outwardly" requires no construction because "a person of ordinary skill in the art would readily understand its plain and ordinary meaning" as informed by the intrinsic evidence. D.I. 47 at 70. Milwaukee does not dispute that the term's plain and ordinary meaning should apply, but it insists that a construction is necessary "to ensure consistency of its use in the claims and that the proper claim scope is ascertained." *Id.* at 72. Based on the intrinsic record, the Court adopts the plain and ordinary meaning of "outwardly" and declines to further construe the term.

The use of the term "outwardly" in claim 1 of the '681 patent is representative.

1. A portable hand-held band saw capable of being fully supported and operated single-handedly for performing a one-handed cutting operation using a closed loop saw blade, comprising:

. . . .

25

> a handle assembly extending upwardly and ***outwardly*** at an angle from the plane of the frame, said handle assembly including at least a part of a hand grip portion located between the first axis of the drive wheel and the second axis of the driven wheel; . . . .
>
> wherein the handle assembly defines yet a third plane that is substantially parallel to the second cutting plane of the saw blade, this third handle plane being positioned ***outwardly*** from the second cutting plane; . . .

*See* '681 patent at claim 1 (emphases added).

When viewed in its entirety, the claim language makes clear that "outwardly" defines a relative position of the handle assembly in relation to the cutting plane and frame. Contrary to Milwaukee's position advanced during the *Markman* hearing,[9] there is no support for limiting "outwardly" to the relative position "from the frame" because the claims already provide context as to the positioning of the component "outwardly" from another, *e.g.*, "at an angle from the plane of the frame," and "from the second cutting plane." *See* '681 patent at claim 1; *see also Promos Techs.*, 809 F. App'x at 834 ("[I]t is generally improper to construe a patent claim so that express claim limitations or elements are rendered superfluous."). The specification further supports that "outwardly" is understood to mean a spatial location in relation to other components of the claimed saw, *i.e.*, the frame/cutting plane. *See, e.g.*, '681 patent at 3:42-46 (stating that one form of the claimed band saw includes a "C-shaped frame assembly 12 depending angularly from a centrally located handle assembly 14"); *id.* at 5:32-35 (stating "[i]n the preferred embodiment, handle assembly 92 is angled relative to deck 62. Most preferably, the plane normal or perpendicular to deck 62 is disposed at an acute angle to a plane substantially parallel to the handle assembly"). Further, the figures of the '681 patent confirm that "outwardly" refers to the positioning of various

---

[9] While Milwaukee argues that its proposed construction should be adopted to ensure consistency across the asserted claims, its proposed construction only muddies what is already clear from the claim language itself. *See Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*, No. 17-269-RGA, 2018 WL 4627661, at *4 (D. Del. Sept. 27, 2018).

components in relation to the claimed planes.  *E.g.*, *id.* at Figure 7 (illustrating the "outwardly"

position of the handle assembly relative to the cutting plane and frame).

Milwaukee does not meaningfully dispute that "outwardly" refers to the relative position

of two objects, and even concedes that "[i]n all instances in the specification, the term 'outwardly'

refers to one object being further away from the tool frame than the other referenced object."  D.I.

47 at 72.  In other words, both parties agree that a person of ordinary skill in the art would

understand that "outwardly" refers to the relative position of claimed components in relation to the

claimed plane.  Thus, there is no genuine dispute as to proper scope of the claim term that would

require the Court to further construe the term.  *See ActiveVideo Networks, Inc. v. Verizon*

*Commc'ns, Inc.*, 694 F.3d 1312, 1325-26 (Fed. Cir. 2012) (finding that the district court did not

err in concluding that a term's plain and ordinary meaning applies without offering additional

construction); *see also O2 Micro*, 521 F.3d at 1360.  As such, the Court adopts the plain and

ordinary meaning of the term "outwardly."

### G. "distance between the handle assembly and the saw blade is greater than the distance between the two planes of the cutting plane defined by the saw blade extending across the throat and handle assembly plane"

The disputed claim term appears only in claim 12 of the '681 patent.  The parties'

competing proposed constructions are set out in the chart below:

| Claim Term | Persawvere's Construction | Milwaukee's Construction |
|---|---|---|
| "distance between the handle assembly and the saw blade is greater than the distance between the two planes of the cutting plane defined by the saw blade extending across the | Plain and ordinary meaning | Indefinite |

| throat and handle assembly plane" | | |
| --- | --- | --- |

Once again, the parties dispute whether this term is indefinite. Persawvere contends that the term is not indefinite because, "[u]sing the figures and descriptive text, a person of ordinary skill would understand how to calculate the distances between: (1) the handle assembly and the saw blade; and (2) the distance between the handle assembly plane and the saw blade extending across the throat." D.I. 47 at 74. Milwaukee disagrees, arguing both that the phrase "two planes of the cutting plane" is ambiguous and that the claim language is unclear as to where the claimed distances should be measured. *Id.* at 75-76.

Applying the same framework as detailed above, *see supra* Section III.C, the Court finds that Milwaukee has not met is burden of demonstrating, by clear and convincing evidence, that the disputed phrase is indefinite. *See BASF Corp.*, 875 F.3d at 1365. Although Milwaukee contends that the phrase "two planes of the cutting plane" is ambiguous, Milwaukee mistakenly isolates that phrase from the rest of the claim language. Instead, when reading the whole phrase, it is clear that "two planes of" indicates the patentee's intent to define the boundaries of the planes that are to be measured. That is, the claim language defines the two planes as: (1) the cutting plane, which is defined by the saw blade extending across the throat, and (2) the handle assembly plane. Milwaukee's misreading cannot create ambiguity where none exists.

Further, a person of ordinary skill in the art would readily understand that "the distance between the handle assembly and the saw blade" is necessarily measured from the handle assembly to the exposed saw blade that comprises the cutting plane. As the '681 patent's specification explains, "the angle the fence extends downwardly from deck 52 is substantially parallel to the orientation of the blade section traversing the throat and the plane of the handle." *See* '681 patent at 7:24-28. Contrary to Milwaukee's suggestion, a person of ordinary skill would not measure the

28

distance from the handle assembly to the portion of the saw blade that sits within the frame.   D.I. 47 at 77.   That is because a person of ordinary skill—understanding that the claim requires that the distance between the handle assembly and the saw blade be *greater* than the distance of the defined planes—would recognize that distance is not greater than the distance between the cutting plane and the handle assembly plane.   *Compare* D.I. 47 at 77, Figure 7, *with id.* at Figure F.   Thus, a person of ordinary skill would not credit Milwaukee's interpretation.

Accordingly, because a person of ordinary skill in the art would understand, with reasonable certainty, how to measure the distances as claimed based on the '681 patent's intrinsic record, the disputed phrase "distance between the handle assembly and the saw blade is greater than the distance between the two planes of the cutting plane defined by the saw blade extending across the throat and handle assembly plane" is not indefinite.   As Milwaukee has not carried its burden of demonstrating, by clear and convincing evidence, that the term is indefinite, the Court affords the disputed term its plain and ordinary meaning.   *See Phillips*, 415 F.3d at 1316.

## IV.   CONCLUSION

The Court will construe the disputed claim terms as described above.   The Court will issue an Order consistent with this Memorandum Opinion.