# EXHIBIT B

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

PERSAWVERE, INC.,

              Plaintiff,

v.

MILWAUKEE ELECTRIC TOOL,
CORPORATION,

              Defendant.

C.A. No. 1:21-cv-00400-GBW

**JURY TRIAL DEMANDED**

## REPLY EXPERT REPORT OF GREGORY J. GONSALVES, PH.D., J.D.

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................1

II.     BACKGROUND AND QUALIFICATIONS ..................................................3

        A.      Compensation ..................................................................3

        B.      Level Of Skill Of A Person Of Ordinary Skill In The Art..................3

III.    OVERVIEW OF THE PATENT SYSTEM, THE PARTS OF A
        PATENT APPLICATION, PATENT APPLICATION FILING
        REQUIREMENTS, AND THE PATENT EXAMINATION
        PROCESS ........................................................................................3

IV.     THE '681 Patent ................................................................................4

V.      INEQUITABLE CONDUCT AND THE DUTY OF CANDOR ..................4

        A. General............................................................................4

        B.      Mr. McIntosh Did Not Satisfy His Duty To Disclose
                Information Material To Patentability ....................................4

VI.     CONCLUSION...................................................................................19

VII.    TRIAL EXHIBITS ..............................................................................19

VIII.   SUPPLEMENTATION .........................................................................19

**ATTACHMENTS**

ATTACHMENT A: U.S. Patent No. 8,607,681

ATTACHMENT B: Resume of Dr. Gregory J. Gonsalves

ATTACHMENT C: List of Materials Reviewed

ATTACHMENT D: prosecution file history of U.S. Patent No. 8,607,681

ATTACHMENT E: Transcript of Depositon of Mr. Scott McIntosh

ATTACHMENT F: Milwaukee Electric Tool bandsaw cataloug advertisement

ATTACHMENT G: Milwaukee Electric Tool bandsaw cataloug advertisement

ATTACHMENT H: Claim Construction Opinion, D.I. 84

ATTACHMENT I: U.S. Patent No. 6,442,848 to Dean

ATTACHMENT J: U.S. Patent No. 6,256,891 to Van Camp

## REPLY EXPERT REPORT OF GREGORY GONSALVES, Ph.D.

**I.   INTRODUCTION**

1.      I have been retained as an independent expert by Morgan, Lewis & Bockius LLP
on behalf of Milwaukee Electric Tool Corporation ("Defendant" or "Milwaukee Electric") in its
lawsuit against Plaintiff Persawvere, Inc. (hereinafter "Persawvere") to provide expert analysis
and testimony, including with respect to United States patent practice and procedures generally,
and specifically as they relate to the prosecution of patent application 11/857,772 ("the '772 patent
application) at the U.S. Patent and Trademark Office ("USPTO") that resulted in the issuance of
U.S. Patent 8,607,681 ("the '681 Patent"). Among other things, I have been asked to offer a rebuttal
to the portion of the Rebuttal Report of Charles Reinholtz, Ph.D. Regarding the Validity of U.S.
Patent No. 8,607,681 relating to inequitable conduct. Dr. Reinholtz opines that (i) Mr. McIntosh
did not file a false declaration; (ii) the Milwaukee prior art band saws were not "but for" material
and Mr. McIntosh did not know they were material prior art; and (iii) the Milwaukee prior art band
saw identified by Mr. McIntosh was cumulative over prior art considered by the Examiner.
Reinholtz Report, ¶¶ 295-314.

2.      As discussed in detail in this reply expert report and my original expert report, it is
my opinion that (i) Mr. McIntosh filed a false declaration before the USPTO; and (ii) the
Milwaukee Prior Art Band Saws were "but for" material and Mr. McIntosh failed to disclose them
even though he knew that they were material prior art.

3.      My opinions are based on information listed in my Opening Report and any
additional materials cited herein. I may rely on any of the materials, experiences, and knowledge
identified in my Opening Report and cited herein, in addition to any evidence and material
specifically cited herein as supportive examples in this expert report, as additional support for my
opinions.

4.      I may also provide testimony (i) in rebuttal to Plaintiff's positions, including opinions of any of Plaintiff's experts and any materials they discuss or rely upon, (ii) based on any Orders from the Court, (iii) based on documents or other discovery that Plaintiff has not yet produced or that were produced too late to be considered before my expert report was due, (iv) based on witness testimony which has not been given or was given too late to be considered before my expert report was due, and (v) any amendments to pleadings in this case by Plaintiff. I reserve the right to supplement or amend my opinions as further documentation and information is received.

5.      I reserve the right to supplement or amend this expert report if additional facts and information that affect my opinions become available.

## II.   BACKGROUND AND QUALIFICATIONS

6.     I incorporate the brief summary of my background and qualifications provided in my Opening Report.  My background and qualifications are also more fully set out in my curriculum vitae attached as Attachment B to my Opening Report.

### A.  Compensation

7.     For my analysis and testimony in this case, I am being compensated at $755/hour. I am also being reimbursed for reasonable and customary expenses associated therewith. No part of my compensation is dependent upon the results of this district court case or the substance of my testimony.

### B.  Level Of Skill Of A Person Of Ordinary Skill In The Art

8.     I understand that the parties have agreed to the definition of a person having ordinary skill in the art ("POSITA") for the subject matter claimed in the '681 patent as a person with (i) at least an Associate's degree in engineering technology or a related field, or (ii) a comparable amount of post-high school education in engineering technology or a related field and at least 2 years of practical experience in analyzing, developing or manufacturing power tools. In the alternative, a person of ordinary skill in the art can be someone with (iii) at least six years of practical experience with analyzing, developing or manufacturing power tools.

9.     As indicated by the experience and education described above and my resume, I meet or exceed the level of a POSITA.

## III.   OVERVIEW OF THE PATENT SYSTEM, THE PARTS OF A PATENT APPLICATION, PATENT APPLICATION FILING REQUIREMENTS, AND THE PATENT EXAMINATION PROCESS

10.     I incorporate my discussion from Section III from my Opening Report in its entirety.

3

## IV.    THE '681 PATENT

11.    I incorporate my discussion of the '681 Patent from Section IV from my Opening Report in its entirety.

## V.    INEQUITABLE CONDUCT AND THE DUTY OF CANDOR

### A. General

116.    I incorporate my discussion in Sections V.A-C from my Opening Report in their entirety.

### B.  Mr. McIntosh Did Not Satisfy His Duty To Disclose Information Material To Patentability

#### i.    Mr. McIntosh's Filing of a False Declaration Before the USPTO was Material Misconduct

138.    In my opening expert report, I demonstrated that Mr. McIntosh committed material misconduct by filing a false declaration before USPTO. Dr. Gonsalves Expert Report, ¶¶ 138-145. As explained in my opening report, during prosecution of the '681 Patent, Mr. McIntosh submitted a Declaration to the USPTO in response to a non-final rejection.  In his Declaration, Mr. McIntosh addressed prior art cited by the USPTO, including the prior art patent to Dean.  In addressing Dean, Mr. McIntosh classified himself as an "expert" and told the USPTO that Dean could not be operated with one hand by a typical user, distinguishing the prior art from his claimed invention, which he asserted could be operated with one hand.  Op. Rep. Attachment D at PSAW0000228-229, ¶ 7.

139.    Mr. McIntosh told the USPTO that he could identify the center of gravity in Dean and described where he believed the center of gravity would be located on the saw by stating "a center of gravity of the saw 110 is spaced from the handle 114."  *Id.*  Notably, Dean does not discuss the location of the center of gravity of the saw in the written description, so Mr. McIntosh's representations could not be based on any written disclosures in the reference.

140.    Despite asserting to the USPTO under oath that he could identify the center of gravity of the Dean saw, during his deposition Mr. McIntosh repeatedly contradicted himself, noting, not only that he could not identify the center of gravity of a saw by looking at a picture, including the saw in Dean, but that he could not even estimate where the center of gravity would be located by looking at a picture, including patent figures.  Op. Rep. Attachment E at 63:8-68:14. By way of example, Mr. McIntosh stated:

> Q. For the saw on the Figure 3 of the 848 patent [Dean], can you ***estimate where the center of gravity*** is?
>
> A. No.
>
> Q. And again, is that because the mass and weights and things are not reflected in the patent drawings?
>
> A. I would be guessing.  Wouldn't have enough information.

Op. Rep. Attachment E at 68:2-14 (*emphasis added*, objections omitted)

> \*\*\*
>
> Q. Can you determine the center of gravity for any bandsaw by looking at a picture of the bandsaw.
>
> A. I don't think so.
>
> Q. And why not?
>
> A. Because there's weights, mass, and other things involved in it.
>
> \*\*\*
>
> Q. If you had mechanical drawings for a bandsaw, could you tell the center of gravity for a bandsaw based on looking at mechanical drawings?
>
> A. I don't believe so.
>
> Q. Why not?
>
> A. Same answer I just said before, the weight, mass.
>
> Q. So could you tell the center of gravity for a saw design by looking at patent drawings of the saw?
>
> A. Same answer. You're asking the same question over and over.

Op. Rep. Attachment E at 61:1-12, 61:23-62:18 (objections omitted).

141.    In response, Dr. Reinholtz admits that "Mr. McIntosh submitted a declaration attempting to overcome the rejection based on the Dean, Rentsch, and Stelljes references. (*Id*. at PSAW00000227-230). In his declaration, Mr. McIntosh estimated the center of gravity of these paper references." Dr. Reinholtz Rebuttal Expert Report, ¶ 297.

142. Nonetheless, Dr. Reinholtz opined that Mr. McIntosh did not make false statements to the USPTO because in his declaration [to the USPTO], "Mr. McIntosh is estimating where the center of gravity is" (*id*. at ¶ 298) and that during his deposition he testified only that he could not pinpoint the center of gravity. *Id*. at ¶ 300.  Dr. Reinholtz then concludes that he has "seen no evidence that Mr. McIntosh submitted a false declaration to the USPTO." *Id.* at ¶ 301.

143. Dr. Reinholtz is wrong. Mr. McIntosh did not testify during his deposition ***only*** that he could not pinpoint the center of gravity; he also testified during this deposition that he could not ***estimate*** the center of gravity:

> Q. For the saw on the Figure 3 of the 848 patent, can you ***estimate where the center of gravity*** is?
> A. No.
> Q. And again, is that because the mass and weights and things are not reflected in the patent drawings?
> A. I would be guessing.  Wouldn't have enough information.

Op. Rep. Attachment E at 68:2-14 (*emphasis added*, objections omitted)

145.    While before the USPTO Mr. McIntosh asserted that the center of gravity of the saw in Dean was "spaced from the handle," Op. Rep. Attachment B at PSAW0000228-229. ¶ 7, during his deposition he admitted that he could not actually determine or even estimate the center of gravity of the Dean reference.

146.    Accordingly, Mr. McIntosh submitted false statements to the USPTO in his Declaration to try to overcome the references cited against his then-pending claims.  It is important to understand that the USPTO did not disagree with Mr. McIntosh's statements regarding the location of the center of gravity in each of the prior art references' saws, including Dean.  Nor did it disagree with Mr. McIntosh's assertions that none of the prior art references' saws could be operated with one hand.  Instead, the USPTO stated that the claims at the time did not require one-handed operation.

147.    It is also important to note that when Mr. McIntosh cancelled all pending claims and submitted new claims during prosecution, his new claims included both the one-handed operation claim language and language stating that the saw should be "substantially weight balanced." I understand that the Court construed the term "substantially weight balanced" to mean "the center of gravity is in the middle of the frame across from the throat," Op. Rep. Attachment H, D.I. 84 at 25.  It is also important to note that at no point during prosecution did Mr. McIntosh correct statements made in his Declaration regarding the inability to determine the center of gravity of a saw from pictures alone.

148.    In *Therasense, Inc. v. Becton, Dickinson & Co.*, the Court stated that "[w]hen the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material."  649 F.3d 1276, 1292 (Fed. Cir. 2011). Mr. McIntosh's filing of a false Declaration before the USPTO is thus material misconduct.

      **ii.**      **Mr. McIntosh and Dr. Reinholtz Failed To Show Any Reasonable Inference From Filing A False Declaration Other Than An Intent To Deceive.**

145.    Mr. McIntosh is the sole inventor of the '681 Patent.  As discussed above, when trying to get his invention patented, he submitted a Declaration to the USPTO that attested, among

other things, that the "statements made herein [were] of [his] own knowledge [and were] true." Op. Rep. Attachment D at PSAW0000232. But, as evidenced by his deposition testimony during litigation, the statements that Mr. McIntosh submitted in his Declaration were false. He told the USPTO that he could determine the center of gravity of saws presented in prior art references. But in his deposition, he stated that he could not determine or estimate the center of gravity because there are other factors that must be taken into account (e.g., weight, mass).

146.    Mr. McIntosh failed to provide any explanation for filing a Declaration that he knew was false other than that he intended to deceive the USPTO. Indeed, when faced with the same exact reference (Dean) as presented by the USPTO during prosecution, in his deposition Mr. McIntosh contradicted his Declaration statements, stating in deposition that he cannot even estimate the center of gravity of the Dean saw. Mr. McIntosh set forth no other reasonable inference that can be drawn except that he intended to deceive the USPTO to overcome the cited prior art and obtain allowance of his patent.

147.    Dr. Reinholtz also fails to provide any meaningful explanation for Mr. McIntosh's filing of a Declaration to the USPTO that he knew was false other than that he intended to deceive the USPTO. Dr. Reinholtz's assertion that Mr. McIntosh stated, during his deposition, only that he could not pinpoint the center of gravity from a figure is demonstrably false. Mr. McIntosh also stated during his deposition that he could not ***estimate*** the center of gravity from a figure. Op. Rep. Attachment E at 68:2-14. That is, he told the USPTO that he could identify the center of gravity of saws in prior art references, but he testified under oath at his deposition that he could not determine or estimate the center of gravity.

      iii.    **Mr. McIntosh Failed To Disclose Milwaukee Tool's Prior Art Band Saws Even Though He Knew That They Were Material Prior Art.**

148.    In my opening expert report, I demonstrated that Mr. McIntosh also failed to disclose material prior art to the USPTO during prosecution of his application leading to the '681 Patent. Dr. Gonsalves Expert Report, ¶¶ 136-148.  As explained in my opening report, Milwaukee Tool had a number of prior art bandsaws in the market long before Mr. McIntosh filed his application, including model number 6225, yet Mr. McIntosh did not cite any of these prior art bandsaws in his Information Disclosure Statements submitted to the USPTO.

149.    As described above, during prosecution, Mr. McIntosh canceled all pending claims and submitted a new set.  As also noted above, on December 13, 2012, the USPTO issued a non-final rejection that rejected the pending claims under 35 U.S.C. § 103 as being unpatentable over the design patent to Schepige (U.S. Patent No. D156,282) in view of Buck (U.S. Patent No. 6,996,909).  Op. Rep. Attachment D at PSAW00000041.

150.    After receiving the rejection, Applicant amended the claims to recite, in relevant part, "said handle assembly permitting the operator to lift and operate the saw **with one hand**, and said handle assembly being located such that the saw is **substantially weight balanced, so that the saw can be utilized in a single-handed operation** for cutting the workpiece while holding the workpiece with another hand of the operator."  Op. Rep. Attachment D at PSAW00000025. Applicant also argued that the prior art design patent Schepige describes a bandsaw for two-handed operation that is thus in "direct contradistinction over the presently claimed invention, where it is currently reciting a single handed capability and usage."   Op. Rep. Attachment D at PSAW00000028-29.  Because Schepige is a design patent, Applicant's arguments relied solely on the drawings in Schepige to assess that Schepige was designed for two-handed operation, not the claimed one-handed capability.  *Id*.

151.    After this, the USPTO allowed the claims and issued the '681 Patent.  Of note, the USPTO stated in the Reasons for Allowance that the claims are "allowable because the prior art fails to teach a handle assembly permitting the operator to lit [*sic*] and operate the saw with one hand, where a trigger within a hand grip portion is located between a first drive wheel and a second drive wheel."  Op. Rep. Attachment D at PSAW00000013.

152.    At no point during prosecution did Mr. McIntosh inform the USPTO about the existence of the Milwaukee Tool prior art bandsaws, including the Milwaukee 6225 band saw, that had been sold for decades before Mr. McIntosh filed the application leading to the '681 Patent.  In his deposition, Mr. McIntosh admitted that he was not only aware of these saws but that he had personally used them:

Q. Did you personally, ever try to use a handheld bandsaw one handed before 1999?

A. Yes.

Q. Which saws do you specifically remember trying to do that?

A. Milwaukee.

Op. Rep. Attachment E at 145:1-6.

153.    As I explained in my Opening Report, I understand that Milwaukee Tool had been selling one such prior art bandsaw (Milwaukee 6225 band saw) since well before the priority date of the '681 Patent.  Gonsalves Op. Rep. ¶ 141.  I also understand that Milwaukee Tool not only sold these prior art bandsaws to consumers well before the '681 Patent but also included in its advertisement's descriptions of the center of gravity.  *Id*.

154.    In response, Dr. Reinholtz argues that during his deposition "Mr. McIntosh was not asked to, nor did he, identify a single Milwaukee 'prior art' band saw by model number" (Dr. Reinholtz Rebuttal Declaration, ¶ 302) and that Mr. McIntosh himself " 'didn't have to lift the

[prior art Milwaukee band]saw.' " *Id.* at ¶ 303, *quoting* McIntosh 3/22 Dep. Tr. at 145:1-18; McIntosh 3/22 Dep. Errata.

155.    Dr. Reinholtz, however, applies the wrong test for materiality and misses the point.

156.    The oath or declaration by an inventor must certify that he believes that he is the first inventor of the claimed subject matter in the patent application, and that he is aware of the duty of disclosure which requires him to disclose information known to be material to patentability. The PTO assumes that the statements made in the oath or declaration are truthful and that the inventor has reviewed the contents of the application including the claims, understand the requirements of the duty of disclosure, and have complied with that duty and all other PTO requirements.[1] Statements made by an inventor in an oath or declaration are sworn statements made under the penalty of perjury.[2]

157.    The proper description of the duty of candor and good faith and the proper test for materiality is set forth in 37 CFR § 1.56:

> (a) A patent by its very nature is affected with a public interest. The public interest is best served, and the most effective patent examination occurs when, at the time an application is being examined, the Office is aware of and evaluates the teachings of all information material to patentability. Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section. The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned. Information material to the patentability of a claim that is cancelled or withdrawn from consideration need not be submitted if the information is not material to the patentability of any claim remaining under consideration in the application. There is no duty to submit information which is not material to the patentability of any existing claim. The duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office in the manner prescribed by §§

---

[1] *See* 37 CFR 1.56 & 1.63.
[2] *See* MPEP 602.

1.97(b)-(d) and 1.98. However, no patent will be granted on an application in connection with which fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct. The Office encourages applicants to carefully examine:

      (1) Prior art cited in search reports of a foreign patent office in a counterpart application, and
      (2) The closest information over which individuals associated with the filing or prosecution of a patent application believe any pending claim patentably defines, to make sure that any material information contained therein is disclosed to the Office.

(b) Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and

    (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim:
      or

    (2) It refutes, or is inconsistent with, a position the applicant takes in:

        (i) Opposing an argument of unpatentability relied on by the Office, or
        (ii) Asserting an argument of patentability.

37 CFR § 1.56.

158.    Milwaukee Tool's prior art bandsaws (e.g., model 6225), were but-for material prior art that should have been disclosed by Mr. McIntosh during prosecution.  As the USPTO noted in its Reasons for Allowance, the cited prior art failed to disclose a bandsaw that could be lifted and operated with one hand with a trigger within a hand grip portion located between a first drive wheel and a second drive wheel.  Op. Rep. Attachment D at PSAW00000013.  But, as Mr. McIntosh admitted, the older Milwaukee bandsaws that existed before 1999 could be used and lifted with one hand:

Q. Did you, personally, ever try to use a handheld bandsaw one handed before 1999?

A. Yes.

Q. Which saws do you specifically remember trying to do that?

A. Milwaukee.

Q. And do you remember what caused you to use the Milwaukee bandsaw one handed?

A. I could do it when I was sitting on the ground.  I could pull the materials into the blade and saw sitting on the ground.

***

Q. Did you see big guys doing that [lifting] with a Milwaukee bandsaw?

A. Yeah.

Q. Where did you see them doing that?

A. On job sites.

Q. And that was all prior to 1999?

A. Yes.

Op. Rep. Attachment E at 145:1-146:13.

159.    Clearly, Mr. McIntosh knew that older Milwaukee bandsaws existed before 1999 and could be used and lifted with one hand. Whether or not Mr. McIntosh knew the particular model numbers of these Milwaukee bandsaws or whether or not he had actually lifted one of these bandsaws himself are irrelevant to the proper test for materiality and does not negate Mr. McIntosh's failure to disclose *any* Milwaukee prior art band saws to the USPTO during prosecution.  Rather, information is material to patentability when "[i]t establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim" or "[i]t refutes, or is inconsistent with, a position the applicant takes in: (i) Opposing an argument of

13

unpatentability relied on by the Office, or (ii) Asserting an argument of patentability." 37 CFR § 1.56.

160.    The older Milwaukee bandsaws that existed before 1999 could be used and lifted with one hand, as acknowledged in Mr. McIntosh's sworn testimony that he saw operators use and lift these bandsaws with one hand at job sites.   Op. Rep. Attachment E at 145:1-146:13. Accordingly, these Milwaukee prior art bandsaws, by themselves or in combination with other information, could have been used by the Examiner to establish a prima facia case of unpatentability if Mr. McIntosh had disclosed them to the Examiner during the prosecution of the patent application that led to the '681 patent.

161.    In addition, the Examiner noted in the Reasons for Allowance that prior art failed to teach a "handle assembly permitting the operator to lit [sic] and operate the saw with one hand." And in the final amendment by the Applicant before allowance filed on June 28, 2013, Applicant amended the claims to include reference to single-handed use in preamble and to add limitation "said handle assembly permitting the operator to lift and operate the saw with one hand, and said handle assembly being located such that the saw is substantially weight balanced so that the saw can be utilized in a single-handed operation for cutting the workpiece while holding the workpiece with another hand of the operator." The single-handed use was an important element added to claims shortly before allowance. And the single-handed use feature is related to the "substantially weight balanced" limitation, which Dr. Reinholtz does not dispute is also present in at least the prior art Milwaukee bandsaw model number 6225.  For these reasons, information about the prior art Milwaukee bandsaws that Mr. McIntosh admitted he had observed being lifted and used one-handed "refutes, or is inconsistent with, a position the applicant takes in: (i) Opposing an argument of unpatentability relied on by the Office, or (ii) Asserting an argument of patentability."  37 CFR

14

§ 1.56.  The Milwaukee prior art bandsaws were material to patentability and should have been disclosed to the USPTO by Mr. McIntosh during the prosecution of this application that led to the '681 patent.

162.    Moreover, I have reviewed Dr. Nayfeh's Opening Report and Reply Report regarding his opinion that the Milwaukee 6225 band saw anticipates the independent claims of the '681 Patent and understand that if Persawvere's interpretation of the "between" limitations requiring the trigger and part of the hand grip portion lie between the wheel axes is adopted, then the Milwaukee 6225 band saw discloses these limitations.

163.    In other words, the Milwaukee prior art bandsaw model 6225 meets the same claim elements that the USPTO noted made Mr. McIntosh's claims patentable.  This prior art bandsaw is therefore but-for material and should have been disclosed to the USPTO during prosecution.

iv.    **Mr. McIntosh Failed To Show Any Reasonable Inference From His Failure To Disclose Material Prior Art Other Than An Intent To Deceive.**

164.    Mr. McIntosh failed to provide any explanation for his failure to disclose the Milwaukee Tool prior art saws, including model 6225, other than that he intended to deceive the USPTO.  As Mr. McIntosh testified, he was not only aware of Milwaukee Tool's prior art bandsaws before 1999, but he himself had used them one-handed and witnessed others lifting them one-handed.  Op. Rep. Attachment E at 145:1-146:13. Despite this, Mr. McIntosh failed to notify the USPTO about the existence of these prior art bandsaws.

165.    Mr. McIntosh failed to provide any explanation for withholding this material prior art other than having an intent to deceive the USPTO in order to obtain his patent. The '681 Patent describes the invention as providing a band saw "designed for one-handed operation."  Op. Rep. Attachment A at 1:14-16.  In his Declaration, Mr. McIntosh advertised his invention as providing one-handed capability.  Op. Rep. Attachment D, PSAW00000227-230, ¶¶ 6-8.  Mr. McIntosh also

explained that he founded Stout Tool Corp. in 2003 to manufacture and market the "band saw as described and claimed in the above identified application." *Id*. ¶ 9.  Mr. McIntosh also informed the USPTO that he focused his advertisement "on the ability to easily operate [Stout's] portable band saw while fully supporting the saw with only one hand." *Id*. ¶ 12.

166.    Mr. McIntosh thus understood that a focus of his claimed invention was on the ability to use the bandsaw with one hand.  Despite this, Mr. McIntosh withheld material prior art in the form of Milwaukee Tool's prior art bandsaws, such as the 6225 model, that, as Mr. McIntosh admitted, could also be used with one hand.  Mr. McIntosh provided no other reasonable inference from his failure to disclose these prior art bandsaws, such as the 6225, other than that he intended to deceive the USPTO and withhold material prior art to obtain his patent.

> **v.    The Milwaukee Tool's Prior Art Band Saws Are Not Cumulative Over Prior Art That Was Before The Examiner.**

167.    Dr. Reinholtz first argues that the Milwaukee prior art band saws are cumulative over the Schepige and Buck references that were before the Examiner during the prosecution of the application that led to the '681 patent. Dr. Reinholtz Rebuttal Declaration, ¶ 311.

168.    But in the Reasons for Allowance in the Notice of Allowability, the Examiner stated that "[t]he combination of Schepige with Buck … fails to teach the handle assembly permitting the operator to lit [sic] and operate the saw with one hand." Op. Rep. Attachment D at PSAW00000013. As explained above, a prior art Milwaukee band saw has a handle assembly permitting the operator to lift and operate the saw with one hand. Dr. Gonsalves Opening Expert Report, ¶¶ 136-148. Indeed, Mr. McIntosh knew that the handle assembly of a prior art Milwaukee band saw permitted an operator to lift and operate the saw with one hand. *Ibid., supra*, ¶¶ 151-152, 158-161, 164-166.  Additionally, as explained in Dr. Nayfeh's Opening Report which I have

reviewed, the Milwaukee 6225 band saw, which is one of these Milwaukee prior art band saws can be lifted and operated with one hand. Dr. Reinholtz does not dispute this.

169.    Moreover, Applicant argued that the Schepige—a design patent—describes a bandsaw for two-handed operation that is thus in "direct contradistinction over the presently claimed invention, where it is currently reciting a single handed capability and usage." Attachment D at PSAW00000028-29. Applicant's arguments relied solely on the drawings in Schepige to assess that Schepige was designed for two-handed operation, not the claimed one-handed capability. *Id*. Clearly, Schepige and Buck are not, in fact, cumulative over the Milwaukee prior art band saws. Dr. Reinholtz's unsupported opinion to the contrary is inconsistent with the file history of the '681 patent.

170.    Dr. Reinholtz also argues that the Milwaukee prior art band saws are cumulative over the Dean, Rentsch, and Stelljes references. Dr. Reinholtz Rebuttal Declaration, ¶ 312.

171.    But in the declaration filed by Mr. McIntosh at the USPTO on July 21, 2009, he stated that none of Dean, Rentsch, or Stelljes would not have taught a handle assembly permitting the operator to lift and operate the saw with one hand. Op. Rep. Attachment D, PSAW00000228-230. In particular, Mr. McIntosh stated that "it is my opinion that the saw in Rentsch et al. can not be operated with only one hand by a typical user." *Id*. at PSAW0000228. With respect to Dean, Mr. McIntosh stated that "it is my opinion that the typical user would need to hold the saw 110 at both the handle 114 and handle 150 while operating the saw 110." *Id*. at PSAW0000229. With respect to Stelljes, Mr. McIntosh stated that "[s]ince a saw of the type disclosed in the Stelljes reference typically weighs nine to fifteen pounds, having the center of gravity spaced from the primary handle makes cutting a workpiece while holding the saw with only one hand extremely difficult. It is further my expert opinion that a saw of the type fully supported by hand during

operation as described and claimed in the above identified application can be operated with one hand much more easily than the type of saw in the Stelljes reference." *Id.* at PSAW00000229-230.

172.    Moreover, in the amendment/response to the office action filed at the USPTO on July 21, 2009, Applicant similarly argued that "[n]either Rentsch at al. nor Dean teaches or suggests a band saw that can be operated with one hand by a typical user." Op. Rep. Attachment D, PSAW00000221.

173.    Dr. Reinholtz also argues that to the extent "Mr. McIntosh was referring to the Milwaukee 6225 band saw," he notes that "the Milwaukee 6225 band saw had a similar configuration with a handle at the extreme end of the saw as other references" considered by the Examiner, including the references to O'Banion, Dean, Stelljes, and Van Camp.  Dr. Reinholtz Rebuttal Declaration, ¶ 313.  I disagree that the Milwaukee 6225 band saw was cumulative of these references.

174.    As for O'Banion, after the Examiner cited this reference as part of an obviousness combination, Applicant submitted a Rule 131 Affidavit swearing behind the O'Banion reference thus removing it as available prior art.  Op. Rep. Attachment D at PSAW00000276-283.

175.    As for Dean and Stelljes, as I discuss above, both Mr. McIntosh and his attorney submitting arguments in response to an office action took the position that Dean and Stelljes did not teach a band saw capable of being used with one hand by a typical user.  The Milwaukee prior art band saws, including the 6225, therefore was not cumulative of art before the USPTO when that art is interpreted as Applicant argued.

176.    As for Van Camp, first I note that this reference discloses a reciprocating handsaw, not a band saw.  I have reviewed Van Camp and also note that it does not describe using this reciprocating handsaw with one hand.  Instead, Van Camp describes that "[i]n operation, the

18

handsaw is placed and secured within bracket 40" of a reciprocating handsaw holder.  Attachment J at 3:17-32.  Indeed, when describing how to provide the operator with a free hand (i.e., use the saw with one-hand), Van Camp explains that the saw is utilized with the holder.  *Id*. at 2:21-38. Thus, the Milwaukee prior art band saws are also not cumulative of Van Camp.

177.    Dr. Reinholtz's unsupported opinion that the prior art Milwaukee band saws are cumulative over the prior art that was before the Examiner are inconsistent with the statements made by both the Applicant and Mr. McIntosh during the prosecution of the application that led to the '681 patent.

## VI.   CONCLUSION

178.    For these reasons, it is my opinion that Mr. McIntosh did not satisfy his duty to disclose information material to patentability.  Mr. McIntosh's filing of a false declaration before the USPTO was material misconduct. Both Mr. McIntosh and Dr. Reinholtz failed to show any reasonable inference from filing a false declaration other than an intent to deceive. Mr. McIntosh failed to disclose Milwaukee Tool's prior art band saws even though he knew that they were material prior art. Both Mr. McIntosh and Dr. Reinholtz failed to show any reasonable inference from his failure to disclose material prior art other than an intent to deceive.

## VII.   TRIAL EXHIBITS

179.    I have not yet prepared any demonstrative exhibits for trial but I may do so pursuant to the schedule set by this Court.

## VIII.   SUPPLEMENTATION

180.    I reserve the right to supplement or amend this expert report if additional facts and information that affect my opinions become available through discovery or otherwise.

Executed on June 26, 2023 in Falls Church, VA.


By:  /s/ Gregory J. Gonsalves
_____
      Dr. Gregory J. Gonsalves