## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PERSAWVERE, INC.,

　　　　　　　　　　Plaintiff,

v.

MILWAUKEE ELECTRIC TOOL
CORPORATION,

　　　　　　　　　　Defendant.

C.A. No. 21-400-GBW

---

### MEMORANDUM ORDER[1]

Pending before the Court are Plaintiff's ("Persawvere") motion for summary judgment of

no invalidity, D.I. 141, and Persawvere's *Daubert* motions to exclude the testimony of W. Todd

Schoettelkotte, D.I. 139, Samir Nayfeh, D.I. 145, and Gregory Gonsalves, D.I. 137. Also

pending before the Court are Defendant's ("Milwaukee") motions for summary judgment of non-

infringement and inequitable conduct, D.I. 146 and D.I. 147, Milwaukee's *Daubert* motions to

exclude the testimony of Dr. Reinholtz, D.I. 148, and Mr. Robinson, D.I. 149, and Milwaukee's

motion for resolution of a claim construction dispute and leave to supplement expert reports, D.I.

190.

## I.   LEGAL STANDARDS

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). "A genuine issue of material fact is one that could lead a reasonable jury to find

in favor of the nonmoving party." *Bletz v. Corrie*, 974 F.3d 306, 308 (3d Cir. 2020) (citation

---

[1] The Court writes for the benefit of the parties and assumes their familiarity with this action.

omitted). "The court must review the record as a whole, draw all reasonable inferences in favor of the nonmoving party, and must not 'weigh the evidence or make credibility determinations.'" *Id.* (citation omitted). The Court must enter summary judgment if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [the non-moving] party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (quoting *Celotex*, 477 U.S. at 322). The Federal Circuit "reviews a district court's grant of summary judgment under the law of the regional circuit, here the Third Circuit." *Acceleration Bay LLC v. 2K Sports, Inc.*, 15 F.4th 1069, 1075 (Fed. Cir. 2021) (citation omitted).

### B. Expert Witness Testimony

Federal Rule of Evidence 702 sets out the requirements for expert witness testimony and states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Third Circuit has explained:

> [T]he district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury. *See Daubert* ("Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a) [of the Federal Rules of Evidence] whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.").

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404–05 (3d Cir. 2003) (footnote and internal citations omitted). Qualification examines the expert's specialized knowledge, reliability examines the grounds for the expert's opinion, and fit examines whether the testimony is relevant and will "assist the trier of fact." *Id.* at 404.

## C. Claim Construction

"'[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (citation omitted); *Aventis Pharms. Inc. v. Amino Chemicals Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013) (same). "[T]here is no magic formula or catechism for conducting claim construction." *Phillips*, 415 F.3d at 1324. The Court is free to attach the appropriate weight to appropriate sources "in light of the statutes and policies that inform patent law." *Id.* The ultimate question of the proper construction of a patent is a question of law, although "subsidiary factfinding is sometimes necessary." *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 326–27 (2015); *see Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996) ("the construction of a patent . . . is exclusively within the province of the court.").

"The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing *Phillips*, 415 F.3d at 1313); *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1358 (Fed. Cir. 2016) (similar). The "'only two exceptions to this general rule'" are (1) when a patentee defines a term or (2) disavowal of "'the full scope of a claim term either in the specification or during prosecution.'" *Thorner*, 669 F.3d at 1365 (citation omitted).

The Court "'first look[s] to, and primarily rel[ies] on, the intrinsic evidence,'" which includes the claims, written description, and prosecution history and "'is usually dispositive.'" *Personalized Media Commc'ns, LLC v. Apple Inc.*, 952 F.3d 1336, 1340 (Fed. Cir. 2020) (citation omitted). "[T]he specification '. . . is the single best guide to the meaning of a disputed term.'" *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1340 (Fed. Cir. 2016) (citation omitted). "'[T]he specification may reveal a special definition given to a claim term by

3

the patentee that differs from the meaning it would otherwise possess.' When the patentee acts as its own lexicographer, that definition governs." *Cont'l Cirs. LLC v. Intel Corp.*, 915 F.3d 788, 796 (Fed. Cir. 2019) (quoting *Phillips*, 415 F.3d at 1316). However, "'[the Court] do[es] not read limitations from the embodiments in the specification into the claims.'" *MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1310 (Fed. Cir. 2017) (citation omitted)). The "written description . . . is not a substitute for, nor can it be used to rewrite, the chosen claim language." *SuperGuide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004).

The Court "should also consider the patent's prosecution history, if it is in evidence." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370; *Cont'l Cirs.*, 915 F.3d at 796 (same). The prosecution history may "'demonstrat[e] how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution . . .." *SpeedTrack, Inc. v. Amazon.com*, 998 F.3d 1373, 1377 (Fed. Cir. 2021) (quoting *Phillips*, 415 F.3d at 1317).

The Court may "need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva*, 574 U.S. at 331. "Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980; *Phillips*, 415 F.3d at 1317 (same). Extrinsic evidence may be useful, but it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Cont'l Cirs.*, 915 F.3d at 799 (internal quotation marks and citations omitted). However, "[p]atent documents are written for persons familiar with the relevant field . . .. Thus, resolution of any ambiguity arising from the claims and specification may be aided by extrinsic evidence of usage and

meaning of a term in the context of the invention." *Verve, LLC v. Crane Cams, Inc.*, 311 F.3d 1116, 1119 (Fed. Cir. 2002); *see Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 899 (2014) (explaining that patents are addressed "to those skilled in the relevant art").

## II.   DISCUSSION

### A.   Construction of Disputed Terms

#### i.   "Substantially Weight Balanced"

The parties dispute the scope of the term "substantially weight balanced." *See*, *e.g.*, D.I. 209; D.I. 210.  The Court construed the term "substantially weight balanced" to mean that "the center of gravity is in the middle of the frame across from the throat."   D.I. 84 at 21-25. Milwaukee argues that the center of gravity of a saw is "across from" the throat only if the center of gravity is "laterally across" from the throat.  *See* D.I. 191 at 3.  Persawvere's position is that whether the center of gravity is "across from" the throat is determined in relation to the handle assembly.  *See* D.I. 209 at 1.  Persawvere further states that the "substantially weight balanced" term needs no further construction but, alternatively, offers the construction: "the center of gravity is in the middle of the frame in the region between the throat, which exposes a portion of the closed loop saw blade, and the handle assembly."  *Id.* at 3.  The Court construes the term "substantially weight balanced" as "the center of gravity is in the middle of the frame in the region between the throat, which exposes a portion of the closed loop saw blade, and the handle assembly."

Milwaukee's proposed construction improperly imports a "lateral" limitation into the claims.  *See* D.I. 191 at 3.  Milwaukee argues that Persawvere only used "across from" as "laterally across from" in the file history.  *See* D.I. 150 at 13-27; *c.f.* D.I. 160 at 13-21.  Thus, because Persawvere asked for the inclusion of "across from" in the Court's construction of

"substantially weight balanced," Persawvere should be held to the position it argued at the PTO. D.I. 210 at 2. However, "substantially weight balanced" was not a claim limitation at the time that Persawvere made those statements. *See* D.I. 209 at 2; D.I. 153, Ex. 27 at 195, 197-198. Moreover, those claims required a handle grip in "in lateral alignment with the throat" and that "a portion of the handle assembly is aligned with the throat in a direction perpendicular to the longitudinal direction." *Id.* The Court finds that Persawvere's position on the scope of "across the throat" in different claims—importantly, claims that recited a "lateral" limitation—does not bind it with respect to the "substantially weight balanced" term. Thus, *Fenner Invs., Ltd. v. Cellco P'ship*, does not compel a different result. 778 F.3d 1320, 1325 (Fed. Cir. 2015). In *Fenner*, the Federal Circuit explained that "the interested public has the right to rely on the inventor's statements made during prosecution, without attempting to decipher whether the examiner relied on them, or how much weight they were given." However, in *Fenner*, the statements made to the examiner were "relevant" to the claim's interpretation. *Id.* Conversely, Milwaukee refers to Persawvere's statements on the scope of "across the throat" at a time when the claims recited a "lateral alignment" limitation. The Court finds that these statements are not relevant to the proper interpretation of "substantially weight balanced" because this term does not include a laterality requirement.

The Court construes "substantially weight balanced" as "the center of gravity is in the middle of the frame in the region between the throat, which exposes a portion of the closed loop saw blade, and the handle assembly" because this construction best comports with the claims and the specification. The claims state that the "handle assembly [is] located such that the saw is substantially weight balanced." '681 patent at claim 1. The specification then explains that a "substantially weight balanced" saw is a saw that "can be utilized in a single-handed operation."

6

Further, the specification states that "substantial[] weight balance[]" is achieved by positioning and locating the various components of the handle assembly such that the center of gravity is located below the handle. *See, e.g.,* '681 patent at 3:49-56; 4:13-20; 5:32-40; 7:45-59; 8:6-16. Next, the specification explains that the handle is positioned "intermediate the drive and driven pulleys" rather than "outboard" because this position facilitates "one-handed balanced operation." *Id.*

A person of ordinary skill in the art would understand that the center of gravity of a "substantially weight balanced" saw is positioned between the throat and the handle assembly because the center of gravity is beneath the handle assembly. *Id.* A person of ordinary skill in the art would also understand that the center of gravity is in the middle of the frame because the handle assembly is located "intermediate the drive and driven pulleys," and the center of gravity is positioned below the medially located handle assembly. *Id.*

Milwaukee contends that this construction could render a saw with an outboard handle "substantially weight balanced." D.I. 210 at 1. However, the construed term appears in the context of the "handle assembly." '681 patent. The handle assembly includes "at least a part of a hand grip portion," with the hand grip portion containing a "trigger." *Id.* That trigger must be located between the first drive wheel axis and the second wheel axis. *Id.* Thus, because the trigger is located within the handle assembly, a person of ordinary skill would understand that the handle assembly cannot be positioned outboard. *Id.*

Accordingly, for the reasons stated above, the Court construes the term "substantially weight balanced" as "the center of gravity is in the middle of the frame in the region between the throat, which exposes a portion of the closed loop saw blade, and the handle assembly."

The Court further finds that the term is not indefinite. As previously held by this Court, "a person of ordinary skill would readily understand that the claimed saw is 'substantially weight balanced' based on the positioning and location of other claimed components." D.I. 84 at 23. A person of ordinary skill would also understand that the "that the center of gravity—an undisputedly objective measurement—would be located below the handle so that the saw can be used single-handedly." *Id.*; *see, e.g.*, '681 patent at 3:49-56; 5:32-40; 8:6-16.

Accordingly, the Court denies Milwaukee's motion that the term "substantially weight balanced" is invalid as indefinite.

### ii. "Between"

The parties dispute the scope of the term "between" in the '681 patent. Further, Milwaukee argues that the term is indefinite.

At the parties' first claim construction hearing, the Court construed "between" and gave the term its plain and ordinary meaning. D.I. 84 at 13-17. The Court explained that the term is not indefinite and that a person of ordinary skill in the art would understand that the between terms "refer to the area separating the axes of the drive and driven wheels." *Id.* at 13. The Court further explained that the area "between the axes of the drive and driven wheels would extend outwards to occupy the three-dimensional space." *Id.* at 16. Thus, the Court stated, "a person of ordinary skill would [] understand that the 'hand grip portion' and 'trigger' reside in the three-dimensional space between the two axes" even though the "'hand grip portion' and 'trigger' are not co-planar to the line created by the axes of the drive and driven wheels in every figure of the '681 patent." *Id.* In part, the Court relied on the specification, which "explains that the one-handed operation of the claimed saw is achieved by the location of the handle 'intermediate the drive and drive pulleys 22, 28 respectively, rather than outboard as in previous designs.'" *Id.*

8

The Court found that this definition "obviate[d] any ambiguity as to the meaning of "between." *Id.* Further, the Court relied on the '681 prosecution history, and explained that "[w]hen the applicant added the Between Terms, it distinguished prior art references with hand grip portions at extreme ends of the claimed saw," and that the applicant "explain[ed] that the '681 patent's claimed 'hand grip portion is recited as being between the two axes of the drive wheel and the driven wheel, which none of the prior art discloses.'" *Id.*

Now, Milwaukee argues that the term "between" requires that at least part of the hand grip and trigger be located "on or near" a two-dimensional plane that intersects the wheel axes. D.I. 191. In response, Persawvere argues that the between term "refers to the three-dimensional space that separates and falls between the axes of the drive and driven wheels." D.I. 192 at 9. Thus, Persawvere's position is that the "between" term covers the three-dimensional space bounded by two (2) parallel planes, drawn through each wheel axis, that are perpendicular to the longitudinal plane of the frame of the saw. *See, e.g.,* D.I. 153, Ex. 21 ¶ 32; *see also* D.I. 153, Ex. 19 ¶¶ 146-148; D.I. 153, Ex. 11 at 132:12-16 ("I think the axes do define the boundaries for the between limitation. They lie in parallel planes that are perpendicular to the longitudinal plane of the frame of the saw.").

Milwaukee's diagram (D.I. 190 at 10) is illustrative:



The blue and red lines represent two-dimensional axes extending into and out of the paper. Under Milwaukee's construction, the "at least part of the hand grip and trigger" must be in the three-dimensional space "on or near" the blue axis. *See* D.I. 191. Under Persawvere's construction, the "at least part of the hand grip and trigger" must be within the three-dimensional space bounded by the red axes. *See* D.I. 192.

The Court adopts Persawevere's construction. This Court's prior ruling, the specification, and the prosecution history make clear that "between" refers to the three-dimensional area bounded by the wheel axes. *See* D.I. 84, '681 patent. The specification, for example, states that the location of the handle is "intermediate the drive and drive pulleys" and that the handle is not "outboard." '681 patent at 4:13-20. The prosecution history makes clear that the "intermediate" and not "outboard" position to which the specification refers is the area bounded by the wheel axes because the applicant distinguished prior art references with hand grip portions at extreme ends of the claimed saw. *See* D.I. 48, Ex. 7 at 4.

This does not render the term indefinite. A patent is invalid for indefiniteness only if "its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). As the Court previously explained,

> "A person of ordinary skill in the art would also readily understand that the ' 681 patent's figures are two-dimensional depictions of a three-dimensional saw, and that the area "between" the axes of the drive and driven wheels would extend outwards to occupy the three-dimensional space. Thus, even though the "hand grip portion" and "trigger" are not co-planar to the line created by the axes of the drive and driven wheels in every figure of the '681 patent, a person of ordinary skill would still understand that the "hand grip portion" and "trigger" reside in the three-dimensional space "between" the two axes."

D.I. 84 at 16.

Accordingly, the Court construes the "between" term as the "three-dimensional space that separates and falls between the axes of the drive and driven wheels" and denies Milwaukee's motion that the terms are invalid as indefinite.

### iii. "One-Handed"

The Court finds that the following terms are not indefinite: (1) "capable of being fully supported and operated single-handedly for performing a one-handed cutting operation,"[2] (2) "said handle assembly permitting the operator to lift and operate the saw with one hand," (3) and "said handle assembly being located such that the saw is substantially weight balanced, so that the saw can be utilized in a single-handed operation for cutting the workpiece". *See* D.I. 192. Accordingly, the Court denies Milwaukee's motion that these terms are invalid as indefinite.

The Court has previously considered, and rejected, Milwaukee's argument that the patent is invalid because whether the claimed saw can be used single-handedly is "entirely subjective." D.I. 84 at 21-25. The Court previously construed the term "said handle assembly being located such that the saw is substantially weight balanced, so that the saw can be utilized in a single-handed operation for cutting the workpiece while holding the workpiece with another hand of the operator." *Id.* The Court found that this term was not indefinite. *Id.* The Court explained that a person of ordinary skill in the art would determine whether the saw was substantially weight balanced based on "the positioning and location of other claimed components." *Id.* at 24. Accordingly, the Court rejected the argument that whether the saw could be "utilized" single-handedly was invalid. *Id.*

---

[2] This term appears only in the preamble of the '681 patent. The Court does not find, at this time, that the preamble is limiting. But, even if the Court were to construe the preamble as limiting, the Court finds that the preamble would not be indefinite.

Similarly, the Court rejects Milwaukee's argument that whether the saw can be "supported," "operated," or "lifted" single-handedly "requires a subjective assessment about the usage of the saw based on the capabilities of the operator." *See* D.I. 191 at 11-15. A person of ordinary skill in the art would readily understand that whether the saw is "capable of being fully supported and operated single-handedly for performing a one-handed cutting operation" and whether the "handle assembly permit[s] the operator to lift and operate the saw with one hand" is based on objective criteria. *See* D.I. 84 at 21-25. For example, the specification states that unlike "prior band saws where the handle is positioned at an extreme end of the saw body" the operator "is able to easily hold the saw using a single hand" because "the instant invention is used in a manner which is ergonomically much more natural than prior band saws." '681 patent at 7:45-7:50. The specification goes on to explain that "one-handed operation is not merely attributable to scale, but to the position and orientation of the handle assembly along the upper end of the saw." *Id*.

Thus, the Court finds that the terms (1) "capable of being fully supported and operated single-handedly for performing a one-handed cutting operation," (2) "said handle assembly permitting the operator to lift and operate the saw with one hand," (3) and "said handle assembly being located such that the saw is substantially weight balanced, so that the saw can be utilized in a single-handed operation for cutting the workpiece" are not indefinite and require no further construction. Accordingly, the Court denies Milwaukee's motion that these terms are invalid as indefinite.

### iv. Whether Claims 1 and 7 of the '681 Patent Require a Power Source

The parties dispute whether claims 1 and 7 of the '681 patent—which recite, *inter alia*, a "substantially weight balanced" saw—require that the saw be connected to a power source when

the substantial weight balance of the saw is determined. *See* D.I. 150 at 10-13; *see also* D.I. 160 at 25-27.

Milwaukee argues that a saw cannot infringe claims 1 and 7 unless it has a power source. D.I. 150 at 10-13. In support, Milwaukee points to the language of the claims. *Id.* The preamble to claim 1 recites "A portable hand-held band saw capable of being fully supported and operated single-handedly for performing a one-handed cutting operation using a closed loop saw blade". '681 patent at claim 1. Milwaukee argues that a saw is not "capable of performing a one-handed cutting operation" unless the saw is powered. D.I. 150 at 11. Further, claim 1 recites a saw that is "substantially weight balanced." '681 patent. The Court construed this term as "the center of gravity is in the middle of the frame across from the throat." D.I. 84 at 24. Milwaukee argues that, because the claims are directed to a functional saw, the center of gravity cannot be determined without a connected power source. D.I. 150 at 13.

In response, Persawvere argues that the "capability" language in the claim is directed to the saw's ergonomic design. D.I. 160 at 26. Thus, whether the saw is "substantially weight balanced" is based on the "position and location of the various components of the handle assembly." *Id.* As a result, because the claims are directed to the saw's ergonomics rather than the saw's function, functional operation of the saw is not necessary. *Id.* Persawvere also points to the doctrine of claim differentiation for support, as independent claims 1 and 7 do not recite a power source, but dependent claims 4 and 10 do recite a battery. *Id.* at 25-27.

The Court finds that claims 1 and 7 require a power source because a person of ordinary skill in the art would determine whether the saw is "substantially weight balanced" when the saw is in its functional state. *See* '681 patent.

The plain language of the claims supports this construction.  *Id.*  The preamble recites that the hand-held band saw must be (1) portable, (2) capable of being fully supported and operated single-handedly, and (3) capable of performing a one-handed cutting operation.  *Id.*  The claims require that the saw be connected to its power source to determine whether the claim limitations are met because, for example, the power source must be considered to determine whether the saw is "portable."  *Id.*  A saw whose power source makes it impossible to lift would not be a "portable" saw.  *See id.*

Moreover, the power source must be considered to determine whether the saw is capable of "single-handed operation" and whether the saw can perform a "one-handed cutting operation." *See id.*  At the parties' first claim construction hearing, the Court noted that the specification explains that "an offset of the mass of the motor assembly by the mass of the battery pack naturally orients and balances the saw in an appropriate and ergonomically comfortable position."  D.I. 84 at 23.  The Court also explained that, because the battery pack is a component of the handle assembly, a person of ordinary skill would understand that the battery pack's location and position would also contribute to whether the claimed saw is "substantially weight balanced." *Id.*; *see* '681 patent at 2:16-19 ("a battery pack detachably coupled to an end of the handle assembly distant from the motor assembly to provide a balance feel to the user when the saw is grasped by the handle").  The Court also explained that a "substantially weight balanced" saw is one that "can be utilized in a single-handed operation" and, accordingly, construed the term as "the center of gravity is in the middle of the frame across from the throat."  *Id.* at 24. Thus, whether the saw is "substantially weight balanced"—and whether the saw can be used single-handedly—depends on the location of the center of gravity.  It is undisputed that a saw's center of gravity depends in part on the weight and shape of the power supply connected to the

saw. *See id.* at 24. Thus, the power source must be connected to the saw to determine whether the saw has a "center of gravity is in the middle of the frame across from the throat." *Id.*

For the reasons stated above, the Court finds that claims 1 and 7 recite a powered saw and construes the claims accordingly.

**B.   The Court Denies Milwaukee's Motion for Partial Summary Judgment of Non-Infringement.**

The Court denies Milwaukee's motion for partial summary judgment of no literal infringement. D.I. 150. Milwaukee's motion relies on its proposed construction of "across the throat." *Id.* Milwaukee argues that its accused products do not literally infringe because, when a battery pack is attached to the accused products, the accused products do not have a center of gravity laterally across from the throat. *Id.* The Court denies the motion because the Court construed "across the throat" as "the center of gravity is in the middle of the frame in the region between the throat, which exposes a portion of the closed loop saw blade, and the handle assembly." *See supra.* Thus, the Court finds that a genuine dispute of material fact exists as to whether the center of gravity of the accused products is "in the middle of the frame in the region between the throat, which exposes a portion of the closed loop saw blade, and the handle assembly."

**C.   The Court Denies Milwaukee's Remaining Motions for Partial Summary Judgment.**

Milwaukee's remaining motions for partial summary judgment of no infringement under the doctrine of equivalents and summary judgment of inequitable conduct are denied. D.I. 150. Milwaukee's motion for partial summary judgment of no infringement under the doctrine of equivalents, while contained within Milwaukee's first-ranked motion for partial summary judgment, is fairly characterized as a separate motion. *See id.* The Court's scheduling order states that no motions for summary judgment after the first denied motion will be considered.

*See* D.I. 72 at 11.  Thus, Milwaukee's doctrine of equivalent motion and its motion for partial summary judgment of inequitable conduct are denied.

**D.**  **The Court Grants-in-Part and Denies-in-Part Persawvere's Motion for Partial Summary Judgment of No Invalidity Based on Indefiniteness.**

Persawvere asks the Court to grant its motion for summary judgment that the asserted claims of the '681 patent are not indefinite as a matter of law.  D.I. 142.  The Court grants-in-part and denies-in part Persawvere's motion.

Milwaukee's technical expert, Dr. Nayfeh, opined that certain terms of the asserted claims of the '681 patent are invalid as indefinite.  *Id.* at 1-2.  However, Persawvere contends Milwaukee already argued that these same terms—"substantially weight balanced," "between," and "one-handed"—were indefinite.  *See id.* at 3-8.

Milwaukee gives three reasons for re-raising its position on indefiniteness.  D.I. 155. First, Milwaukee states it wishes to preserve this issue for appeal.  *See, e.g., id.* at 2.  Second, Milwaukee argues that the Court has not construed the "one-handed terms".  *Id.* at 5.  Third, Milwaukee claims that Persawvere's new interpretations of the Court's construction results in a new basis for indefiniteness.  *Id.* at 4.

The Court finds that Milwaukee's position on indefiniteness on the "substantially weight balanced" and "between" terms has been properly preserved.  Whether an argument remains "fair game" on appeal is determined by the "degree of particularity" with which it was raised in the trial court and whether the party raised the issue with "exacting specificity."  *Spireas v. Comm'r of Internal Revenue*, 886 F.3d 315 (3d Cir. 2018).  The Court finds that Milwaukee has "particularized" its invalidity position with "exacting specificity" for the "between" and "substantially weight balanced" terms.  *See* D.I. 84.

Next, Milwaukee correctly asserts that the Court did not construe the "one-handed terms" in the Court's first Markman opinion. *See id.* However, discussed *supra*, the Court finds that the one-handed terms are measured using objective criteria and, thus, are not invalid for indefiniteness.

Last, the Court is unconvinced by Milwaukee's argument that Persawvere's interpretation of the Court's constructions renders the asserted terms indefinite. *See, e.g.*, D.I. 155 at 3. The Court, not Persawvere, construed the terms. D.I. 84. Thus, Persawvere's interpretation of a term does not render indefinite those terms the Court has already construed as "not indefinite." *See id.* If Milwaukee's position is that Persawvere's expert witnesses did not properly apply the Court's constructions, that position should be raised in a motion to strike or a motion to exclude.

However, Persawvere's request goes too far. Persawvere moves for summary judgment that the claims, not the specific terms this Court has already construed, are not invalid. D.I. 142 at 1; *but see O2 Micro Int'l. Ltd. v. Beyond Innovation Technology Co.*, 521 F. 3d 1351, 1362-63 (Fed. Cir. 2008) ("[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." Thus, while the deadline for claim construction has passed, novel claim construction issues may arise and require the parties to re-visit invalidity. *See* D.I. 14.

Accordingly, the Court grants-in-part Persawvere's motion, and enters summary judgment that the terms "substantially weight balanced," "between," and "one-handed" are not indefinite.

### E. The Court Denies Milwaukee's Motion to Exclude Certain Testimony of Dr. Reinholtz.

Milwaukee asks the Court to exclude certain expert opinions of Dr. Reinholtz for failure to apply the correct claim construction of "across the throat." D.I. 150. The Court denies Milwaukee's motion.

The Court construed "substantially weight balanced" as "the center of gravity is in the middle of the frame in the region between the throat, which exposes a portion of the closed loop saw blade, and the handle assembly." *See supra*. Persawvere proposed this construction, and presumably believes Dr. Reinholtz's opinions are consistent with this construction. Milwaukee has failed to convince the Court that Dr. Reinholtz's opinions are contrary to the Court's claim construction. Thus, Milwaukee's motion is denied.

### F. The Court Denies Milwaukee's Motion to Exclude Certain Testimony of Mr. Robinson.

Milwaukee asks the Court to exclude Mr. Robinson's expert opinions on royalty rates for failure to apportion. D.I. 150. For the reasons stated below, the Court denies Milwaukee's motion.

Mr. Robinson determined a royalty rate and a total royalty based on a license between Persawvere and Black and Decker ("the BD License"). *Id.* at 47. The BD License includes the asserted patent, but also includes other non-asserted intellectual property. *Id.* In part, at the time Persawvere entered into the BD License, the license included U.S. Patent No. 7,287,454 and U.S. Patent Applications Nos. 11/857,772, 11/857,810, 11/857,793, 12/122,207, and 11/593,209. D.I. 153, Ex. 48 ¶¶ 32-34. The '772, '793, '207 and '209 patent applications were later issued as the '681, '072, '604, and '765 patents, respectively. *Id.*

During Mr. Robinsons' analysis of the BD License, Mr. Robinson concluded that the only intellectual property in the license that had any potential value were the '454, '072, and

'681 patents. D.I. 153, Ex. 48, ¶ 34-35. Mr. Robinson discounted the '454 and '072 patents and the other applications contained within the BD License (the "BD applications") because he determined that, "based upon an examination of the history of the various components of the [BD License]" the "market demonstrated that certain components of the [BD License] had negligible value." *Id.* Thus, Mr. Robinson first discounted the BD applications, concluding that "the value of a patent application in a license is substantially less valuable than an issued patent" because there is "significant uncertainty surrounding what specific claims may be allowed as well as when the patent will actually issue." *Id.*, Ex. 47, ¶ 121. Mr. Robinson then discounted the value of the '454 and '072 patents because he concluded that the '681 patent was the source of the BD License's technical value. *See, e.g., id.* at ¶ 52 ("the '681 [p]atent's broader scope coverage than the '454 [p]atent and the '072 [p]atent renders the '681 [p]atent the superior patent..."). Mr. Robinson opined that the '681 patent's broad claim scope meant that any product reading on the '454 patent would also read on the '681 patent. *Id.* at ¶ 47.

The Court finds that Mr. Robinson's built-in apportionment analysis was not improper. "When a sufficiently comparable license is used as the basis for determining the appropriate royalty, further apportionment may not necessarily be required." *Vectura Ltd. v. GlaxoSmithKline LLC*, 981 F.3d 1030, 1040 (Fed. Cir. 2020). "That is because a damages theory that is dependent on a comparable license ... may in some cases have built-in apportionment."' *Id.* "Built-in apportionment effectively assumes that the negotiators of a comparable license settled on a royalty rate and royalty base combination embodying the value of the asserted patent." *Id.* at 1041. It is not uncommon to provide royalty rates that subsume multiple asserted patents. *See, e.g., Bio-Rad Labs.*, 967 F.3d at 1372-73; *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014). Mr. Robinson explained that the licenses are technologically comparable

because the scope of the '681 patent is greater than that of the '454 patent. *See* D.I. 153, Ex. 48, ¶ 34-39. Mr. Robinson also concluded that the licenses were economically comparable because he attributed greater value to the '681 patent than to the patents and applications in the BD License due to the '681 patents broader scope. *Id.*

Accordingly, the Court denies Milwaukee's motion to exclude the testimony of Mr. Robinson's testimony for failure to account for apportionment.

### G. The Court Denies Persawvere's Motion to Exclude Expert Testimony of W. Todd Schoettelkotte.

Persawvere asks the Court to exclude Mr. Schoettelkotte's expert opinions on royalty rates. For the reasons stated below, the Court denies Persawvere's motion. D.I. 140.

Mr. Schoettelkotte concluded that the appropriate royalty rate for Milwaukee's alleged infringement would be two (2) dollars. *Id.* at 2-3. To reach that rate, Mr. Schoettelkotte first reviewed multiple Persawvere licenses. *Id.* He found four (4) comparable licenses that ranged from three (3) to seven (7) dollars. *Id.* He determined that only one (1) license was at the low end of that range, and that the other three (3) licenses were at the upper end of the range. *Id.* Next, Mr. Schoettelkotte qualitatively analyzed the *Georgia-Pacific* factors and determined whether each factor had an "upwards," "downwards," or neutral impact. *Id.* Mr. Schoettelkotte further considered the factor's strength, concluding that some factors had only "slight" impacts. *Id.* Then, based on his consideration of the *Georgia-Pacific* factors and non-infringing alternatives, Mr. Schoettelkotte determined that the reasonable royalty rate was four (4) dollars. *Id.* Last, Mr. Schoettelkotte halved that royalty rate, as he concluded that the parties would reach a lower rate due to, in part, Milwaukee's lack of revenue or profit from sales of the accused products. *Id.* Thus, Mr. Schoettelkotte reached a final royalty rate of two (2) dollars. *Id.*

As a threshold matter, the parties disagree with how Mr. Schoettelkotte applied the *Georgia-Pacific* factors. *See* D.I. 140; D.I. 159. Persawvere contends that—after determining which factors were relevant to his analysis—Mr. Schoettelkotte used those factors to adjust his initial range. *Id.* Thus, Mr. Schoettelkotte decreased the high end of the initial range if a factor had a downwards impact and, conversely, increased the low end of the range if a factor had an upwards impact. *Id.* Persawvere then argues that Mr. Schoettelkotte's methodology was unreliable for two reasons. First, Persawvere states that a proper approach requires adjusting both ends of the range. *Id.* at 4-6. Second, Persawvere claims Mr. Schoettelkotte did not explain his method for selecting a specific value within the range. *Id.* at 5-7. Milwaukee responds that Mr. Schoettelkotte did not adjust the range, but instead "fully evaluated each Georgia-Pacific factor and determined whether and how the reasonable royalty should be adjusted." *Id.* at 1.

Mr. Schoettelkotte's deposition makes clear that he adjusted both the rate and the range. *See, e.g.*, D.I. 140, Ex. B at 171:3-171:8 ("The process I followed was to look at the starting point range, to look at the *Georgia-Pacific* factors to determine not only whether that range should be adjusted upward or downward but where within that range the royalty rate conclusion should be").

The Court is unconvinced by Persawvere's argument that Mr. Schoettelkotte's method of adjusting only a single end of the royalty range renders his opinion unreliable. Regardless of whether such a method is "unorthodox," the Court sees no reason why this method is fundamentally unreliable. *See* D.I. 191 at 6; *see also Summit 6, LLC v. Samsung Elecs. Co.,* 802 F.3d 1283, 1296 (Fed. Cir. 2015) (the "question of whether an expert opinion is correct is generally a question for the fact finder, not the court."). To the extent that Persawvere disagrees,

the Court finds that Mr. Schoettelkotte's method can be adequately tested through cross-examination.

The Court is further unconvinced that Mr. Schoettelkotte's opinion as to a specific rate within that range is unreliable. An expert witness must provide "some explanation of both why and generally to what extent the particular factor impacts the royalty calculation," but need not demonstrate "mathematical precision." *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 31 (Fed. Cir. 2012). Thus, as "any reasonable royalty analysis necessarily involves an element of approximation and uncertainty," qualitative analyses are, in many cases, reliable. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009); *see also Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, 2018 WL 5729732 at *2 (D. Del. Nov. 2, 2018).

Here, the Court finds that Mr. Schoettelkotte conducted a sufficiently reliable qualitative analysis. Mr. Schoettelkotte analyzed the *Georgia-Pacific* factors and drew a conclusion on how each factor impacted his opinion of the proper royalty range and royalty rate. *See* D.I. 159, Ex. 1, ¶¶ 118-120, 124, 136, 141, 153, 162, 175. Mr. Schoettelkotte's analysis led him to conclude that four (4) dollars was a reasonable royalty. *Id.* Persawvere does not argue that Mr. Schoettelkotte's determination of an initial range was unreliable, nor does Persawvere argue that his analysis of the *Georgia-Pacific* factors was unreliable (although Persawvere disputes how the factors were applied.) *See* D.I. 140. Instead, Persawvere argues that Mr. Schoettelkotte failed to account for the three (3) licenses at the upper end of the initial range identified by Mr. Schoettelkotte, or, at least, that Mr. Schottelkotte failed to explain how he weighed those licenses. *Id.* at 4-6. However, Mr. Schoettelkotte testified that he gave further weight to the high end of the royalty range. D.I. 140, Ex. B at 169:21-170:7. Accordingly, Persawvere's arguments go to the weight, not admissibility, of Mr. Schoettelkotte's testimony because Persawvere can

adequately challenge his methods through cross-examination. *Summit 6,* 802 F.3d at 1296 ("[E]stimating a reasonable royalty is not an exact science").

Persawvere further challenges Mr. Schoettelkotte's conclusion that the four (4) dollar royalty rate should be halved to two (2) dollars. D.I. 140 at 7. However, similar to Mr. Schoettelkotte's selection of an initial rate, Mr. Schoettelkotte's decision to halve the royalty rate can be tested adequately on cross-examination. Persawvere contends that the decision to halve the rate he previously identified was "arbitrary." *Id.* However, Mr. Schoettelkotte stated in his report that his decision was "based on the fact that Milwaukee receives no revenue or profit from the sales of [Accused Product units corresponding to ROW sales] and there is little, if any, value associated with Milwaukee's alleged infringing use of the '681 [p]atent." D.I. 140, Ex. A at ¶ 178; *see* D.I. 159, Ex. 2 at 204:14-208:25 (describing conversations between Mr. Schoettelkotte and Milwaukee staff regarding the lack of economic impact to Milwaukee of such sales).

Accordingly, the Court denies Persawvere's motion to exclude the expert opinion of Mr. Schoettelkotte.

### H. The Court Grants-in-Part and Denies-in-Part Persawvere's Motion to Exclude Expert Testimony of Samir Nayfeh.

Persawvere asks the Court to exclude certain expert opinions of Dr. Nayfeh on the indefiniteness of the terms "between," "substantially weight balanced," and "outwardly." D.I. 152. Persawvere further requests that the Court exclude certain expert opinions of Dr. Nayfeh that are based on saws created for the purpose of litigation. *Id.* The Court grants-in-part and denies-in-part Persawvere's motion. The Court denies Persawere's motion with respect to Dr. Nayfeh's opinions on the saws created for litigation. The Court grants Persawere's motion with respect to Dr. Nayfeh's opinions on the terms "between," "substantially weight balanced," and "outwardly." However, the Court grants Milwaukee leave to supplement Dr. Nayfeh's opinion

with respect to the "between" and "substantially weight balanced" terms.  If Milwaukee chooses

to supplement Dr. Nayfeh's expert report, Milwaukee shall submit a supplemental report no later

than November 27, 2023.  Persawvere may submit a rebuttal report, or any objections to Dr.

Nayfeh's supplemental report, no later than December 1, 2023.

### i. The Court Grants Persawvere's Motion to Exclude Dr. Nayfeh's Opinions on the "Between," "Outwardly," and "Substantially Weight Balanced" Terms.
#### a. "Between"

With respect to the term "between," the Court grants Persawvere's motion because Dr.

Nayfeh's expert opinion is contrary to the Court's construction.

The Court construed "between" as the "three-dimensional space that separates and falls

between the axes of the drive and driven wheels." *See supra*.  Dr. Nayfeh's opinions rely on

Milwaukee's proposed construction of "between," i.e., that the term refers to the locations "on or

near" a two-dimensional plane intersecting the wheel axes. *See* D.I. 84, Ex. 36 ¶ 275.

Accordingly, the Court excludes the opinions of Dr. Nayfeh that rest on his construction

of "between" because his opinions rely on a construction inconsistent with the Court's

construction.

#### b. "Substantially Weight Balanced"

With respect to the term "across the throat," the Court grants Persawvere's motion

because Dr. Nayfeh's expert opinion is contrary to the Court's construction.

The Court construed "substantially weight balanced" as "the center of gravity is in the

middle of the frame in the region between the throat, which exposes a portion of the closed loop

saw blade, and the handle assembly." *See supra*.  Dr. Nayfeh's opinions rely on Milwaukee's

proposed construction of "across the throat," i.e., that the term refers to the area "laterally

across" from the throat. *See, e.g.*, D.I. 210.

Accordingly, the Court excludes the opinions of Dr. Nayfeh that rest on his construction of "across the throat" because his opinions rely on a construction inconsistent with the Court's construction.

### c. "Outwardly"

With respect to the term "outwardly," the Court grants Persawvere's motion because Dr. Nayfeh's expert opinion is contrary to the Court's construction.

At the parties' first claim construction hearing, the Court construed the term "outwardly" and gave the term its plain and ordinary meaning. D.I. 84 at 25. The Court explained that the claim language makes clear that "outwardly" "defines a relative position of the handle assembly in relation to the cutting plane and frame" and that the term "is understood to mean a spatial location in relation to other components of the claimed saw." *Id.* at 26. The Court also denied Milwaukee's proposed construction "away from the frame" explaining that "there is no support for limiting 'outwardly' to the relative position 'from the frame.'" *Id.* The Court further explained that no limitation was necessary because "the claims already provide context as to the positioning of the component 'outwardly' from another, e.g., 'at an angle from the plane of the frame,' and from the second cutting plane." *Id., see also* '681 patent at claim 1.

Dr. Nayfeh now announces that "a [person of ordinary skill in the art] would have understood the word 'outwardly' to mean 'away'". D.I. 152, Ex. A ¶ 103. This position is inconsistent with the Court's construction of the term. *See* D.I. 84 at 25-26. The Court thus excludes Dr. Nayfeh's opinion that rely on his construction of the term "outwardly."

### d. The Court Denies Persawvere's Motion to Exclude Dr. Nayfeh's Testimony Based on Demonstratives Created for Litigation.

Persawvere also argues that certain opinions of Dr. Nayfeh on obviousness should be excluded because the opinions rely on demonstratives rather than evidence. D.I. 152. The Court denies Persawvere's motion.

Milwaukee retained Dr. Levy to construct combinations of the Milwaukee 6225 band saw (the "6225 saw") with alternative handle designs based on the JP 709 band saw (the "709 saw"). *Id.* at 14. Another Milwaukee expert, along with Dr. Nayfeh, then determined the center of gravity for the combination saws created by Dr. Levy (the "combination saws") and the 6225 saws. *Id.* Dr. Nayfeh then examined both sets of saws and concluded that modifying the 6225 saw with a different handle configuration would not shift the center of gravity such that the modified saw was imbalanced. D.I. 158 at 14.

Persevwere argues that Dr. Levy's constructions are not evidence because the handles on the combination saws are non-commercial embodiments created by Dr. Levy that bear little resemblance to the 709 handles and omit nearly all the components required for an operational handle. D.I. 152 at 15-16. Persawvere further argues that the combination saws are not evidence because they are non-operational and were made for the purpose of litigation. *Id.* Thus, Persevwere argues Dr. Nayfeh's opinions are not based on evidence and should be excluded. *Id.*

Milwaukee responds that Dr. Nayfeh's opinions are reliable because the combination saws are not the sole basis for Dr. Nayfeh's opinions on the saws' center of gravity and an infringing parties' motivations and expectations of success to combine.   D.I. 158 at 13-14. Further, Milwaukee argues that the saws are evidence because the 6225 saw was made and sold before the critical date of the '681 patent and the handles for the combination saw were created by Dr. Levy during expert discovery. *Id.*

Persevwere cites no authority for its proposition that experiments created for litigation are "demonstratives" but not "evidence." *See* D.I. 152. Experimental evidence is not *de facto* inadmissible. *See Indivior, Inc. et al v. Dr. Reddy's Laboratories S.A., et al.*, 1:14-cv-01452-RGA, D.I. 312 at 14 ("Testing can be probative without exactly duplicating the process being examined"). The Court further finds that the combination saws are not unreliable under *Daubert*. The saws were disclosed in Milwaukee's expert reports. *Id.* at 14. Thus, Persawvere had the opportunity to depose Milwaukee's experts regarding the saws and now has the opportunity to cross-examine Milwaukee's experts at trial. Accordingly, Persawvere's arguments go to the weight, not admissibility, of the testimony because Persawvere can adequately challenge at trial whether Dr. Levy's constructed saws accurately represent the prior art and a POSITA's motivation to combine. *See, e.g., Corning Inc. v. SRU Biosystems*, 2005 WL 2465900 at *8 (D. Del. Oct. 5, 2005) (overruling FRE 403 objection to demonstrative exhibits because they were relevant and opposing party had adequate opportunity to cross-examine); *see also Young Dental Mfg. Co. v. Q3 Special Prods., Inc.*, 112 F.3d 1137, 1145-46 (Fed. Cir. 1997).

I.    **The Court Grants-in-Part and Denies-in-Part Persawvere's Motion to Exclude Expert Testimony of Gregory Gonsalves.**

Persawvere asks the Court to exclude the expert opinions of Dr. Gonsalves because it contends that Dr. Gonsalves improperly opines on the law and the intent of Mr. Scott McIntosh. D.I. 138. For the reasons stated below, the Court grants-in-part and denies-in-part Persawvere's motion.

Dr. Gonsalves's report provides (1) an overview of the U.S. patent system and patent prosecution procedures before the U.S. Patent and Trademark Office, (2) an overview of inequitable conduct law, and (3) opinions on whether Mr. McIntosh's statements to the PTO were materially false and made with the intent to deceive the PTO. *Id.* at 2-3. The Court grants

Persawvere's motion to exclude Dr. Gonsalves's opinions on the law of inequitable conduct and Dr. Gonsalves's opinions on whether Mr. McIntosh's statements were made with the intent to deceive the PTO. The Court denies Persawvere's motion to exclude Dr. Gonsalves's opinions on whether Mr. McIntosh's statements were materially false and Dr. Gonsalves's overview of the U.S. patent system and patent prosecution procedures before the PTO.

### i. The Court Denies Persawvere's Motion to Exclude Dr. Gonsalves's Opinion on Materiality.

The Court finds that Dr. Gonsalves's opinion on whether Mr. McIntosh's statements to the PTO were materially false is reliable. Dr. Gonsalves is a former administrative patent judge. D.I. 157 at 1-2. Thus, he has specialized knowledge regarding the patent application process as well as the policies, practices, and procedures of the PTO. *See id.* Accordingly, Dr. Gonsalves may opine on whether an objectively reasonable patent examiner would have considered certain information material in deciding whether to allow the application to issue as a patent, and whether Mr. McIntosh failed to present that evidence to the PTO. *See Shire Viropharma Inc. v. CSL behring LLC,* No. CV 17-414, 2021 WL 1227097, at *30 (D. Del. Mar. 31, 2021).

### ii. The Court Grants Persawvere's Motion to Exclude Dr. Gonsalves's Opinion on Intent.

The Court finds that Dr. Gonsalves's opinion on whether Mr. McIntosh's statements were made with the intent to deceive the PTO is unreliable. Expert witnesses are not "permitted to testify ... regarding [the defendant's] intent, motive, or state of mind, or evidence by which such state of mind may be inferred." *Oxford Gene Tech. Ltd. v. Mergen Ltd.,* 345 F. Supp. 2d 431, 443 (D. Del. 2004). Dr. Gonsalves report contains opinions on Mr. McIntosh's intent, motive, or state of mind. *See* D.I. 138, Ex. A. For example, Dr. Gonsalves states that "Mr. McIntosh failed to provide any explanation for filing a Declaration that he knew was false other than that he intended to deceive the PTO." *See, e.g., id.* at ¶¶ 134-135. Dr. Gonsalves's statement that

Mr. McIntosh "knew" that the declaration was false is an opinion on Mr. McIntosh's state of mind. *Id.* Milwaukee's argument that Dr. Gonsalves did not opine on Mr. McIntosh's intent, but rather opined on reasonable inferences to be drawn from the record evidence does not make such testimony admissible because "evidence by which [] state of mind may be inferred" is similarly inadmissible. *Oxford Gene Tech. Ltd. v. Mergen Ltd.,* 345 F. Supp. 2d 431, 443 (D. Del. 2004).

Accordingly, any statement by Dr. Gonsalves's referring to what Mr. McIntosh "knew" or "intended," along with any other statement on Mr. McIntosh's intent, motive, or state of mind is excluded.

### iii. The Court Grants Persawvere's Motion to Exclude Dr. Gonsalves's Opinion on Inequitable Conduct.

The Court finds that Dr. Gonsalves's opinions on the law of inequitable conduct are not helpful to the fact-finder. Fed. R. Evid. 702. Courts in this District "ha[ve] a well-established practice of excluding the testimony of legal experts, absent extraordinary circumstances." *AstraZeneca UK Ltd. v. Watson Lab'ys, Inc. (NV),* No. CA 10-915-LPS, 2012 WL 6043266 at *1 (D. Del. Nov. 14, 2012). Dr. Gonsalves's report goes beyond merely providing an overview of the U.S. patent system and, instead, offers legal opinions and analysis. *See, e.g.*, D.I. 138, Ex. A at 115. ("The Federal Circuit confirmed its holding in *Rohm* and *Hass* remain good law after *Therasesnse*."); *id.* at 112 ("In other words, the standard for materiality after *Therasense* is that "but for" the nondisclosure of information, the PTO would not have allowed the patent to issue").

Accordingly, Dr. Gonsalves's legal opinions and analysis are excluded.

### iv. The Court Denies Persawvere's Motion to Exclude Dr. Gonsalves's Opinion on the U.S. Patent System.

The Court finds that Dr. Gonsalves's discussion of U.S. patent system and patent prosecution procedures is reliable. *See Shire Viropharma Inc. v. CSL Behring LLC*, 2021 WL

1227097 (D. Del. Mar. 31, 2021) ("PTO procedures are generally foreign to the average person and even to the average jurist. Certainly it may be helpful to hear someone experienced in those procedures explain how they operate in terms that a layperson can understand.") (internal citations omitted). Other courts in this district have admitted such testimony. *See id.* (collecting cases).

Thus, Dr. Gonsalves may provide a brief overview to the jury of the U.S. patent system and internal PTO practices and procedures. However, the Court notes that Dr. Gonsalves will not be permitted to testify on matters of substantive patent law. Persawvere may raise an objection if it believes Dr. Gonsalves is testifying outside the scope of a brief overview of the U.S. patent system and internal PTO practices and procedures.

Accordingly, the Court denies Persawvere's motion to exclude Dr. Gonsalves's opinions on the U.S. patent system and patent prosecution procedures.

## III.   CONCLUSION

For the foregoing reasons, this 20th day of November, **IT IS HEREBY ORDERED** as follows:

    a. Milwaukee's Motion for Resolution of Claim Construction Disputes (D.I. 190) is **GRANTED-IN-PART** (in that the Court has resolved the outstanding claim construction issues raised) **AND DENIED-IN-PART**.

    b. Milwaukee's Motion for Partial Summary Judgment of Non-Infringement (D.I. 146) is **DENIED**.

    c. Milwaukee's Motion for Summary Judgment of Inequitable Conduct (D.I. 147) is **DENIED**.

    d. Persawvere's Motion for Partial Summary Judgment of No Invalidity is (D.I. 141) **GRANTED-IN-PART and DENIED-IN-PART**.

e.  Milwaukee's Motion to Exclude Certain Testimony of Dr. Reinholtz (D.I. 148) is **DENIED**.

f.  Milwaukee's Motion to Exclude Certain Testimony of Mr. Robinson (D.I. 149) is **DENIED**.

g.  Persawvere's Motion to Exclude Expert Testimony of W. Todd Schoettelkotte (D.I. 139) is **DENIED**.

h.  Persawvere's Motion to Exclude Expert Testimony of Samir Nayfeh (D.I. 145) is **GRANTED-IN-PART and DENIED-IN-PART**.

i.  Persawvere's Motion to Exclude Expert Testimony of Gregory Gonsalves (D.I. 137) is **GRANTED-IN-PART and DENIED-IN-PART**.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE